## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LORI W. WOOD; CLAUD HOOKER; DAVID PALLIARDI; GAIL MAYES; JUDY ROSLEY; and PATRICIA SEIP MARTIN, individually and on behalf of all other persons similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ZC MANAGEMENT, LLC; CANYON RANCH, INC.; CANYON RANCH-BELLEFONTAINE ASSOCIATES, LP; JCBF, INC.; MELVIN ZUCKERMAN; JERROLD COHEN; KEVIN M. KELLY and REGINALD COOPER, <br><br> Defendants. | Civil Action No. 3:07-CV-30076 |

### DEFENDANTS' MEMORANDUM
### IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Counts Three, Four, and Five of the First Amended Complaint ("Complaint") filed in this matter by Plaintiffs Lori Wood ("Wood"), Claud Hooker ("Hooker"), David Palliardi ("Palliardi"), Gail Mayes ("Mayes"), Judy Rosley ("Rosley"), and Patricia Seip Martin ("Martin") (collectively, "Plaintiffs") for failure to state a claim on which relief can be granted.  In addition, Defendants move for partial dismissal of Count One of the Complaint.

Plaintiffs, current and former employees of Canyon Ranch who hold (or held) the positions of wait staff, busser, massage therapist, neuromuscular therapist, healing arts service provider, and yoga instructor, bring this action on behalf of themselves and all other similarly situated wait staff and service employees.  In their Complaint, Plaintiffs seek restitution under

Mass. Gen. Laws c. 149, § 152A (the "Tip Statute"), claiming that Canyon Ranch violated the statute by charging guests an 18% service charge as part of its all-inclusive rate structure without distributing the service charge to wait staff and service employees (Count One).[1]  Plaintiffs also allege that Canyon Ranch and its guests were parties to a contract that included a term governing the distribution of the service charges and that the putative class members were third party beneficiaries to this contract.  Based on these factual allegations, Plaintiffs further assert a statutory claim under Mass. Gen. Laws c. 149, § 148 (the "Wage Act") for failure to promptly pay the distributions of the service charges (Count Two) and common law claims for breach of contract (Count Three), breach of the covenant of good faith and fair dealing (Count Four), and conversion (Count Five).

Plaintiffs' claim under the Tip Statute (Count One) for failure to pay non-wait staff employees all or a portion of the service charges fails for the period from April 5, 2004, to September 7, 2004, because non-wait staff employees were not covered under the version of the Tip Statute in effect during that period of time.  The version of the statute in effect during that time period incontrovertibly applied only to food and beverage employees.

The Court should dismiss Plaintiffs' contract claim (Count Three) because the Complaint fails to allege the elements necessary for a claim for breach of contract.  The Complaint is devoid of facts giving rise to the existence of a contract, express or implied, and Plaintiffs fail to allege the contract's material terms.  In addition, Plaintiffs fail to allege any facts that support their allegation that they are third party beneficiaries of any contract between Canyon Ranch and its guests.

---

[1] This case was removed to this Court on May 10, 2007, under the Class Action Fairness Act ("CAFA").  Plaintiffs' claims have been brought under Massachusetts law.

Plaintiffs' claim for breach of the covenant of good faith and fair dealing (Count Four) fails because, in the employment context, this cause of action is limited to circumstances in which an employer has terminated an employee in bad faith to deprive him or her of compensation or benefits, and the two named Plaintiffs who are former employees do not allege that they were terminated from their employment for an improper purpose.

Finally, Plaintiffs' claim for conversion (Count Five) fails because conversion requires the wrongful exercise of dominion over personal property to which a plaintiff has an immediate right of possession, and Plaintiffs cannot show that the allegedly owed gratuities constitute the kind of "personal property" required to support a conversion claim.

## ARGUMENT

A complaint must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if it fails to state a claim upon which relief can be granted.  Until recently, federal courts generally applied a lenient standard under which "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).  Plaintiffs have failed to meet their burden even under this lenient standard.  However, given the Supreme Court's recent tightening of the standard in *Bell Atlantic Corp. v. Twombly*, it is all the more clear that Plaintiffs fail to meet their burden.  127 S. Ct. 1955 (2007).

