COMMONWEALTH OF MASSACHUSETTS

ESSEX. ss.                                                   SUPERIOR COURT DEPARTMENT
                                                             CIVIL ACTION NO. 03-0707

JANET CALCAGNO & others,[1]
Plaintiffs,

vs.

HIGH COUNTRY INVESTOR, INC.
d/b/a HILLTOP STEAK HOUSE AND MARKETPLACE,
Defendant.

MEMORANDUM OF DECISION AND ORDER
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
ON PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Background

In this civil action, the above-named plaintiffs, previously employed as function servers by the defendant, High Country Investor, Inc., d/b/a Hilltop Steakhouse and Marketplace (hereinafter "Hilltop"), seek to recover the proceeds of service charges which were added to customer bills and retained by Hilltop in alleged violation of Mass. Gen. Laws c. 149, § 152A (hereinafter the "Tips Law").[2] The plaintiffs, Janet Calcagno, Joan Rossi, Sunok Gatchell, Chong O'Connell, and all others similarly situated, (hereinafter the "function servers"), assert that the Hilltop failed to fully remit the

---

[1] Joan Rossi, Sunok Gatchell, Chong O'Connell, and all others similarly situated.

[2] The defendant terminated the employment of four above-named plaintiffs in January 2003. Calcagno, Rossi, and O'Connell had each worked for the defendant for approximately five years; Gatchell had worked for approximately seven.

entire amount of the service charges to its function servers.[3] The function servers claim that the failure to fully remit violates the Tips Law.[4] Hilltop maintains that the plain language of the Tips Law contains no remittance requirement regarding assessed service charges.[5]

Further, the function servers maintain that Hilltop discharged them in retaliation for engaging in a protected activity. Additionally, the function servers maintain that Hilltop is liable to the function servers based on several Massachusetts common law theories.[6]

This matter is before the court on Hilltop's motion for summary judgment and the function servers' cross-motion for summary judgment on the claim pursuant to Mass. Gen. Laws c. 149, § 152A.

## Summary Judgment Standard

Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass. R. Civ. P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence

---

[3] During the years that the named plaintiffs were employed by Hilltop, Hilltop had assessed a 17% service charge (from 1997 to May 2002) and an 18% service charge (from June 2002 to 2003) to the total bills of function customers. The functions servers were remitted between 14% and 15% (of the total function bill), while the function coordinators retained between 2% and 3% (of the total function bill).

[4] This case concerns the pre-2004 version of the Tips Law which was in effect at the time of the plaintiffs' employment. The Tips Law, as it reads today, was amended in 2004.

[5] In fact, Hilltop admits that 2% to 3% of the service charge (depending upon the year, see n. 3) assessed to its function customers, during the time in question, was remitted to the function coordinators. This material fact is not in dispute.

[6] These theories include quantum meruit, interference with contractual and/or advantageous relations, breach of implied contract, breach of the covenant of good faith and fair dealing, conversion, and unjust enrichment.

of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass.14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party's case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass.706, 716 (1991).

The nonmoving party cannot defeat the motion for summary judgment by resting on his or her pleadings and mere assertions of disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Similarly, vague and general allegations of expected proof are not enough to defeat a summary judgment motion. Cherella v. Phoenix Technologies, Ltd., 32 Mass. App. Ct. 919, 920 (1992). Further, "[a] complete failure of proof concerning an essential element of the non-moving party's case renders all other facts immaterial." Lyon v. Morphew, 424 Mass 828, 831 (1997).

## Discussion

### A. Introduction to the Statutory Claim

After review of the summary judgment record and hearing the arguments of the parties on November 15, 2005, the court turns to the plain meaning of the Tips Law and the necessary rules of statutory construction in order to determine whether, as a matter of law, a violation has occurred. The parties maintain, and the court agrees, that the 2003 statutory provision governs this dispute.

