ADVISORY 2004/3

An Advisory from the Attorney General's
Fair Labor and Business Practices Division
on an Act Protecting the Wages and Tips of Certain Employees

Pursuant to G.L. c. 23, § 1 (b), the Office of the Attorney General issues the following Advisory:

## INTRODUCTION

On June 10, 2004, "An Act Protecting the Wages and Tips of Certain Employees" ("The Act") was signed into law. Chapter 125 of the Acts of 2004. The Act replaces the existing tip law and makes several changes to the enforcement provisions of four wage and hour statutes. The purpose of this advisory is to explain and clarify the provisions of the Act. The following statutes are affected:

M.G.L. c. 149, § 27C
M.G.L. c. 149, § 27B
M.G.L. c. 151, § 15
M.G.L. c. 149, § 150
M.G.L. c. 149, § 152A
M.G.L. c. 149, § 159A[1]

The Act contains significant changes, including provisions requiring employers to permit employees to inspect their payroll records, strengthened debarment for wage law violations, and clarification of several statutes. The tip pooling provisions of the Act forbid owners and employees with managerial responsibility from sharing in tips or the proceeds of an employer mandated service charge.

## TABLE OF CONTENTS

The Tip Pooling Act ................................................................................ 2

Changes to the Minimum Wage Law ..................................................... 5

Changes to the Prevailing Wage Law..................................................... 6

Changes to the Enforcement Provisions of the Wage Laws ........................ 6

---

[1] Massachusetts General Laws Chapter 149, § 148B was modified by Chapter 193 § 26 of the Acts of 2004, effective 7/19/04.

## I. THE TIP POOLING ACT

### A.   Employees Protected

Employees who receive at least $20 per month in gratuities may be paid $2.63 per hour, provided that their gratuities and hourly pay rate when added together are equal to or greater than the state minimum wage of $6.75. M.G.L. c. 151, §§ 1, 7. *See also* 455 CMR 2.02 (regulating minimum wage rate for tipped employees).[2]   However, to qualify for the service rate, the employee must receive tips or service charges in a manner that complies with the Tip Pooling law. *Id.* A tipping law violation can also represent a violation of the state minimum wage law.

Three classes of employees may share tips or may receive the proceeds of a service charge: wait staff, service employees and service bartenders.

#### 1. Wait Staff Employee

To qualify as a wait staff employee, a worker must meet all of the three following criteria. The person must work in a restaurant, banquet facility, or other place where prepared food or beverages are served. He or she must provide service to customers by serving beverages or prepared food directly, or by clearing customers' tables; and the worker may not have any managerial responsibility. M.G.L. c. 149, § 152A.

Employees who do not serve patrons directly are not "wait staff employees" and, therefore, may not receive tips or service charges. Examples of non-wait staff employees include kitchen and administrative staff. Workers with limited managerial responsibility, such as shift supervisors, assistant managers, banquet captains and many maitre d's, do not qualify as wait staff employees. Managerial responsibilities can include supervising banquet events, making or influencing employment decisions, scheduling shifts or work hours of employees, supervising employees and assigning servers to their posts.[3]

#### 2. Service Employee

For the first time, the Act protects the tips of service employees who do not work in the food or beverage industry. Service employees are workers who work in occupations in which they customarily receive tips in the course of their work; who do

---

[2] The Fair Labor Standards Act of 1938, 29 U.S.C. § 203(m)(1) (2004), governs federal law regarding the minimum wage for tipped employees. Under this Act employees who earn $30 or more in tips per month may be paid $2.13/hour as long as their tips and wages equal the federal minimum wage, currently $5.15/hour. 29 C.F.R. § 531.59.

[3] The Attorney General will look to 29 CFR 541.1 (defining the term executive) and relevant law for interpretive guidance to define the term "managerial responsibility." For example, 29 CFR 541.1 identifies workers who direct other employees, hire or fire other employees and regularly exercise independent judgment as executives exempt from the overtime law. These factors may be relevant in determining whether a worker has managerial responsibility.

2

not work in food and beverage service; who provide service to customers directly; and who have no managerial responsibility. M.G.L. c. 149, § 152A. Examples of service employees are hairdressers, taxicab drivers, baggage handlers and bellhops.

### 3. Service Bartender

This Act permits service bartenders to be included in a tip pool or to receive gratuities from a service charge, although they may not provide direct service to customers. To qualify as a service bartender, the worker must prepare "alcoholic or nonalcoholic beverages for patrons to be served by another employee." M.G.L. c. 149, § 152A.

