

Discover Realty Corp. v. David
Mass.App.Div.,2003.

Massachusetts Appellate Division, District Court
Department, Southern District.
DISCOVER REALTY CORPORATION
v.
Stephen T. DAVID and James Nassif, Jr.
No. 1520.

Heard Aug. 15, 2003.
Opinion Certified Oct. 14, 2003.

Real estate broker, which was owed commissions by
realty trust for sales of trust property, filed lawsuit
against trustee and beneficiary in their individual
capacities on variety of theories for, in essence,
trying to evade paying commissions. The District
Court Department, Bedham Division, apparently
found no liability on any underlying claim against
trustee and beneficiary and rendered decision without
addressing broker's unfair trade practices claim.
Broker appealed. The Appellate Division, District
Court Department, Williams, J., held that: (1) remand
was required for trial court to consider issues of
whether realty trust was a nominee trust and whether
trustee could be and should be held individually
liable in context of broker's unfair trade practices
claim; (2) broker could not recover unpaid
commissions via conversion claim; (3) broker's
allegations were insufficient to state claims for fraud
or fraudulent conveyance against trustee and
beneficiary individually; (4) trial court's conclusion
that real estate broker could not recover unpaid
commissions via fraudulent conveyance claim was
not clearly erroneous; (5) broker could not recover
unpaid commissions via unjust enrichment claim; and
(6) broker could not recover unpaid commissions via
breach of contract and interference with
advantageous relationship claims.

Affirmed and remanded on claim not addressed by
trial court.
West Headnotes
**[1] Appeal and Error 30 ⚷1177(6)**

30 Appeal and Error
  30XVII Determination and Disposition of Cause
    30XVII(D) Reversal
      30k1177 Necessity of New Trial

        30k1177(6) k. Issues Not Passed on
Below. Most Cited Cases
Remand was required for trial court to consider
issues of whether realty trust was a nominee trust and
whether trustee could be and should be held
individually liable, in proceedings instituted by real
estate broker against trustee and beneficiary of trust
individually for recovery of unpaid commissions
from trust for sales of trust property, where trustee
was previously found liable in his capacity as trustee,
and trial judge's decision did not address consumer
protection/unfair trade practices (UTP) claim
possibly because it did not find liability on any
underlying claim; potential UTP liability as to trustee
individually did not depend on liability under any
other theory raised by broker. M.G.L.A. 93A § 1 et
seq.

**[2] Trover and Conversion 389 ⚷2**

389 Trover and Conversion
  389I Acts Constituting Conversion and Liability
Therefor
    389k2 k. Property Subject of Conversion. Most
Cited Cases

**Trover and Conversion 389 ⚷17**

389 Trover and Conversion
  389II Actions
    389II(A) Right of Action and Defenses
      389k15 Title and Right to Possession of
Plaintiff
        389k17 k. Special Property or Qualified
Interest or Right. Most Cited Cases
Real estate broker could not recover unpaid
commissions owed to broker by realty trust for sales
of trust property via conversion claim asserted
against trustee and beneficiary of trust in their
individual capacities; broker did not demonstrate that
an owed commission or similar debt was type of
personal property required to support theory of
conversion, as broker asserted neither that it, as
judgment creditor, had right to specific portion of
trust's assets, nor that it had an immediate right to
possession of such assets.

**[3] Fraudulent Conveyances 186 ⚷263(1)**

186 Fraudulent Conveyances
  186III Remedies of Creditors and Purchasers

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d, 2003 Mass.App.Div. 172, 2003 WL 22387138 (Mass.App.Div.)
**(Cite as: Not Reported in N.E.2d)**

186III(H) Pleading
186k258 Bill, Complaint, or Petition
186k263 Fraudulent Transaction
186k263(1) k. In General. Most Cited Cases

Real estate broker's allegations that trustee and beneficiary of realty trust committed fraud by exacting monies from trust owed to broker as commissions for sales of trust property, and by wrongfully and intentionally diverting assets of trust to themselves in order to avoid payment to broker with knowledge of trust's obligations to broker, were insufficient to state claim for fraudulent conveyance against trustee and beneficiary individually. Rules Civ.Proc., Rule 9(b), 43A M.G.L.A.