Plaintiffs can no longer hide behind the adage that a complaint will not be dismissed "unless it appears beyond a doubt that plaintiff can prove no set of facts" to support his claim. *Conley*, 355 U.S. at 45-46.  As the Supreme Court observed in *Twombly*, that adage "has earned its retirement."  127 S. Ct. at 1969 (abrogating *Conley*).  Instead, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Id*. at 1965 (internal

quotations omitted).  Moreover, to survive a motion to dismiss, the "[f]actual allegations must be

enough to raise a right to relief above the speculative level." *Id*.  Indeed, a complaint must allege

sufficient facts demonstrating that the claimed relief is not merely "conceivable," but actually

"plausible." *Id*. at 1974.  In this case, the vague allegations and conclusory statements in Count

One (in part) and Counts Three, Four, and Five (in their entirety) of Plaintiffs' Complaint fail to

meet the standard most recently set forth by the Supreme Court.  As in *Twombly*, "[b]ecause the

plaintiffs here have not judged their claims across the line from conceivable to plausible, their

complaint must be dismissed." *Id*.

I.      **To the Extent That Plaintiffs Seek To Bring Their Tip Statute Claim on Behalf of
        Non-Wait Staff Employees Prior to September 8, 2004, Their Claim Fails**

        Plaintiffs claim that Defendants violated the Tip Statute by charging guests an 18%

service charge and failing to distribute that charge in its entirety to certain employees.  Plaintiffs

seek to bring this claim on behalf of all current and former wait staff employees and service

employees, as defined by the Tip Statute, presumably for the three years preceding the filing of

the Complaint.  *See* Mass. Gen. Laws c. 149, § 150 (Tip Statute governed by three-year statute of

limitations).  Plaintiffs' claim for failure to pay non-wait staff employees all or a portion of the

service charges must fail for the period from April 5, 2004, to September 7, 2004, because non-

wait staff employees were not covered under the version of the Tip Statute in effect during that

period of time.

        The relevant provisions of the version of the Tip Statute in effect prior to September 8,

2004, stated:

                No employer or other person shall solicit, demand, request or
                accept from **any employee engaged in the serving of food or
                beverage** any payment of any nature from tips or gratuities
                received by such employee during the course of his

employment, or from wages earned by such employee or retain for
himself any tips or gratuities given directly to the employer for the
benefit of the employee, as a condition of employment . . . . If an
employer or other person submits a bill or invoice indicating a
service charge, the total proceeds of such charge shall be remitted
to the employees in proportion to the service provided by them.

Mass. Gen. Laws c. 152A (1952) (emphasis added).  By its very terms, this version of the Tip

Statute indisputably applied only to food and beverage employees.  Several Massachusetts trial

court decisions confirm this interpretation.  *See, e.g., Calcagno v. High Country Investor, Inc.*

*d/b/a Hilltop Steak House and Marketplace*, No. 03-0707, slip op. at 7-8 (Mass. Super. Dec. 20,

2005) (holding that statute applies only to food and beverage employees and not all employees

engaged in service) (attached as Exhibit A); *Williamson v. DT Management, Inc.,* 2004 WL

1050582, *6-9 (Mass. Super. 2004) (rejecting argument that statute protects employees other

than those who serve food and beverage) (attached as Exhibit B); *Michalak v. Boston Palm*

*Corp*., 2004 WL 2915452 (Mass. Super. 2004) (finding that legislature intended that statute be

read narrowly to include only food and beverage employees) (attached as Exhibit C).[2]

Moreover, these courts have taken a very narrow view of the type of job positions that

fall within the ambit of "food and beverage employees" as used in the pre-September 2004

version of the statute, holding that even individuals employed in the food and beverage industry

as catering managers, kitchen staff, function coordinators, banquet managers, and assistant

managers are outside the purview of that version of the statute and therefore are ineligible to

participate in the distribution of tips.  *See Calcagno*, No. 03-0707, slip op. at 7-8 (function

coordinators); *Williamson*, 2004 WL 1050582, *2, 4, 8-9 (catering managers, banquet managers,

---

[2] In *Williamson*, the court discussed at length the statutory constructive and legislative intent of the Tip Statute and
determined that  "it would be incongruous to hold that the phrase 'engaged in the service of food and beverage'
modifies the word 'employee' in the first sentence of the first section, but then does not modify or even relate to the
term 'employee' as used in the second section of the sentence." *Williamson*, 2004 WL 1050582, *8.  Other courts
have relied on the *Williamson* court's analysis in reaching the same conclusion.  *See Calcagno*, No. 03-0707, slip op.
at 6-10; *Michalak*, 2004 WL 2915452, *2.

restaurant managers, and assistant managers); *Michalak*, 2004 WL 2915452, *3 (catering

managers and kitchen staff).  Clearly, Plaintiffs, who are (or were) employed as massage

therapists, neuromuscular therapists, yoga instructors, and providers of healing arts services are

(or were ) not "food and beverage employees" under the old version of the Tip Statute, and

therefore they cannot sustain a claim under that version of the statute.