### B. The Language of the Tips Law

The pre-2004 Mass. Gen. Laws c. 149, §152A provided, in relevant part:

> "No employer or other person shall solicit, demand, request or accept from any employee engaged in the serving of food or beverage any payment of any nature from tips or gratuities received by such employee or retain for himself any tips or gratuities given directly to the employer for the benefit of the employee . . . If an employer or other person submits a bill or

invoice indicating a service charge, the total proceeds of such charge shall be remitted to the employees in proportion to the service provided by them."[7]

The parties' dispute concerns statutory interpretation of the terms "employees" and "service provided" as contained in the second sentence of Section 152A. First and foremost, legislative intent is derived from "the words of the statute, given their natural import in common and approved usage, and with reference to the conditions existing at the time of enactment." Int'l Org. of Masters v. Woods Hole, Martha's Vineyard & Nantucket Steamship Auth., 392 Mass 811, 813 (1984), citing Pacific Wool Growers v. Comm'r of Corps. & Taxation, 305 Mass 197, 198-199 (1940); Randall's Case, 331 Mass. 383, 385 (1954). Moreover, "[s]tatutory language should be given effect consistent with its plain meaning and in a light of the aim of the Legislature unless to do so would achieve an illogical result." Commonwealth v. Clerk-Magistrate of the West Roxbury Division of the District Court, 439 Mass. 352, 355 (2003).

Hilltop claims that the clear language of the Tips Law provides for the distribution of service charges to any "employee" involved in any type of "service" and, therefore, is not limited to those employees who serve food or beverages. Hilltop admits that it distributed 2% to 3% of the service charges included in customer bills to Hilltop's function coordinators. Hilltop maintains that the practice of disbursing a portion of the service charge to function coordinators was permissible based upon the function coordinators' customer service responsibilities.[8]

---

[7] The statutory language addressed herein governed the conduct and expectations of the parties when the plaintiffs, and others similarly situated, were employed, and subsequently discharged, from their positions at Hilltop.

[8] In addition to the function coordinators' pre-event customer contact, event planning, event management, and post-event wind-up, Hilltop maintains that the function coordinators participated in the service of food and beverages during the functions, specifically when the function meal was being served, *en masse*, to the function guests.

Further, Hilltop claims that the word "employee" as modified by the phrase "engaged in the serving of food or beverage," in the first sentence of the Tips Law, refers solely to the pooling of food and beverage server tips. Thus, Hilltop asserts that because the second sentence of the Tips Law does not contain the modifying phrase "engaged in the serving of food or beverage," the service charges may be remitted to any employee, in proportion to the services they provide. Hilltop suggests that the Legislature could have modified "employee" in the second sentence of Section 152A and that the failure to do so may be interpreted as an intent to treat the pooling of tips for food and beverage servers differently from the distribution of service charges to service employees. As a result, Hilltop claims that its function coordinators, employed to ensure that special function customers enjoy a pleasant experience, are thus engaged in "service," which thereby entitles them to a portion of service charges imposed upon customers.

The function servers claim that the Tips Law mandates that an employer remit the proceeds from any imposed service charge solely to those employees engaged in the "serving of food or beverage."[9] The function servers state that the Legislature intended that "employees" referenced in the second sentence of Section 152A are the equivalent of the "employees" referenced as those engaged in the serving of food or beverages. Moreover, the plaintiffs maintain that if the Legislature had intended the Tips Law to provide that *any* employee, engaged in *any type of service*, whether they be dishwashers, chefs or an owner of the establishment, be entitled to a proportion of assessed service charge, it would have done so by express language. The function servers claim that the plain language of the Tips Law, read through the application of the rules of statutory construction, is contrary to such

---

[9] The court notes that function coordinators are ordinarily salaried personnel while those engaged in the "serving of food and beverages" are generally compensated on an hourly basis at less than minimum wage. During their employment, the plaintiffs' base hourly rate was $2.63.

an interpretation nor was such an interpretation contemplated by the drafters of the Tips Law.[10]