## B. Persons Liable

For purposes of the Act, an employer is a person who has employees in his or her service or who supervises or manages wait staff employees, service employees and service bartenders. Hence, persons who have management responsibility but no ownership stake in an enterprise may be liable for violations. M.G.L. c. 149, § 152A.

## C. Cash Tips and Tip Pools

Tip sharing is permitted, provided that the distribution of the tips is limited to wait staff employees, service employees and service bartenders. Though employers are prohibited categorically from retaining employees' tips, the employer may distribute tips that have been properly pooled. The Act eliminates any distinction between cash and credit card tips.

## D. Tips and Service Charges

A service charge is a fee imposed on a patron or customer by an employer, as opposed to a discretionary tip or gratuity. The employer, and not the customer, determines the service charge amount. It includes a fee that a "patron or other consumer would reasonably expect to be given to a wait staff employee, service employee or service bartender in lieu of, or in addition to, a tip." M.G.L. c. 149, § 152A. Therefore, ambiguously described fees such as a service fee or service surcharge are treated as service charges that must be remitted entirely to wait staff employees, service employees and service bartenders.

If an employer chooses to add a service charge to the bill, it must distribute the proceeds in "proportion to the services provided by those employees." M.G.L. c. 149, § 152A.

Employers may impose an additional fee, or a fee in place of a service charge. This fee may be identified as an administrative, house or other fee and may be retained or

distributed by the employer at its discretion. It must be evident to customers that this fee is not a gratuity, tip or service charge.

## G. Treatment of Tips and Service Charges

### 1. Treatment of Cash and Credit Card Gratuities

Employers may not keep tips or demand, request or accept any portion of a tip given by a patron to a wait staff employee, service employee, or service bartender. Employers are also explicitly forbidden from distributing tips to anyone who is not a wait staff or service employee or service bartender. This includes employers, employees with managerial responsibility, and employees not serving patrons directly.

### 2. Conduct Prohibited Regarding the Treatment of Service Charges

It is a violation of the Act to require or allow wait staff employees, service employees and service bartenders to remit the proceeds of a service charge to anyone other than a wait staff employee, service employee or service bartender. Employers, employees with managerial responsibilities, employees not engaged in the direct service of food or beverages to patrons, or non-service employees in non-food and beverage establishments are forbidden from receiving any portion of the proceeds from a service charge.

Employers may not avoid the provisions of M.G.L. c. 149, § 152A by entering into a special contract with an employee waiving the provisions of the Act.

### 3. Timing of Payment and Statute of Limitations

Tips or service charges must be paid to the employee at the end of the day the tip or service charge was given. The statute creates an outer limit of six or seven days from the end of the pay period during which the tip or service charge was earned, depending on the number of days the employee works per week. M.G.L. c. 149, § 148.

An employee may bring a complaint against an employer for violations of this section within three years.

## II. CHANGES TO THE MINIMUM WAGE LAW

### A. Employer Payroll and Hours Records

Employees are entitled to examine their payroll records at a reasonable time and place. An employer who refuses or prevents an employee from doing so within a reasonable time and place violates the Act. M.G.L. c. 151, §§ 15, 19 (3).

Employers are required to maintain payroll records in a central location in Massachusetts. The Attorney General may now request to review these records and receive copies. The Act specifies that employers must immediately furnish these records to the Attorney General, commissioner or representative upon demand. M.G.L. c. 151, § 15. *See also* 455 CMR 2.06 (2).

Employers who fail to turn over documents to the Attorney General, interfere with the Attorney General's investigation of workplace violations or prevent the Attorney General from entering a place of employment violate Section 19.[4] M.G.L. c. 151, § 19 (3).

### B. Anti-Retaliation Provision

Employers are prohibited from discriminating against or discharging an employee for participating with or assisting the Attorney General in an investigation of his or her employer for alleged Wage and Hour violations. M.G.L. c. 149, § 148A. Employees who participate with or assist the Attorney General in an investigation of their employer for alleged violations of the Minimum Wage Law are protected from employer retaliation. M.G.L. c. 151, § 19 (5).