**[4] Fraudulent Conveyances 186 🔑24(1)**

186 Fraudulent Conveyances
186I Transfers and Transactions Invalid
186I(B) Nature and Form of Transfer
186k24 Transactions Subject to Attack by Creditors
186k24(1) k. In General. Most Cited Cases

Trial court's conclusion that real estate broker could not recover unpaid commissions owed to broker by realty trust for sales of trust property via fraudulent conveyance claim asserted against trustee and beneficiary of trust in their individual capacities was not clearly erroneous, although broker argued that trustee and beneficiary transferred all money into other accounts so as to render trust insolvent, resulting in loss of broker's judgment proceeds; trial court concluded transfers did not violate terms of trust, and, generally, assignment of or distribution of assets to persons equitably entitled to them was not fraud on creditors of trust. M.G.L.A. c. 109A, § 5.

**[5] Implied and Constructive Contracts 205H 🔑3**

205H Implied and Constructive Contracts
205HI Nature and Grounds of Obligation
205HI(A) In General
205Hk2 Constructive or Quasi Contracts
205Hk3 k. Unjust Enrichment. Most Cited Cases

Real estate broker could not recover unpaid commissions owed to broker by realty trust for sales of trust property via unjust enrichment claim asserted against trustee and beneficiary of trust in their individual capacities; however reasonable was broker's expectation of payment from trust, such an expectation as to trustee and beneficiary individually was not necessarily so, and trial court's finding that trustee and beneficiary owed no contractual duty to broker was not clearly erroneous.

**[6] Brokers 65 🔑74**

65 Brokers
65V Compensation
65k74 k. Persons Liable. Most Cited Cases

**Torts 379 🔑241**

379 Torts
379III Tortious Interference
379III(B) Business or Contractual Relations
379III(B)2 Particular Cases
379k241 k. Business Relations or Economic Advantage, in General. Most Cited Cases
(Formerly 379k12, 379k10(3))

**Torts 379 🔑242**

379 Torts
379III Tortious Interference
379III(B) Business or Contractual Relations
379III(B)2 Particular Cases
379k242 k. Contracts in General. Most Cited Cases
(Formerly 379k12, 379k10(3))

Real estate broker could not recover unpaid commissions owed to broker by realty trust for sales of trust property via breach of contract and interference with advantageous relationship claims asserted against trustee and beneficiary of trust in their individual capacities; although broker suggested that its contract with trust could be fulfilled only by trust paying commission to broker, and that trustee prevented trust from fulfilling this contractual obligation by stripping trust of its assets, describing that conduct as "inducing" trust to breach its contract with broker stretched nature of tort beyond precedent or reason.

In the District Court, Dedham Division, James H. Wexler, J., No. 9954CV0031.

Gregory M. Doyle, Braintree, for Plaintiff.
Barry S. Scheer, Boston, for Defendants.

Before WHEATLEY, P.J., WELSH and WILLIAMS, JJ.
WILLIAMS, J.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
Not Reported in N.E.2d, 2003 Mass.App.Div. 172, 2003 WL 22387138 (Mass.App.Div.)
(Cite as: Not Reported in N.E.2d)

Page 3

*1 The plaintiff, Discover Realty Corporation ("Discover"), filed this appeal pursuant to Dist./Mun.Cts. R.A.D.A. 8C, claiming the trial judge erred in several respects in this action aimed at the alleged failure of the defendants, Stephen T. David ("David") and James Nassif, Jr. ("Nassif"), to distribute money held under a trust agreement to Discover, knowing Discover claimed certain real-estate-sales commissions from that trust. Specifically, Discover claims the trial judge should have found that David and Nassif, in failing to pay the claimed commissions, converted Discover's property; fraudulently conveyed assets of DNR Realty Trust ("Trust"),[FN1] of which they were trustee and beneficiary, respectively; unjustly enriched themselves by taking money rightfully Discover's; and tortiously interfered with a contract between the Trust and Discover. Further, Discover claims David is individually responsible on the Trust's breached contract with Discover; and that David should have been found to have violated M.G.L. c. 93A. We affirm the judgment below, except as to the Ch. 93A claim against David, individually, which we remand to the trial judge for further action consistent with this opinion.

FN1. The Trust was terminated as of January 1, 1996.