The content of the new version of the Tip Statute, which took effect on September 8,

2004, provides further support for the interpretation discussed above.  The new version of the

Tip Statute greatly expands the statute's scope to cover not only wait staff employees, but also

service bartenders and service employees in industries other than food and beverage.[3]  *See* Mass.

Gen. Laws c. 149, § 152A (a) (2004).  As the legislative history of the new statute reveals, the

addition of "service providers" as a classification of employees covered by the Tip Statute

incontrovertibly demonstrates that the previous version of the statute did <u>not</u> apply to such

employees.  *See, e.g.,* "An Advisory from the Attorney General's Fair Labor and Business

Practices Division on an Act Protecting the Wages and Tips of Certain Employees," Advisory

2004/3 ("For the first time, the Act protects the tips of service employees who do not work in the

food and beverage industry.") (attached as Exhibit D); Testimony of Attorney General Tom

Reilly in Support of Senate Bill 72 "Protecting Tipped Employees" Before the Joint Committee

on Commerce and Labor, April 25, 2001 (proposed amended Tip Statute "[p]rotects all tipped

employees . . . [p]reviously, only those serving food and beverages were covered") (attached as

Exhibit E); *see also* "Romney Signs Tip Pooling Bill Into Law," State Capitol News Service,

June 10, 2004 ("Previously, only members of the food service industry were protected under the

---

[3] The revised Tip Statute specifically defines "service employee" as "a person who works in an occupation in which employees customarily receive tips or gratuities, and who provides service directly to customers or consumers, but who works in an occupation **other than in food or beverage service**, and who has no managerial responsibility." Mass. Gen. Laws c. 149, § 152A(a) (2004) (emphasis added).

law") (attached as Exhibit F); "AG Reilly Commends Legislature for Passage of Bill That

Protects Service Workers," State Capitol News Service, June 9, 2004 (the older version of the

"tip pooling statute did not protect tipped workers unless they worked in the food service

industry . . . [the amended version] expands the statute to protect all tipped employees")

(attached as Exhibit G); "Senate Strengthens Protections for Wage Earners," State Capitol News

Service, June 4, 2004 (amended statute "extends [protections of statute] to all workers who earn

tips, not just those who handle food and beverages") (attached as Exhibit H).

The Court should therefore dismiss Plaintiffs' claim under the Tip Statute to the extent

that Plaintiffs seek to bring the claim on behalf of non-wait staff employees for the period from

April 5, 2004, to September 7, 2004, because non-wait staff employees were not covered under

the version of the Tip Statute in effect during that period of time.

II.     **Plaintiffs' Contract Claim Fails Because They Do Not Allege Any Facts That Give
        Rise to a Contract or That Demonstrate That They Are Intended Beneficiaries of
        the Alleged Contract**

In Count Three of the Amended Complaint, Plaintiffs claim that (1) Canyon Ranch

entered into contracts with its guests that include "the commitment that tips and service

charges . . . would be distributed to the Plaintiffs," (2) Plaintiffs are third party beneficiaries to

alleged contracts between Canyon Ranch and its guests, and (3) Canyon Ranch breached those

contracts by failing to distribute <u>all</u> service charges to the wait staff employees and service

employees.  Amended Complaint, ¶ 51.  To establish a third party beneficiary breach of contract,

"plaintiffs must prove that both (1) a contract existed, and (2) plaintiffs are intended beneficiaries

of that contract."  *Baldwin v. Mortimer*, 403 Mass. 142, 144 (1988).  As with any breach of

contract claim, third party beneficiaries must first establish that a contract exists before they seek

to recover as intended beneficiaries.  "Before a contract can be deemed a third party contract, it

must first be deemed a contract." Williston on Contracts § 37:23 (4th Ed. 2000); *see also* Rest.

2nd of Contracts § 309(1) ("[a] promise creates no duty to a beneficiary unless a contract is

formed between the promisor and the promisee").  Plaintiffs do not (and cannot) establish the

existence of a contract governing the distribution of service charges received from guests

because such a contract does not exist.  Furthermore, even if Plaintiffs could demonstrate the

existence of a contract between Canyon Ranch and its guests, they do not (and cannot) establish

that they were "intended beneficiaries" of that contract.