Two Superior Court judges addressed this specific issue and concluded that the term "employees" in the second sentence of Section 152A relates to the term "employees" engaged in the serving of food and beverages referenced in the first sentence of the statute.[11] Judge Haggerty rejected the argument that the term "employee," referenced in the second sentence of Section 152A, was to be read differently from the term as used and defined in the first sentence of the same section, as one who "engages in the serving of food and beverages." The court noted that "general terms which follow specific ones" in a statute are to be interpreted in the same manner as the specific terms." See Williamson, 2004 WL 1050582, at *10, quoting Powers v. Freetown-Lakeville Regional Sch. Dist. Comm., 392 Mass. 656, 661 n. 8 (1984)("[t]he applicable rule is that particular words and phrases will limit and define general words and phrases which are to be found within the confines of the same statute and which might embrace related words, acts or conduct.").

Although other Superior Court judges have interpreted the terms "employee" and "service" more broadly,[12] this judge concludes that the Legislature did not intend to allow gratuities to be distributed to a broader class of employees in the service-charge setting, referenced in the second sentence, than as referenced in the first sentence which governs the voluntary-tip setting. Reading the Tips Law as a

---

[10] See, *infra*, "C. Legislative History", for a discussion of the Drafter's intentions.

[11] Williamson et al. v. DT Management Co. d/b/a Boston Harbor Hotel, Inc., 2004 WL 1050582 (Mass. Super. Mar. 10, 2004)(Haggerty, J.) and Michalak et al. v. Boston Palm Corporation, 2004 WL 2915452 (Mass.Super. Sept. 17, 2004)(Hines, J.).

[12] Chance et al. v. Westban Hotel Venture LP d/b/a Hotel Copley Place, 1999 WL 819565, (Mass. Super. Nov. 22, 2000)(Volterra, J.)(defining "service" as more than placing food and drink before a patron.); Nedved v. 1760 Soc'y. Inc. d/b/a/ The Sherborn Inn, 2004 WL 504800, (Mass. Super. Feb. 20, 2004)(McCann, J.)(interpreting the Tips Law to protect all employees engaged in the service that pertains to the food and beverage industry).

whole, it is clear that the drafters were addressing these two different *settings* which are common in the food service industry but not two different types of *employees*. The Tips Law concerned the manner in which food or beverage servers receive tips.

This reading is also consistent with the canon of statutory construction that, "in the absence of plain contrary indication, a word used in one part of the statute in a definite sense should be given the same meaning in another part of the same statute." Plymouth County Nuclear Information Comm., Inc. v. Energy Facilities Sitting Council, 374 Mass. 236, 240 (1978).

Additionally, "[t]he Legislature is presumed to use a term in the sense in which it has been used before in the same context." Commonwealth v. Mercy Hosp., 364 Mass. 515, 520 (1974). Under this principle, it would be inconsistent to hold that the phrase "engaged in the service of food and beverage" modifies the word "employee" in the first sentence of the section, but then does not modify or even relate to the term "employee" as used in the second sentence of the section.

Furthermore, the language of a statute "should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result." Sullivan v. Brookline, 435 Mass. 353, 360 (2001). This judge concludes that it would be illogical to interpret the Massachusetts Tips Law so as to provide protection to employees who serve food and beverages with regard to tip pooling while providing, at the same time, that service charges imposed by the employer may be distributed to virtually any employee, so long as it can be said that such as employee furthered the positive experience of the customer, without any regard to the services actually provided by that employee.