The anti-retaliation provision in M.G.L. c. 149, § 148A and the newly enacted anti-retaliation provision in M.G.L. c. 151, § 19(5), both prohibit employers from discharging, penalizing or discriminating against any employee because that employee:

- Made a complaint to the Attorney General or any other person
- Assisted the Attorney General in an investigation
- Was the cause of the initiation of a proceeding against the employer
- Testified or plans to testify in a proceeding against the employer
- Has taken any other action to seek statutory wage and hour rights

Any employer who violates the anti-retaliation provision of M.G.L. c. 151, § 19 (5) is subject to a civil citation and the criminal penalties set forth in § 27C.

---

[4]There is a narrow exception for private homes where the employee is engaged in "domestic service in the home of the employer." M.G.L. c. 151, § 19 (3).

## III. CHANGES TO THE PREVAILING WAGE LAW

### A. Certified Payroll Record Submission to Awarding Authority

Consistent with the Office of the Attorney General's longstanding enforcement position, general contractors and subcontractors must supply copies of their certified payroll records directly to the awarding authority each week.[5] M.G.L. c. 149, § 27B. These records must include the employees' names, addresses, occupational classifications, the hours worked, deductions and the wages paid. In addition, a contractor or subcontractor has fifteen days after the completion of a portion of the work to furnish a statement of compliance. This must be submitted directly to the awarding authority. M.G.L. c. 149, § 27B.

### B. Attorney General Right to Demand Records

Upon the Attorney General's request, all contractors and subcontractors must now promptly furnish to the Attorney General or his representative a copy of their certified payroll records. Requested records must be complete and signed under the pains and penalties of perjury. *See* M.G.L. c. 149, § 27B.

## IV. CHANGES TO THE ENFORCEMENT PROVISIONS OF THE WAGE LAWS

### A. Increase in the Tax Lien Amount for Failure to Comply with Civil Citation

Where an employer fails to comply with a civil citation, a lien on the real estate and personal property of the violator may be imposed. The lien amount now includes restitution for back pay, as well as the penalty amount. An interest rate of 18% per annum is also added. M.G.L. c. 149, § 27C (7). Wage liens are imposed consistent with the Massachusetts Department of Revenue's authority to place liens on the property of business entities and individuals who have failed to remit taxes. The Department of Revenue and the Attorney General administer these liens jointly. M.G.L. c. 62C, § 50.

### B. Standard of Review for Appeals of Civil Citations

The standard of review for an employer's appeal of a citation for a wage and hour violation has been clarified. The Act stipulates that a civil citation will be modified or vacated only if the aggrieved person shows by a preponderance of the evidence that the citation was "erroneously issued." M.G.L. c. 149, § 27C (4).[6]

---

[5] General contractors may also require subcontractors to submit additional copies to them, to assure compliance.

[6] When the standard of proof is by a "preponderance of the evidence," the judge or juror "should be satisfied if, after fairly weighing the conflicting evidence, he feels sure that his finding is supported by a

### C. Published Written Notice of a Statutory Violation

After a contractor or subcontractor has been debarred, the Attorney General will publish notice of the debarment, thereby notifying all departments and agencies of the Commonwealth. The notice informs the awarding authorities of the debarred entities that are prohibited from contracting for public works projects with the Commonwealth of Massachusetts and its subdivisions. M.G.L. c. 149, § 27C (3). The Attorney General will publish debarred entities' names in the Central Register, issued by the Commonwealth of Massachusetts.

### D. Ninety-Day Period to Prosecute Eliminated

The Attorney General no longer has a three-month deadline from the time an employer violates the Wage Act to file a criminal complaint.

The statute of limitations for a criminal prosecution is six years from the date of an alleged violation. M.G.L. c. 277, § 63; see *Commonwealth v. Northern Telecom*, 25 Mass. App. Ct. 255 (1988). The statute of limitations for a civil violation is three years from the date of violation. M.G.L. c. 149, § 150.

### 6. Debarment for Independent Contractor Misclassification

Contractors and subcontractors may be debarred for failure to comply with M.G.L. c. 149, § 148B. Individuals performing any service must be treated as "employees" unless they meet Massachusetts stringent three-part Independent Contractor test. M.G.L. c. 149, § 148B.

A contractor or subcontractor who willfully violates § 148B is subject to criminal penalties but also may be barred from bidding on public works projects for a period of six months to five years from the date of a criminal conviction. A first-time, non-willful violation of § 148B carries both criminal penalties and debarment from public works projects for up to 6 months. A subsequent violation carries a debarment penalty period of three years, in addition to criminal penalties.

---

greater weight of trustworthy evidence than is opposed to it." *Callahan v. Fleischman*, 262 Mass. 437, 438 (1928). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.* 333 U.S. 364 (1948).