Discover is a corporation in the business of selling real estate. In 1994 Discover entered into an exclusive agency listing agreement to sell certain properties of the Trust, among them one in Hyde Park and one in Dedham. During the term of the agreement, the Hyde Park property sold, generating a commission for Discover of $8,000.00. Although the Dedham property did not sell because certain releases regarding a "paper street" were not obtained, Discover claimed a commission of $11,250.00 since Discover had produced a ready, willing and able buyer for that property. In 1995, Discover commenced an action in Norfolk Superior Court against David as trustee to recover commissions, and received on March 26, 1997, a favorable order as to these two commissions following trial.[FN2] Discover appealed two aspects of the Superior Court judgment to the Appeals Court.

FN2. This Court has not been provided whatever judgment followed that decision.

*2 The Appeals Court considered only Discover's Ch. 93A claim against David, as trustee, in *Discover Realty Corp. v. David,* 49 Mass.App.Ct. 535, 731 N.E.2d 79 (2000). The Appeals Court remanded the Ch. 93A count, noting that the Superior Court's finding that David, as trustee, had falsely misrepresented he had secured all necessary releases on a paper street and its concluding that that misrepresentation did not descend to the level of a Ch. 93A violation seemed inconsistent and left unexplained. The Appeals Court noted that not every unlawful act is automatically an unfair or deceptive one under Ch. 93A, but stated that if that were the Superior Court's rationale, further explication was needed. Upon remand, the Superior Court, in a decision of May 10, 2001, found that the misrepresentation about the releases for the paper street did constitute a Ch. 93A violation, but one warranting only an award of attorney's fees and not multiple damages.

Following the Superior Court's original trial, and during the pendency of the Appeals Court appeal, Discover filed this action in 1999 against David and Nassif individually on a variety of theories for, in essence, trying to evade paying Discover's commissions on these two properties.[FN3] The trial was held and the decision rendered in 2001, after the appeal and the Superior Court's second look at the Ch. 93A claim.[FN4]

FN3. At trial the only commission claimed was the $8,000.00 commission from the Hyde Park transaction, Discover having already collected the $11,250.00 commission on the Dedham sale.

FN4. Because the parties did not brief or argue the issue of claim splitting-that is, whether Discover should have been barred from litigating in this trial those claims against David and Nassif individually that could have been litigated in the Superior Court trial against them as trustee and beneficiary-this Court does not address that issue. *See, e.g.,* M.R.Civ. P. 12(b)(9); *Yentile v. Howland,* 26 Mass.App.Ct. 214, 216, 525 N.E.2d 689 (1988); *cf. Fafard v. Lincoln Pharmacy of Milford, Inc.,* 439 Mass. 512, 517 n. 6, 789 N.E.2d 147 (2003).

*CHAPTER 93A VIOLATION*

[1] The trial judge here did not address Discover's Ch. 93A claim against David individually, possibly because he found no liability on any underlying

Not Reported in N.E.2d
Not Reported in N.E.2d, 2003 Mass.App.Div. 172, 2003 WL 22387138 (Mass.App.Div.)
**(Cite as: Not Reported in N.E.2d)**

claim. Potential 93A liability as to David individually does not depend, however, on liability under any of the other theories raised. Discover urges that David is liable individually under Ch. 93A under either of two theories: he is liable in that capacity having already been found liable as a trustee in Superior Court, and he is liable for his conduct here based on the Superior Court finding for persisting in unlawfully "trying to avoid a court judgment."

The relief available under Ch. 93A is *sui generis.* *Buster v. George W. Moore, Inc.,* 438 Mass. 635, 650, 783 N.E.2d 399 (2003), *citing Kattar v. Demoulas,* 433 Mass. 1, 12, 739 N.E.2d 246 (2000). A cause of action under c. 93A, therefore, is "neither wholly tortious nor wholly contractual in nature, and is not subject to the traditional limitations of preexisting causes of action." *Buster, supra, quoting Kattar, supra, quoting in turn Slaney v. Westwood Auto, Inc.,* 366 Mass. 688, 693, 322 N.E.2d 768 (1975). *See Kattar, supra,* at 13, 739 N.E.2d 246 *quoting Nei v. Burley,* 388 Mass. 307, 313, 446 N.E.2d 674 (1983) ("[A]nalogies between common law claims for breach of contract, fraud, or deceit and claims under c. 93A are inappropriate because c. 93A dispenses with the need to prove many of the essential elements of those common law claims").