Plaintiffs fail to allege any facts that would give rise to the existence of a valid contract,

express or implied, between Canyon Ranch and its guests regarding the distribution of service

charges.  Plaintiffs offer the conclusory statement that contracts or agreements between Canyon

Ranch and its patrons "included the commitment that tips and service charges (including without

limitation the 18% charge) would be distributed to Plaintiffs."[4]  Complaint, ¶ 51.  However, they

make no factual allegations that could support this conclusion.  For example, Plaintiffs fail to

allege any facts that demonstrate the existence of (1) a commitment to distribute the full amount

of the service charge to wait staff and service employees, (2) any specific and definable amount

of the service charge designated as gratuity, (3) specific categories of employees who are to

receive any distributions from the service charge, or (4) the method by which the distributions

are to be allocated to each eligible employee.

In the absence of allegations that would, if proven, show that Canyon Ranch entered into

an agreement with its guests that included among its terms the obligation to distribute the full

amount (or some other specified portion) of the 18% service charge to specific employees

pursuant to a specified method of allocation, Plaintiffs cannot establish a claim for breach of an

---

[4] Plaintiffs make several such conclusory allegations that are inconsistent with one another.  For example, Plaintiffs also allege that Canyon Ranch "represents that it distributes all or the lion's share of the 18% [c]harge to its staff members" and that Canyon Ranch has "represented to its patrons [] that it distributes a portion of every Service Fee to the Service Provider as a tip or gratuity."  Complaint, ¶¶ 18, 22.

express or implied contract.  The Court should not accept Plaintiffs' conclusory allegation that distribution of the 18% service charge "without limitation" was a term of an agreement between Canyon Ranch and its guests to which putative class members were third party beneficiaries. The allegation is nothing more than the "labels and conclusions, and a formulaic recitation of the elements of a cause of action" that, according to the Supreme Court, "will not do."  *Twombly*, 127 S. Ct. at 1965; *see also Schaer* v. *Brandeis Univ.*, 432 Mass. 474, 478-479 (2000) (in opposing a motion to dismiss a breach of contract claim, a party may not rest on "subjective characterizations" or conclusory descriptions of a "general scenario which could be dominated by unpleaded facts"); *Correa-Martinez* v. *Arrillaga-Belendez*, 903 F.2d 49, 53 (1st Cir. 1990) ("It is only when such conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, that 'conclusions' become 'facts' for pleading purposes.").

In addition, the statements in the Complaint regarding the service charge are so vague that they cannot constitute a contract or a term between Canyon Ranch and its guests.  All essential terms of a contract must be sufficiently definite so that the nature and extent of the obligations of the parties can be ascertained and so that it is clear that the parties have the requisite intent to form a contract.  *See Simons v. American Dry Ginger Ale Co., Inc.*, 335 Mass. 521, 523 (1957).  Even if Plaintiffs could demonstrate the existence of an agreement that includes the language they use in their Complaint, vague language that merely indicates that a service charge will be distributed among employees, without specifying which employees are to receive distributions or what amounts are to be distributed to each employee, is not sufficient to form the basis of a valid contract.  *See Held v. Zamparelli*, 13 Mass. App. Ct. 957, 958 (App. Ct. 1982) (no contract concerning profits and sale of land was formed where "[m]any of the essential

terms," including how profits would be computed and how long the contract would be in force, were "not set forth and without them no enforceable contract [wa]s shown"); *Blair v. Cifrino*, 355 Mass. 706, 710 (1969) (contracts that are vague, indefinite, and uncertain will not be enforced).  To the extent that Plaintiffs seek to assert a claim for breach of an express or implied contract, that claim must fail because it is wholly devoid of factual support.[5]

Even if Plaintiffs could demonstrate the existence of a contract between Canyon Ranch and its guests regarding distribution of service fees (and they cannot), Plaintiffs' allegations regarding their status as third party beneficiaries of the alleged contract are too vague and indefinite to support a claim under this theory.  To prevail under the third party beneficiary theory, Plaintiffs must show that Canyon Ranch and its guests intended to give Plaintiffs the benefit of the promised performance.  *See Harvard Law Sch. Coalition for Civil Rights v. Pres. & Fellows of Harvard Coll.*, 413 Mass. 66, 71 (1992).  Courts look at the language and circumstances of the contract for indicia of clear and definite intent.  *Id*.  Plaintiffs set forth no factual allegations whatsoever that would support an inference of a "clear and definite intent" on the part of Canyon Ranch or its guests to give Plaintiffs the benefit of any "promised performance."  *Id*.  In addition, any contract between Canyon Ranch and its guests must identify with specificity the benefit that is intended to inure to the third party beneficiary, and the vague statements in the Complaint, discussed in detail above, are not specific enough to identify the