Here, the function servers' duty was to bring food and beverages to Hilltop's function customers. As such, the function servers are entitled to the full benefit of the service charges paid to Hilltop on their

7

behalf. Any service charges remitted to those not engaged in the service of food or beverages constitutes a violation of the Massachusetts Tips Law. As there remains a material factual dispute as to the food and beverage service provided by the function coordinators, summary judgment cannot be allowed on either Hilltop's motion or the function servers' cross-motion.[13]

### C. Legislative History

Where a statute is unambiguous, a court ordinarily does not turn to legislative history for statutory interpretation.[14] However, when "interpreting a general but undefined term . . . we have sanctioned an evaluation of the legislative history so as to reach a result consistent with the statute's purpose." McCarthy v. Comm'r of Revenue, 391 Mass. 630, 633 (1984). When faced with a term that is capable of differing meanings, moreover, it must be assumed that the Legislature "adopted the particular meaning that best served its purpose and aim in enacting the statute." St. George's Ebenezer Primitive Methodist Church v. Primitive Methodist Church, 315 Mass. 202, 205 (1943).

The root of the issue in the instant case illustrates that the terms "employee" and "service" are general enough that the words are capable of differing interpretations. As the parties themselves are in dispute over how this court should interpret the terms, it is reasonable to review the legislative history

---

[13] The court notes that in Hilltop's Response/Opposition to the Plaintiffs' Cross-Motion for Summary Judgment, Hilltop requested that the material undisputed facts, as set forth by the defendant in its Motion for Summary Judgment, be deemed admitted, for the plaintiffs' alleged failure to have complied with Superior Court Rule 9A(b)(5).

Upon careful review of the summary judgment record, it is clear that the plaintiff disputes many of the defendant's "undisputed material facts." The plaintiff's failure to respond to some of the defendant's enumerated paragraphs has no bearing for purposes of ruling on the motion for summary judgment. Those enumerated paragraphs, which the plaintiff did not respond to, are deemed admitted.

[14] This judge has concluded that the statute is clear and unambiguous when the rules of statutory construction are applied. Nevertheless, this judge will, *arguendo*, presume ambiguity in the Tips Law so that the legislative history may be briefly explored

8

even though this judge, independent of legislative history, interpreted the Tips Laws through the plain language of the statute and the rules of statutory construction.

Through the summary judgment record, this court gleaned of some of the Legislative climate during pivotal times in the history of the Tips Law. The record reveals some of the legislative history from 1983. That year, Governor Dukakis considered an amendment to the Tips Law.[15] This amendment was supported by the AFL-CIO and Local 26 of the Hotel and Restaurant Employees Union.[16] Conversely, this amendment was opposed by the food and beverage industry on the basis that it would prevent employers from distributing service charges to employees other than servers.[17] These letters help to elucidate how those in the food services business construed the pre-1983 Tips Law and the proposed amendment.

Judge Haggerty noted that the 1983 amendment recognized that "the customer's expectation was for a service charge on their bill to go to the persons who served them directly, and that if it was distributed otherwise, i.e., to the managers and/or the house, they should be told so in a precise and relatively detailed manner" (e.g., by calling the charge an "administrative fee," rather than a "service

---

[15] At that time, the Tips Law read: "If an employer or other person submits a bill or invoice indicating a service charge, such a bill shall clearly state the services rendered for such charges and the amount of such charges paid as a tip or gratuity." The proposed amendment to the Tips Law would required that "the total proceeds of such a charge shall be remitted to the employees in proportion to the service provided by them."

[16] In a letter to the governor from the Chairman of the Commerce and Labor Committee, the governor was urged to sign the proposed amendment citing the regular occurrence of customers choosing not to leave a tip under the mistaken notion that the entire "service charge" is remitted to the "serving employees."

[17] In a letter to the governor from the Executive Vice-President of the Greater Boston Hotel & Motel Association, the governor was urged to reject the amendment because executing it would result in many service employees, not engaged in food and beverage service, would suffer reduced compensation.

charge"). Williamson, 2004 WL 1050582, at *11, n. 19.

This judge considers it elemental that if customers are not permitted to voluntarily tip the person who served them because a "service charge" is imposed, then those who "served" must receive the benefit of the "service charge." Even if the Tips Law were to have been ambiguous, which this judge does not concede it was in its pre-2004 form, the legislative history supports this judge's conclusion that the function servers, and they alone, were the intended beneficiaries of the Tips Law.