Discover asserts, correctly, that David as trustee, by the time of this trial, which followed the Appeals Court's remand on the Ch. 93A issue, had already been found by Superior Court to have violated Ch. 93A because of misrepresentations about releases for the "paper street" in the Dedham transaction. That specific conduct is not encompassed by any of the other theories asserted here-conversion, fraudulent conveyance, breach of contract, tortious interference with contract, or unjust enrichment, all of which are addressed below. Discover's theme was and remains that the trial court should have seen through the diaphanous barrier separating David as trustee of a nominee trust [FN5] and David as individual, and thus affixed Ch. 93A liability to him individually, since Superior Court had already done so to him as trustee. This theory is not unworthy of consideration since the trial court might have inferred that the Trust was a nominee trust. " 'When there is a parallel identity of trusteeship and ownership in connection with the holding of title to real estate by trustees, it may be inferred that the trust vehicle is a "nominee trust," a common device for holding title to real estate in Massachusetts and one which affords certain tax advantages.' " *Federal Dep. Ins. Corp. v. Porter,* 46 Mass.App.Ct. 241, 244, 704 N.E.2d 1203 (1999), *quoting Apahouser Lock & Security Corp. v.*

*Carvelli,* 26 Mass.App.Ct. 385, 388, 528 N.E.2d 133 (1988). Trustees of nominee trusts may be held liable because M.G.L. c. 203, § 14A does not apply to them. *Apahouser, supra.* In short, protections generally afforded trustees might be lacking in a nominee-trust situation, which can partake more of the characteristics of an agency relationship than of a "true" trust. *E.g., Zuroff v. First Wisconsin Trust Co.,* 41 Mass.App.Ct. 491, 493 & n. 3, 671 N.E.2d 982 (1996). The trial judge's decision here does not address the Ch. 93A claim against David individually, either on that theory or as to his subsequent conduct, to the extent that was revealed at trial.[FN6] It should have done so. As to the 93A liability of David individually, then, this Court remands the case to the trial judge for consideration of the issue of whether the Trust is a nominee trust-if that may be inferred from the evidence-and whether David can be and should be held individually liable for any Ch. 93A violation.

FN5. A "nominee trust" is " '[a]n arrangement for holding title to real property under which one or more persons or corporations, pursuant to a written declaration of trust, declare that they will hold any property that they acquire as trustees for the benefit of one or more undisclosed beneficiaries.' " *Berish v. Bornstein,* 437 Mass. 252, 255 n. 10, 770 N.E.2d 961 (2002), *quoting* Black's Law Dictionary 1072, 1517 (7th ed.1999). Under such an arrangement, which has characteristics of both trust and agency, the beneficiaries generally exercise controlling powers, and consequently the action the trustee might take on his own is limited, if not perfunctory. *See, e.g., Morrison v. Lennett,* 415 Mass. 857, 860, 616 N.E.2d 92 (1993); *Vittands v. Sudduth,* 49 Mass.App.Ct. 401, 408-09, 730 N.E.2d 325 & ns. 11, 13 (2000).

FN6. Because the nature of a nominee trust is more that of an agency relationship than of a true trust, liability has been imposed on a beneficiary as well. *E.g., Morrison,* 415 Mass. at 862, 616 N.E.2d 92; *Porter,* 46 Mass.App.Ct. at 244, 704 N.E.2d 1203; *see also,e.g., City of Worcester v. Sigel,* 37 Mass.App.Ct. 764, 768, 644 N.E.2d 238 (1994) ( "When questions of liability arise as to nominee trusts, the court may impose liability on the beneficiaries of the trust").

Case 3:07-cv-30076-MAP   Document 8-9   Filed 06/08/07   Page 5 of 7

Not Reported in N.E.2d                                                                                     Page 5
Not Reported in N.E.2d, 2003 Mass.App.Div. 172, 2003 WL 22387138 (Mass.App.Div.)
**(Cite as: Not Reported in N.E.2d)**

The issue of individual liability on Nassif was pressed neither below nor here, however, and so we do not consider it.

**\*3** We go on to address the other claimed errors, none of which requires any result other than our affirming the actions of the trial judge.