---

[5] Plaintiffs allege a breach of "express or implied contracts" between Canyon Ranch and its guests, and they rely on the same vague, conclusory statements to support the existence of  both an express or implied contract.  Plaintiffs cannot establish the existence of an implied contract between Canyon Ranch and its guests for the same reasons that they cannot establish the existence of an express contract.  A contract implied in fact can arise without a written or oral agreement only if the conduct or relations of the parties imply the existence of an agreement.  *LiDonni, Inc. v. Hart,* 355 mass. 580, 583 (1969); *Popponesset Beach Ass'n v. Marchillo*, 39 Mass. App. Ct. 586, 592 (1996).  Plaintiffs do not allege any facts that, if proven true, would establish that the conduct or relations of the parties created an implied contract to pay Plaintiffs the full 18% service charge.  In addition, Plaintiffs still fail to set forth the essential terms of the contract, as discussed above, and the vague and indefinite terms referred to by Plaintiffs is insufficient to establish the existence of a contract.

amount of the total service charge that is supposedly due to the alleged third party beneficiaries. Moreover, Plaintiffs fail to allege any facts that would demonstrate the identity of the third party beneficiaries. Plaintiffs allege that certain classes of employees were the intended beneficiaries, presumably excluding other employees of Canyon Ranch, without setting forth any facts that support their selection of supposed beneficiaries. The Complaint is devoid in its entirety of any facts that would support Plaintiffs' allegation that they are third party beneficiaries of a contract between Canyon Ranch and its guests regarding the distribution of services charges.

Because Plaintiffs do not allege facts sufficient to establish a valid contract or that they or members of the class they seek to represent were third party beneficiaries entitled to distribution of any portion of the service charge, the Court should dismiss Plaintiffs' breach of contract claim (Count Three).

**III.   Plaintiffs' Covenant of Good Faith and Fair Dealing Claim Fails Because They Do Not Allege and Cannot Demonstrate That They Were Terminated in Bad Faith To Deprive Them of Compensation**

Plaintiffs' claim for breach of the covenant of good faith and fair dealing fails because that common law doctrine does not apply to the circumstances presented by this case. While Massachusetts courts have allowed employees to pursue breach of the covenant of good faith and fair dealing claims for certain types of employment-related benefits, the cause of action is limited to circumstances in which an employer has terminated an employee in bad faith to deprive him or her of compensation or benefits. *See, e.g., McCone v. New England Tel. & Tel. Co.*, 393 Mass. 231, 233-34 (1984) (holding that plaintiffs could not substantiate claim for breach of implied covenant of good faith and fair dealing where they could not show that their terminations deprived them of compensation); *York v. Zurich Scudder Inv., Inc.*, 66 Mass. App. Ct. 610, 619 (2006) (claim for breach of covenant of good faith and fair dealing fails where plaintiff does not contend that employer terminated him for purpose of depriving him of compensation); *Coll v. PB*

*Diagnostic Sys., Inc.*, 50 F.3d 1115, 1125 (1st Cir. 1995) (to establish breach of covenant of good faith and fair dealing claim, plaintiff must show that he was terminated for purpose of depriving him of compensation).  Here, four of the six named Plaintiffs – Hooker, Palliardi, Mayes, and Martin – are current employees, and Wood and Rosley make no factual allegations about the termination of their employment with Canyon Ranch.  More significantly, Wood and Rosley do not allege that they would have been entitled to any additional benefits (including any service charge distributions) but for the termination of their employment.[6]  The facts alleged in Plaintiffs' Complaint, therefore, fail to substantiate a claim for breach of the covenant of good faith and fair dealing under Massachusetts law, and the Court should dismiss Count Four.[7]

## IV.    Plaintiffs' Conversion Claim Fails Because They Cannot Show That the Allegedly Owed Gratuities Are the Kind of Personal Property Required To Support a Conversion Claim

In Count Five of the Complaint, Plaintiffs allege that Defendants converted their property by failing to distribute the service charge to them.  Plaintiffs' claim for conversion fails because that common law doctrine does not apply in the circumstance presented by this case.  Conversion requires the wrongful exercise of dominion over personal property, including money, to which a plaintiff has an immediate right of possession.  *Schmid v. The Nat'l Bank of Greece,* 622 F. Supp.