### D. Retaliation and Common Law Claims

The balance of the claims in this case concern retaliation and the common law claims of quantum meruit, interference with contractual and/or advantageous relations, breach of implied contract, breach of the covenant of good faith and fair dealing, conversion, and unjust enrichment.

To establish a prima facie case for retaliation under G. L. c. 151B, the function servers must show that they engaged in protected conduct,[18] that they have suffered some adverse action,[19] and that a "causal connection existed between the protected conduct and the averse action." Mole v. University of Massachusetts, 442 Mass. 582, 591-92 (2004), quoting Mesnick v. General Elec. Co., 950 F 2d 816, 827 (1st Cir. 1998). The summary judgment record reflects a genuine issue of disputed material fact concerning the function servers' terminations.[20] It will be left to the fact finder to determine whether the termination was in retaliation for challenging the method of service charge distribution or whether

---

[18] Under G. L. c. 151B, § 4 (4), protected conduct included a plaintiff's opposition to "any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under [G. L. c. 151B, § 5]."

[19] Under G. L. c. 151B, § 4 (4), "adverse actions consist of a defendant's action 'to discharge, expel or otherwise discriminate against' the plaintiff." Mole, 442 Mass. at 592 n. 14.

[20] *See n. 13.*

it was a result of the function servers' poor performance.[21] The instant case is not ripe for summary judgment with respect to the retaliation claim.

As for the common law claims of quantum meruit, interference with contractual and/or advantageous relations, breach of implied contract, breach of the covenant of good faith and fair dealing, conversion, and unjust enrichment; these common law claims are premised upon the assertion that Hilltop failed to fully remit the assessed service charge to the function servers. Two recent Superior Court cases involved similar claims and proceeded beyond summary judgment.[22] The Williamson court denied summary judgment on all of the common law claims that were not barred by the statute of limitations, holding that a violation of G. L. c. 149, § 152A could support these common law claims.[23] The Chance court entered judgment for the plaintiffs on several of these claims[24] based upon the determination that the defendants violated G. L. c. 149, § 152A.[25]

The law is clear that plaintiffs may pursue multiple legal theories simultaneously, based upon the same underlying facts, so long as the claims are not specifically barred by statute. See Comey v. Hill, 387 Mass. 11, 19 (1982)(citing Jennings v. Commonwealth, 17 Pick. 80, 82 (1835))("repeal of common law by implication of statute not inferred; legislative intent must be manifest").

---

[21] Oral or written complaints to internal management are regarded as a "protected activity" within the meaning of G. L. c. 149, § 148A. Valerio v. Putnam Associates, Inc., 173 F.3d 35 (1st Cir. 1999)

[22] Williamson, 2004 WL 1050582 and Chance, 1999 WL 819565.

[23] Williamson, 2004 WL 1050582 at 12-14.

[24] Quantum meruit, breach of the covenant of good faith and fair dealing, unjust enrichment, and conversion

[25] Chance, 1999 WL 819565.

The Tips Law could support these common law claims and that these claims are independently cognizable and will require factual findings by a jury.[26] The instant case is not ripe for summary judgment with respect to the common law claims.[27]

### E. Conclusion and ORDER

For the above reasons, it is hereby ORDERED:

1. That the defendant's motion for summary judgment be DENIED, and

2. That the plaintiff's cross-motion for partial summary judgment be DENIED.

Dated: December 20, 2005

Thomas R. Murtagh
Justice of the Superior Court

---

[26] See Williamson, 2004 WL 1050582 and Chance, 1999 WL 819565.

[27] For instance, as to the breach of contract claim, the fact finder could determine that the function servers has an implied contract under which they were entitled to receive the total proceeds of the service charge. A contract may be implied either in law, i.e., by virtue of the statute, § 152A, or implied in fact, i.e., by virtue of custom in the industry.