### *CONVERSION*

[2] Discover claims that although the trial judge recognized that Nassif converted Discover's "intangible broker's commission," the judge erred in finding that the claim failed because the money that was distributed from the Trust to David and Nassif did not belong to Discover "at the time of the conversion."[FN7] Discover infers that the trial judge deemed that "time" to have been the original 1997 Superior Court decision rather than when the commissions were earned, in 1994 and 1995. There seems scant reason to assume that the trial judge focused upon the 1997 decision rather than those earlier years, but this Court discusses Discover's assertion in light of such an assumption.

> FN7. Discover did not claim the trial judge erroneously ruled on a request for a ruling of law. The trial judge ruled on none of Discover's requests, all of which appear to have been requests of mixed law and fact. The trial judge need not have ruled upon requests in improper form, *see, e.g., Kelly v. Dubrow,* 2001 Mass.App.Div. 42, 43 (2001). More generally, failure to rule on requests for rulings of law does not vitiate a decision, so long as a court adequately sets out its factual and legal findings. *See, e.g., Barkan Mgmt. Co. v. Sheehan,* 2002 Mass.App.Div. 134 (2002); *Gonsalves v. European Eng'g. Sales & Serv., Inc.,* 2001 Mass.App.Div. 231 (2001). The trial judge did that here except as to the Ch. 93A count.

To prevail on the theory of conversion, a plaintiff must demonstrate that a defendant has intentionally or wrongfully exercised ownership of, or control or dominion over, personal property to which he has no right of possession at the time. *Grand Pacific Finance Corp. v. Brauer,* 57 Mass.App.Ct. 407, 412, 783 N.E.2d 849 (2003). Discover, however, did not demonstrate at trial, nor does it now, that an owed commission or similar debt is the kind of "personal property" required to support this theory. *See Third*

*Nat'l Bank of Hampden County v. Continental Ins. Co.,* 388 Mass. 240, 244, 446 N.E.2d 380 (1983). Although it has long been "elementary" that a claim for conversion of money, "either in the form of specie or notes," will lie, *e.g., Morrin v. Manning,* 205 Mass. 205, 211, 91 N.E. 308 (1910), such a theory does not extend to claims to intangible personal property that does not merge with or is not evidenced by any sort of document, such as a bankbook. In such circumstances, the right of possession and dominion so inheres in the physical document that possession of that document governs exercise of the right itself. Conversion of a bankbook, for example, not only deprives the depositor of that document, but, more importantly, prevents exercise of the right it embodies-the depositor cannot withdraw his balance. *Stebbins v. North Adams Trust Co.,* 243 Mass. 69, 75-76, 136 N.E. 880 (1922); *see Gross-Loge Des Deutschen Ordens Der Harugari Des Staates Massachusetts v. Cusson,* 301 Mass. 332, 336, 17 N.E.2d 316 (1938) (distribution of funds resulting from vote of fraternal lodge "might not" constitute conversion); Restatement (Second) of Torts, § 222A (1964)( "[c]onversion is an intentional exercise of dominion and control over a *chattel* ...." ) (emphasis supplied). Discover demonstrated neither that it, as a judgment creditor, had rights to a specific portion of the Trust's assets, nor immediate right to the possession of such assets. *See Kelly v. Dubrow,* 2001 Mass.App.Div. 42 (2001). A demand and refusal do not constitute a conversion when the plaintiff does not have title and an immediate right to possession. *Mazeikis v. Sidlauskas,* 346 Mass. 539, 544-45, 194 N.E.2d 409 (1963). Thus, one who has a right of property in a chattel, but not possession or an immediate right to possession, cannot maintain an action for conversion. *Marder v. Moose Hill Spring Tonic Co.,* 286 Mass. 126, 131, 189 N.E. 581 (1934). The trial judge's finding that Discover was not entitled to recover for conversion was not erroneous.[FN8]

> FN8. "[W]e shall not review questions of fact found by the trial judge, where such findings are supported on any reasonable view of the evidence, including all rational inferences of which it was susceptible." *Heavey v. Board of Appeals of Chatham,* 58 Mass.App.Ct. 401, 405 n. 6, 792 N.E.2d 651 (2003) (further citations and internal quotations omitted). "The inquiry is not whether we would have reached the same result as the judge but rather whether, on the entire evidence, we are left with the definite

Case 3:07-cv-30076-MAP   Document 8-9   Filed 06/08/07   Page 6 of 7

Not Reported in N.E.2d                                                                                        Page 6
Not Reported in N.E.2d, 2003 Mass.App.Div. 172, 2003 WL 22387138 (Mass.App.Div.)
**(Cite as: Not Reported in N.E.2d)**

and firm conviction that a mistake has been committed." *Id.* (further citations and internal quotations omitted). "The burden of proof rests on the appellant to show ... an error." *Id.* (citations omitted).