---

[6] To the extent that Plaintiffs attempt to base their claim for breach of the covenant of good faith and fair dealing on the alleged existence of a contract between Canyon Ranch and its guests that allegedly included as a term the distribution of service charges to Plaintiffs, the Court should reject Plaintiffs' attempt to dramatically expand the law regarding the implied covenant based on such a highly attenuated theory.  The limited circumstances under which an employee can sustain a claim for breach of the covenant under Massachusetts law are well-settled, and the Court should not allow Plaintiffs to circumvent that body of law.

[7] Any potential reliance by Plaintiffs on *Gasior v. Mass. Gen. Hosp.*, 446 Mass. 645 (2006), to support an implied contract claim would be misplaced.  *Gasior* presented only a statutory claim under the Massachusetts Fair Employment Practices Statute, Chapter 151B, and any language in the case addressing a putative breach of contract is *dicta.  See* 446 Mass. at 646.  Moreover, any *dicta* concerning c. 151B as an implied term in an at-will employment relationship is unique to c. 151B and its "purpose of eradicating the evil of discrimination." *See DeRoche* v. *Mass. Comm'n Against Discrimination,* 447 Mass. 1, 14 (2006).  To allow Plaintiffs to move forward with an implied breach of contract claim in this case based on *Gasior* would undermine the comprehensive scheme of wage and hour laws enacted by the Massachusetts Legislature and should be rejected.

704, 713 (D. Mass. 1985); *Third Nat'l Bank of Hampden County v. Cont'l Ins. Co.,* 388 Mass. 240, 244 (1983); *Morrin* v. *Manning*, 205 Mass. 205, 210-11 (1910).  Plaintiffs' claim fails as a matter of law because Plaintiffs do not allege and cannot show that the allegedly owed gratuities constitute the kind of "personal property" required to support a conversion claim.  Intangible personal property that "does not merge with or is not evidenced by any sort of document, such as a bankbook [for allegedly converted money]," is not within the scope of a conversion action. *Discover Realty Corp.* v. *David,* 2003 WL 22387138, at *10-11 (attached as Exhibit I). Massachusetts courts have held that commissions and wages are not susceptible to claims of conversion because they constitute intangible personal property that is not evidenced by a document.  *See Discover Realty Corp.*, 2003 WL 22387138, at *10-11 (conversion claim fails because allegedly unpaid commissions not "personal property"); *Salvas v. Wal-Mart Stores, Inc.*, Middlesex Sup. Ct. No. 01-03645, slip. op at *22-24 (Sept. 18, 2006) (attached as Exhibit J) (conversion claim fails because allegedly unpaid wages are not "personal property").  Similarly, Plaintiffs' conversion claim fails because the service charges that form the basis of that claim are intangible personal property that is not evidenced by a document, and the Court should, therefore, dismiss Count Five.[8]

---

[8] To the extent that Plaintiffs claim that the service charges are evidenced by a written agreement between Canyon Ranch and its guests, Plaintiffs' claim fails because those documents do not belong to Plaintiffs, and their possession of such documents does not entitle them to the service charges allegedly represented by the agreements. *See Salvas*, No. 01-03645, slip. op. at 23-24 (records in employer's timekeeping system do not satisfy requirement that document evidence intangible personal property as records belonged to employer and plaintiffs' possession of time records did not create entitlement to wages); *see also Discover Realty Corp.*, 2003 WL 22387138, at *10-11 (where a document evidencing property exists, "the right of possession and dominion so inheres in the physical document that possession of that document governs the exercise of the right itself").

<u>CONCLUSION</u>

For all the foregoing reasons, Defendants respectfully request that this Court dismiss

Count One to the extent that this Count seeks recovery for non-wait staff employees for the

period from April 5, 2004, to September 7, 2004, and Counts Three, Four, and Five of the

Complaint in their entirety.

Respectfully submitted,

DEFENDANTS,

By their attorneys,

 /s/ Richard L. Alfred
Richard L. Alfred (BBO No. 015000)
Ariel D. Cudkowicz (BBO No. 550557)
Jennifer A. Serafyn (BBO No. 653739)
C.J. Eaton (BBO No. 660726)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800
DATED:  June 8, 2007                     Telecopier:    (617) 946-4801

<u>CERTIFICATE OF SERVICE</u>

I, C.J. Eaton, hereby certify that this document was filed through the Court's ECF system
and that a true copy of the above document was served on Paul Holtzman, Esq., Krokidas &
Bluestein LLP, 600 Atlantic Avenue, Boston, MA 02210, by electronic mail and first class mail
on June 8, 2007.

 /s/ C.J. Eaton
C.J. Eaton

14