### *FRAUDULENT CONVEYANCE*

**\*4** [3] Discover asserts that transfer of assets from the Trust constituted a fraudulent conveyance. In cases not governed by the civil one-trial system, district courts lack jurisdiction to adjudicate a fraudulent-conveyance action under M.G.L. c. 109A. *Mount v. Baypark Development, Inc., 1998 Mass.App.Div. 15, 18 (1998).* The civil one-trial system, however, governs cases, such as this one, commenced in Norfolk County on and after January 1, 1998. St.1996, c. 358 as amended by St.1998, c. 157. We assume the Dedham District Court had jurisdiction over this case, filed in 1999, and specifically over this claim. *See Ravnikar v. Bogojavlensky, 438 Mass. 627, 632-34, 782 N.E.2d 508 (2003);* J. Shapiro, M. Perlin & J. Connors, 48A *Massachusetts Prac: Collection Law* § 14:27 n. 4 (2000) (jurisdiction under M.G.L. c. 109A may be available under civil one-trial system). But for procedural and substantive reasons, Discover's claim of error regarding this theory must fail.

This claim alleged, in conclusory fashion, that David and Nassif "committed fraud by exacting monies from the Trust owed to Discover," and "by wrongfully and intentionally diverting assets of [the Trust] to themselves or other interests of [theirs], [and by] creat[ing] other entities in order to avoid payment of ... Discover with knowledge of the obligations to ... Discover, of [the Trust]." Such allegations fall short of the requirement of M.R.Civ.P. 9(b) to state with particularity the averments of fraud or fraudulent conveyance. *See, e.g., Nota Constr. Corp. v. Keyes Assocs., Inc., 45 Mass.App.Ct. 15, 16, 694 N.E.2d 401 (1998); Stigum v. Skloff, 2000 Mass.App.Div. 63 (2000), aff'd 433 Mass. 1011, 745 N.E.2d 349 (2001).* Further, the elements of common-law fraud and statutory fraudulent conveyance are distinct. *Cf. Reisman v. KPMG Peat Marwick LLP, 57 Mass.App.Ct. 100, 108-09, 787 N.E.2d 1060 (2003) and* M.G.L. c. 109A. Discover apparently did not move further to amend the complaint or to conform its pleadings to the evidence during or following trial. M.R.Civ.P. 15(b). This procedural shortfall alone suffices to sink Discover's claim the trial judge should have found David and Nassif liable for fraudulent conveyance.

[4] Even assuming the trial judge was justified in considering at all a claim for fraudulent conveyance, we do not find erroneous his conclusion that Discover's reliance on that theory was misplaced. The Uniform Fraudulent Conveyance Act ("UFCA") was repealed in 1996 and replaced by the Uniform Fraudulent Transfer Act ("UFTA"), St.1996, c. 157, effective October 8, 1996. The UFCA had provided, in M.G.L. c. 109A, § 7, and the UFTA provides in c. 109A, § 5, that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors." *See, e.g., First Fed. Sav. & Loan Ass'n of Galion, Ohio v. Napoleon, 428 Mass. 371, 373, 701 N.E.2d 350 (1998); Yankee Microwave, Inc. v. Petricca Communications Sys., Inc., 53 Mass.App.Ct. 497, 514 & n. 21, 760 N.E.2d 739 (2002).*

**\*5** Discover argues that David and Nassif transferred all Trust money into other accounts so as to render the Trust insolvent, resulting in Discover's loss of the judgment proceeds. Under either version of Ch. 109A, Discover asserts, the transactions were *per se* fraudulent. Given that, and the fact that the transfers were made for inadequate consideration, the argument continues, the trial judge's conclusion that the transfers did not violate the terms of the trust was erroneous.[FN9] Generally, the assignment or distribution of assets to the persons equitably entitled to them is not a fraud on the creditors of the trust. *See Metropolitan Life Ins. Co. v. Pollack, 332 Mass. 582, 585, 126 N.E.2d 373 (1955).*[FN10] Discover having failed to file a properly formulated Rule 64A(b) request for ruling of law so as to preserve for this appeal any issue of law as to the adequacy of the evidence to support the trial judge's findings, *see, e.g., Cristoforo v. National Amusements, Inc., 2001 Mass.App.Div. 162 (2001),* it is restricted to a consideration of whether the court's findings of fact were "clearly erroneous." *Id.* We, in exploring that consideration, "do[ ] not weigh anew evidence in support of the appellant's position." *Id.* We cannot say that the trial judge's conclusion in this regard was clearly erroneous.

FN9. This Court was provided no documentation regarding the creation or terms of the Trust.

FN10. Alternatively, the trial judge might have been unconvinced that distributions from the Trust were motivated by an actual

Not Reported in N.E.2d                                                                              Page 7
Not Reported in N.E.2d, 2003 Mass.App.Div. 172, 2003 WL 22387138 (Mass.App.Div.)
**(Cite as: Not Reported in N.E.2d)**

intent, as distinguished from intent presumed in law, to hinder, delay, or defraud Discover as a creditor of the trust. *See, e.g.,* M.G.L. c. 109A, § 7 (UFCA), replaced by M.G.L. c. 109, § 5 (UFTA); *Yankee Microwave, Inc.,* 53 Mass.App.Ct. at 514 & n. 21, 760 N.E.2d 739.

### UNJUST ENRICHMENT

[5] Although the trial judge did not directly address this theory of recovery, he found no contractual relationship between Discover on the one hand and David and Nassif, individually, on the other. Although we remand the case on the question of whether David may be found individually liable on the Ch. 93A violation, he having already been so found as trustee, we cannot say that the trial court's conclusion regarding the capacities of the contracting parties was clearly erroneous. *Id.* "Unjust enrichment, as a basis for restitution, requires more than benefit. The benefit must be unjust, a quality that turns on the reasonable expectations of the parties. See *Salamon v. Terra,* 394 Mass. 857, 859, 477 N.E.2d 1029 (1985)." *Community Builders, Inc. v. Indian Motocycle Assocs., Inc.,* 44 Mass.App.Ct. 537, 560, 692 N.E.2d 964 (1998). However reasonable was Discover's expectation of payment from the Trust, such an expectation as to David and Nassif individually was not necessarily so, and we do not find that the trial court's finding that David and Nassif owed no contractual duty to Discover was "clearly erroneous."

### BREACH OF CONTRACT and INTERFERENCE WITH ADVANTAGEOUS RELATIONSHIP

[6] Discover suggests the only way its contract with the Trust could be fulfilled was by the Trust paying the commissions to Discover. David, Discover argues, prevented the Trust from fulfilling that contractual obligation by stripping the Trust of its assets.

To succeed on a claim of intentional interference with contractual or advantageous relations would require Discover demonstrating that David knowingly and for an improper purpose or by improper means induced a party to breach a contract with Discover, resulting in damage. *Buster,* 438 Mass. at 652, 783 N.E.2d 399. However imaginatively invoked here, this tort ill fits the factual setting Discover posits. That this theory assumes that David and the Trust are separate and distinct parties,

and is thus inconsistent with other aspects of Discover's theme, is not itself problematic. But even assuming David depleted the Trust of assets, describing that conduct as "inducing" the Trust to breach its contract with Discover stretches the nature of the tort beyond precedent or reason. That must be our conclusion even could we say that the trial court was clearly wrong, which we do not, in finding that David did not wrongfully take money from the Trust, since demonstrating that the inducing was done "for an improper purpose or by improper means" would be an essential element of the claim. *Id.; see also, e.g., Dziamba v. Warner & Stackpole LLP,* 56 Mass.App.Ct. 397, 408, 778 N.E.2d 927 (2002) and cases cited. That the trial judge did not find the elements of this tort here, or even find the existence of a contract between Discover and David individually, is not clearly wrong.

**\*6** We affirm the judgment in favor of David and Nassif, with the exception of the Ch. 93A theory. We remand the case to the trial judge for a determination of whether David is liable individually for a Ch. 93A violation because of the Superior Court finding as to David as trustee, or based on any conduct following that decision.

So ordered.

Mass.App.Div.,2003.
Discover Realty Corp. v. David
Not Reported in N.E.2d, 2003 Mass.App.Div. 172, 2003 WL 22387138 (Mass.App.Div.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.