187

# COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss

SUPERIOR COURT
CIVIL ACTION
NO. 01-03645

## CRYSTAL SALVAS & another,
### on behalf of themselves and others similarly situated

vs.

## WAL-MART STORES, INC.

## MEMORANDUM OF DECISION AND ORDER ON
## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The plaintiffs, a class of hourly employees who worked at defendant Wal-Mart Stores,

Inc. ("Wal-Mart") from August 21, 1995 through December 31, 2005, commenced this class

action alleging that Wal-Mart artificially lowered its stores' payroll in order to maximize its own

profitability by denying the plaintiffs their earned meal periods and rest breaks and by failing to

compensate the plaintiffs for all time worked. The plaintiffs further allege that, with this

conduct, Wal-Mart violated its own express policies. This case is before the court on Wal-Mart's

motion for partial summary judgment. For the following reasons, Wal-Mart's motion is

ALLOWED in part and DENIED in part.

### BACKGROUND

The relevant facts in this case, recounted in numerous decisions and orders of this court,

will be discussed below when relevant to the legal analysis. For purposes of summary judgment,

the facts are taken in the light most favorable to the plaintiffs, the non-moving parties in this

case. See Nelson v. Salem State Coll., 446 Mass. 525, 530 (2006).

### DISCUSSION

Summary judgment is granted where there are no genuine issues of material fact and

where the moving party is entitled to judgment as a matter of law. Mass. R. Civ. P. 56(c);
Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983); Community Nat'l Bank v.
Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively
demonstrating the absence of a triable issue, and that the summary judgment record entitles the
moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17
(1989). As the moving party has this burden, the court considers the evidence presented in the
light most favorable to the non-moving party. Mass. R. Civ. P. 56(c); Augat, Inc. v. Liberty Mut.
Ins. Co., 410 Mass. 117, 120 (1991); Parent v. Stone & Webster Eng'g Corp., 408 Mass. 108,
113 (1990); Flynn v. City of Boston, 59 Mass, App. Ct. 490, 491 (2003). The moving party may
satisfy its burden either by submitting affirmative evidence negating an essential element of the
opposing party's case or by demonstrating that the opposing party has no reasonable expectation
of proving an essential element of its case at trial. Flesner v. Technical Communications Corp.,
410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to
defeat the motion for summary judgment. LaLonde v. Eissner, 405 Mass. 207, 209 (1989); see
Polaroid Corp. v. Rollins Envtl. Servs., Inc., 416 Mass. 684, 696 (1993) ("[B]are assertions and
conclusions . . . are not enough to withstand a well-pleaded motion for summary judgment.").

I. Breach of Implied Contract (Counts I and II)

In Counts I and II of their Second Amended Complaint, the plaintiffs allege that they had
an implied-in-fact contract with Wal-Mart pursuant to which Wal-Mart promised to allow
employees to take meal and rest breaks based on the number of hours they worked; Wal-Mart
promised to compensate employees for their rest breaks; and Wal-Mart promised to compensate

2

employees for the time they worked at Wal-Mart. The plaintiffs further allege that, in the course

of maximizing its own profitability and in spite of its own policies to the contrary, Wal-Mart

breached the implied contract with its employees by failing to provide the plaintiffs with their

earned meal and rest breaks (Count I); by failing to compensate the plaintiffs for their earned rest

breaks (Count I); and by failing to compensate the plaintiffs for their time worked off-the-clock

(Count II). According to the plaintiffs, the terms of their implied contract are created by Wal-

Mart's PD-07 and PD-43 policies; Wal-Mart's Associate Handbook ("Handbook"); the uniform

orientation program for new employees; Wal-Mart's treatment of the plaintiffs; and Wal-Mart's

general conduct as employer. In moving for summary judgment on Counts I and II, Wal-Mart

disputes that an implied contract exists, relying for support on the factors set forth in Jackson v.

Action for Boston Cmty. Dev., 403 Mass. 8, 14-15 (1988), and affirmed in O'Brien v. New

England Tel. & Tel. Co., 422 Mass. 686, 692 (1996), and the deposition testimony from certain

plaintiff-employees regarding their understanding that the materials did not constitute a contract,

implied or otherwise.

  Wal-Mart properly relies on Jackson and O'Brien as support for their motion. It is

undisputed that the plaintiffs in this case are, or were, at-will employees. This relationship, at the

very least "encompasses an agreement by the employee to perform specified work and an

agreement by the employer to pay for the work performed." Gasior v. Massachusetts Gen. Hosp.,

446 Mass. 645, 650 n.7 (2006). The plaintiffs in Jackson were also at-will employees "operating

under an implied contract of employment." 403 Mass. at 12-13. As in this case, the question

before the court on the parties' motions for summary judgment in Jackson was "whether the

terms of the personnel manual formed the basis of that contract . . . [that went beyond the] simple

3

employment at will." 403 Mass. at 13.

The court held that "the conduct of the parties, and their relation, fell short of that which would allow a jury to decide reasonably that the parties had entered an implied contract based on the manual's terms." Id. at 15. The court reached this conclusion based on the following factors:

> "the defendant [employer] retained the right to modify unilaterally the personnel manual's terms. . . . [;] [t]he personnel manual[] [contained] language that it [was] provided for 'guidance' as to the defendant's 'policies' . . . . [;] nothing in the circumstances reveal[ed] any negotiation over the terms of the personnel manual. . . . [;] no term of employment was stated in the personnel manual. . . . [;] [t]he plaintiff [did] not argue that any special attention was called to the manual by the defendant; there is no indication that the plaintiff signed the manual, or in any way manifested his assent to it or acknowledged that he understood its terms."

Id. at 14-15.

In O'Brien, the court held that those "[p]rinciples[, referred to as Jackson factors,] stated in the Jackson opinion remain sound." 422 Mass. at 691. These Jackson factors, however, "are not a rigid list of prerequisites, but rather explain factors that would make a difference or might make a difference in deciding whether the terms of a personnel manual were at least impliedly part of an employment contract." Id. at 692. Just as in Jackson and this case, the plaintiff in O'Brien was an at-will employee who alleged that the defendant's personnel manual provided her with contractual rights beyond those of an at-will employee. Id. at 687, 690. In that case, the defendant "did not explicitly purport to retain the right unilaterally to modify the personnel manual." Id. at 694. "The annual distribution of new manuals, however, [might] support the view that there was a right unilaterally to amend the manual." Id. at 693 n.3. Additionally, "[t]he personnel manual . . . contained no reservation of rights or disclaimer of obligations. Indeed, [the defendant] appear[ed] to have followed the manual's procedures as a regular

4

administrative practice . . . ." Id. at 694. The court concluded that the terms of the personnel manual created contractual rights in the plaintiff. Id. at 687.[1]

"'Ordinarily the question whether a contract has been made is one of fact,' unless the evidence 'consists only of writings, or is uncontradicted.'" Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 419 (2005), quoting Situation Mgmt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 879 (2000). Here, the Handbook, PD-07, and PD-43 are the writings the plaintiffs allege constitute the terms of their employment contract; they also point to the new associate orientation and Wal-Mart's conduct towards employees as creating the terms of their contract as well. "An employee remaining with the employer after receiving a manual provides the consideration necessary to support the contract." O'Brien, 422 Mass. at 691, citing Jackson, 403 Mass. at 14. There is no dispute that the consideration element necessary to form a contract is present in this case. Whether the written and oral communications, taken together, create a contract, however, is a question for the jury to determine.[2]

A. The Associate Handbook

"Wal-Mart admits that it expected that new associates would be given a copy of whichever [H]andbook was current." Wal-Mart's Response to Plaintiff Crystal Salvas' Second Set of Requests for Admissions, Exhibit 3 to Affidavit of Carolyn Beasley Burton in Support of Plaintiffs' Opposition to Defendant Wal-Mart Stores, Inc.'s Motion for Summary Judgment

---

[1]The plaintiff in O'Brien ultimately lost on her claim that the defendant violated her contract of employment, set forth in the personnel manual, because she did not comply with the grievance procedures the personnel manual provided. Id. at 695.

[2]Even if this court found that an implied-in-fact contract existed between the plaintiffs and Wal-Mart, whether Wal-Mart breached that contract is a disputed question of fact for the jury to resolve. See, e.g., Schaer v. Brandeis Univ., 432 Mass. 474, 486 (2000).

5

("Wal-Mart Admissions, Burton Exhibit 3"), at p. 4, #18. As part of its motion for summary

judgment, Wal-Mart provided copies of its Handbook from 1994, from 1998, and from 2001.[3]

In the first section of the Handbook, titled "Welcome," employees are informed that "[t]his

handbook is a guide, not a legal contract. It is an introduction to . . . Company culture; a way to

inform [employees] of things [employees] should know and do as a Wal-Mart Associate. No

handbook can cover everything. The rules and policies in this handbook may change. [Wal-

Mart] encourage[s] [employees] to ask many questions." 1998 Handbook, Exhibit 3 to Affidavit

of Lexie G. White in Support of Defendant Wal-Mart Stores, Inc.'s Motion for Summary

Judgment ("1998 Handbook, White Exhibit 3"), at WM-JAMES-0649.[4] The final section of the

Handbook, titled "Acknowledgment," contains the following disclaimer:

> "This handbook is intended solely as a general information guide to let Associates
> know about the current policies and programs Wal-Mart has in place. The
> policies and benefits presented in this handbook are for [their] information and do
> not constitute terms or conditions of employment. This handbook supersedes all
> prior handbooks. This handbook is not a contract. From time to time, Wal-Mart
> may determine that it needs to change some of the policies or programs in this
> handbook in order to better meet the requirements of [its] Associates and the

---

[3]With respect to this discussion of the Handbook, this court will quote the 1998 version
and will note variations among the versions in footnotes.

[4]The 2001 version of the Handbook is slightly different, but the essence is the same:
"[t]his handbook is a guide, not a legal contract. It is an introduction to . . . Company culture.
No handbook can cover everything. The rules and policies in this handbook may change." 2001
Handbook, Exhibit 4 to Affidavit of Lexie G. White in Support of Defendant Wal-Mart Stores,
Inc.'s Motion for Summary Judgment ("2001 Handbook, White Exhibit 4"), at WM-JAMESW-
0701. The 1994 version is also slightly different, but, again, the essence remains the same:
"some rules or policies in this handbook may change because it is a guide, not a legal contract. It
is an introduction to . . . Company culture, a way to inform [employees] of things [employees]
should know and do to be successful. But no handbook can cover everything - [Wal-Mart]
encourage[s] [employees] to ask many questions." 1994 Handbook, Exhibit A to Affidavit of
LaTonia George in Support of Defendant Wal-Mart Stores, Inc.'s Motion for Summary Judgment
("1994 Handbook, George Exhibit A"), at WMHOe-735000-001-00000124.

> Company. If any policies or programs are changed, modified, deleted, or
> supplemented, Wal-Mart will notify Associates as soon as possible."

1998 Handbook, White Exhibit 3, at WM-JAMES-0693.[5] The employee must also sign this

page, indicating the following:

> "I acknowledge that I have received and read this handbook as well as this
> Acknowledgment, and that I have had the opportunity to ask my Manager
> questions about both and that I fully understand the contents of both as they relate
> to my employment with Wal-Mart. I understand that the information contained in
> this handbook are guidelines only, and are in no way to be interpreted as a
> contract."

1998 Handbook, White Exhibit 3, at WM-JAMES-0693.[6]

In addition to these statements that the Handbook is not a contract, the Handbook

contains a provision titled "Managing Your Time" within the "Policies and Procedures" section,

in which employees are instructed:

> "[Wal-Mart's] expectation is every clear. Always clock in to begin your workday
> and at other appropriate times . . . . If you forget to do this, notify your Supervisor
> immediately so corrections can be made. . . . Remember that working off the
> clock is not only against Wal-Mart policy - it's against the law. Always clock in
> when you are working - Always! There are no exceptions."

1998 Handbook, White Exhibit 3, at WM-JAMES-0671.[7]

---

[5]The 2001 version is identical to the 1998 version. The 1994 version is essentially the
same, but it does not have the sentence that states, "This handbook supersedes all prior
handbooks," and it places the word, "However," at the beginning of the last sentence. 1994
Handbook, George Exhibit A, at WMHOe-735000-001-00000150.

[6]The 2001 version is identical to the 1998 version. The 1994 version is slightly different:
"I acknowledge that I have received and read this handbook as well as this Acknowledgment, and
that I have had the opportunity to ask my management supervisor questions about both and that I
fully understand the contents of both as they relate to my employment at Wal-Mart." 1994
Handbook, George Exhibit A, at WMHOe-735000-001-00000150.

[7]The 2001 version is identical to the 1998 version. The 1994 is slight different in that it
instructs employees to "clock in *before beginning* your work day" and it places the last three

B. PD-07

PD-07 places in writing Wal-Mart's meal and rest break policy.[8] Specifically,

"Associates will be provided break and meal periods during their scheduled work time consistent

with the policy guidelines."[9] PD-07, Exhibit 1 to Affidavit of Carolyn Beasley Burton in Support

of Plaintiffs' Opposition to Defendant Wal-Mart Stores, Inc.'s Motion for Summary Judgment

("PD-07, Burton Exhibit 1"), at WMJAMES-034648. Rest breaks are fifteen minutes in length,[10]

and the number of rest breaks an employee receives "depends on the number of consecutive

hours an associate works." PD-07, Burton Exhibit 1, at WMJAMES-034648. If an employee

works under three hours, she is not entitled to a rest break at all; if she works three to six hours,

---

sentences in bold print. 1994 Version, George Exhibit A, at WMHOe-735000-001-00000133
(emphasis added).

   [8]Both Wal-Mart and the plaintiffs have provided the various versions of PD-07: the
February 1, 1994, revision; the September 25, 1995, revision; the September 26, 1996, revision;
the April 3, 1998, revision; the October 13, 1998, revision; the February 10, 2001, revision; the
March 21, 2003, revision; the May 1, 2004, revision; and January 1, 2005, revision. As with the
Handbook, this court will note any variations in footnotes.

   [9]This "Policy" remained the same throughout the revisions until the March 21, 2003,
revision which contains the following provision under "Policy:"
             "Associates will be provided breaks and meal periods during their work time
             consistent with this policy. Associates are to take full, timely, uninterrupted
             breaks and meal periods. Associates will be subject to disciplinary action for
             repeatedly failing to clock in or out for meal periods, missing breaks and/or meal
             periods, or taking breaks and/or meal periods that are too long or too short or
             untimely. Supervisors and salaried members of Management will also be subject
             to disciplinary action for interrupting or failing to provide breaks and/or meal
             periods in accordance with this policy and state laws."
PD-07, Burton Exhibit 1, at WMJAMES-036616. The 2004 and 2005 revisions also include
sentences about state laws.

   [10]In the 2003, 2004, and 2005 versions, the length of rest breaks is defined as "15
uninterrupted minutes . . . ." PD-07, Burton Exhibit 1, at WMJAMES-036616, -036146, -
043532.

8

she is entitled to one rest break; and if she works over six hours she is entitled to two rest breaks.

"Associates receive compensation for break time at their regular rate of pay." PD-07, Burton

Exhibit 1, at WMJAMES-034649.

PD-07 also defines meal periods, stating that they "are at a minimum of 30 minutes . . . .

Associates who work more than six (6) consecutive hours will be provided a meal period." PD-

07, Burton Exhibit 1, at WMJAMES-034649. "Hourly associates are expected to 'clock-out' at

the start of their meal period and 'clock in' when returning to work." PD-07, Burton Exhibit 1,

at WMJAMES-034649. Under the heading "Interruption of Break and Meal Periods" is the

following provision:

> "Supervisors and management may not require nor request associates to perform
> work during their break and meal periods, except in extreme emergencies where
> no other associate is available.
>
> "Hourly associates whose break or meal period is interrupted to perform work will
> receive compensation for the entire period at their regular rate of pay and be
> allowed an additional break or meal period."

PD-07, Burton Exhibit 1, at WMJAMES-034649.[11]

C. PD-43

___

[11]The "Interruption" section changes in the 2001 and 2003 versions to the following:
"Supervisors and Management may not require nor request Associates to perform work during
their break and meal periods, except in extreme emergencies where no other Associate is
available." PD-07, Burton Exhibit 1, at WMJAMES-5206, -036617. In the 2004 and 2005
revisions, the "Interruption" section is as follows:

> "Supervisors and salaried members of management may not require nor request
> Associates to perform work during their breaks and meal periods. If an
> Associate's meal period is interrupted by a supervisor or a salaried member of
> management for any work-related reason prior to the passage of 20 uninterrupted
> minutes, the Associate should be compensated for the short or interrupted meal
> period. Some states may require payment if meal period is interrupted after 20
> minutes."

PD-07, Burton Exhibit 1, at WMJAMES-036147, -043533-043534.

PD-43[12] sets forth Wal-Mart's off-the-clock policy as follows:

> "[Wal-Mart] [is] committed to compensating every Associate for the work he/she performs. No Wal-Mart Associate should perform work for the company without compensation. Hourly Associates are required to clock in prior to commencing work, and clock out during meal breaks and end of scheduled shift, when no longer performing work for the Company. It is a violation of the law and Company policy to work off the clock. Associates who work off the clock will be paid for such time and the Coaching Policy will be used to correct the problem."

PD-43, Exhibit 2 to Affidavit of Carolyn Beasley Burton in Support of Plaintiffs' Opposition to

Defendant Wal-Mart Stores, Inc.'s Motion for Summary Judgment ("PD-43, Burton Exhibit 2"),

at WMJAMES-009144.[13]  PD-43 defines "off-the-clock" work as "[w]ork which was performed

while an Hourly Associate's time was not being recorded; the Associate's time spent working

was not maintained by an automated timing device, (i.e., time clock), or kept track of manually to

subsequently [sic] record the time worked for appropriate compensation." PD-43, Burton

Exhibit 2, at WMJAMES-0099144.[14]

---

[12]Wal-Mart and the plaintiffs have provided the February 1, 1994, revision; the June 28, 1999 revision; the August 1, 2001, revision; January 1, 2002, revision; the March 1, 2004, revision. Again, this court will note variations in footnotes.

[13]The 1999, 2001, and 2002 versions are identical to the 1994 version with exception of an additional final sentence: "The Facility Manager must ensure Associates are properly compensated." PD-43, Burton Exhibit 2, at WMJAMES-5247, -009257, -033922. In addition to that final sentence, the 2004 version also adds a sentence to the beginning of the policy statement, "It is against Wal-Mart policy for any Associate to perform work without being paid[;]" and a sentence in the middle, "If a violation is reported, a prompt and thorough investigation will be completed and corrective action will be taken when necessary." PD-43, Burton Exhibit 2, at WMJAMES-035505.

[14]The 1999, 2001, and 2002 versions are identical to the 1994 version, quoted above. The 2004 revision is slightly different, defining off-the-clock work as "[w]ork performed while an Hourly Associate's time was not recorded (i.e., by an electronic timekeeping devise or manually tracked) and the Associate was not paid for the time worked." PD-43, Exhibit 2, at WMJAMES-035505.

10

In a section titled "Notice," PD-43 states that "All Associates are made aware working off the clock is against Company policy through orientation, initially, and by notices posed by the time clock in all work locations. Notices are required to be posted conspicuously for all Hourly Associates to see." PD-43, Burton Exhibit 2, at WMJAMES-009145.[15] The final page of PD-43 is a "Working Off the Clock Notice" form that an employee must fill out if he works off the clock.[16] The employee must fill in the date, time, and length of time he worked off the clock, and he must also calculate the compensation he is due. He and his supervisor, along with a witness, must sign and date the form under the following acknowledgment:

> "I hereby acknowledge that I have been fully compensated for all the time I worked off the clock during the time period shown above, and that there are no other times for which I have worked off the clock and not been compensated. I further acknowledge that I am aware of Wal-Mart's policy prohibiting working off the clock."

PD-43, Burton Exhibit 2, at WMJAMES-009147.[17]

D. New Associate Orientation

"Wal-Mart admits that generally new associates attend an orientation . . . [but] Wal-Mart denies that every new associate was offered an identical or equivalent orientation. Wal-Mart denies that every new associate attended an orientation." Wal-Mart Admissions, Burton Exhibit

---

[15]The 1999, 2001, and 2002 revisions state in the "Notice" section, "All Associates are made aware working off the clock is against Company policy through orientation, the Associate Handbook, and notices posted by the time clock." PD-43, Burton Exhibit 2, at WMJAMES-5247, -009257, -033923. The 2004 revision states, "All associates are made aware that working off the clock is against Company policy during orientation, through the training CBLs, and notices posted by the time clock." PD-43, Burton Exhibit 2, at WMJAMES-035505.

[16]The 1994, 1999, 2001, and 2002 versions include this form; the 2004 version does not.

[17]The 1999 and 2001 versions are the same as the 1994 version, as is the 2002 version which also requires the signature of the Facility Manager.

11

3, at p. 5, # 20. The plaintiffs provided as part of their opposition to Wal-Mart's motion for

summary judgment a "New Associate Orientation" schedule and what appears to be a guide for

orientation leaders which gives detailed descriptions of each topic to be discussed at

orientation.[18]  New Associate Orientation, Burton Exhibit 3 ("Orientation, Burton Exhibit 3"), at

WMJAMES-501368.  Meals and Breaks are listed as a topic under "Policies," and PD-07 is

cited; "[c]locking in and out for meals" is a bulleted point under this topic.  Orientation, Burton

Exhibit 3, at WMJAMES-501373.  "Working Off the Clock" is another topic under "Policies,"

and PD-43 is cited.  The provision that follows this topic is similar to the definition of off-the-

clock work contained in PD-43 itself: "Associates are required to clock in prior to commencing

work, and clock out during meal breaks and end of scheduled shift, when not longer performing

work for the Company.  It is a violation of the law and Company policy to work off the clock.

Associates who work off the clock will be paid for such time, and the Coaching Policy . . . will

be used to correct the problem."  Orientation, Burton Exhibit 3, at WMJAMES-501373.

Under "Store Manager Talking Points," the orientation leader is instructed to "[d]iscuss

each of the 5 Non-Negotiables."  Orientation, Burton Exhibit 3, at WMJAMES-501390.  The

fifth "non-negotiable" is that

> "All Associates will receive their breaks and lunches on time. [Wal-Mart]
> appreciate[s] [employees'] dedication to service, however, [they] are not allowed
> to work off the clock.
> - Associates will be provided break and meal periods during their scheduled
>   work shift.
> - No Associate should work over six hours without taking at least a 30-
>   minute meal period.
> - Associates will never be required nor requested to perform during their

---

[18]The provided New Associate Orientation information has a date at the bottom of
November 2002.

> break and/or meal periods.
> • NEVER work off the clock."

Orientation, Burton Exhibit 3, at WMJAMES-501390.

### E. Analysis

The issue of whether, through the Handbook, PD-07, PD-43, and its own conduct, Wal-Mart contractually obligated itself to provide to its employees meal periods and rest breaks and to pay its employees for all time worked is materially disputed and must be decided by the jury.[19] Like in Jackson, Wal-Mart expressly retained the right to unilaterally modify the terms of the Handbook. Although Wal-Mart made no such express statement with respect to PD-07 and PD-43, the fact that Wal-Mart published new versions of the policies over the course of the class period suggests that Wal-Mart retained such right as to PD-07 and PD-43 as well. See O'Brien, 422 Mass. at 693 n.3 ("The annual distribution of new manuals . . . may support the view that there was a right unilaterally to amend the manual."). Also similar to Jackson, it is undisputed that Wal-Mart did not negotiate the terms of the Handbook, PD-07, or PD-43 with its employees, nor did it negotiate the topics covered at orientation.

Unlike in Jackson, however, the plaintiffs allege that "special attention was called to the [Handbook, PD-07, and PD-43] by [Wal-Mart] . . . ." The plaintiffs provided portions of from

---

[19]This court notes that in its opposition to the plaintiffs' 2004 motion for partial summary judgment, dated November 8, 2004, Wal-Mart argued with respect to the plaintiffs' implied contract claims that "[p]laintiffs bear the burden of showing that an implied contract of employment was formed, which included the terms of the handbook or policy. . . . Plaintiffs have not satisfied that burden, and ultimately the question of whether the factual circumstances would support their claim that any version of PD-07 or a handbook is a contract is a matter left for resolution by a jury." Defendant Wal-Mart Stores, Inc.'s Opposition to Plaintiffs' Motion for Partial Summary Judgment, Exhibit 11 to Affidavit of Carolyn Beasley Burton in Support of Plaintiffs' Opposition to Defendant Wal-Mart's Motion for Summary Judgment, at p. 9.

the deposition of Robert Rolandelli ("Rolandelli"), a Wal-Mart store manager, who testified that Wal-Mart communicated its policies to its employees through computer-based learning ("CBL"), daily meetings, the Handbook, and "Pipeline," Wal-Mart's internal web site. Additionally, Rolandelli testified that Wal-Mart "communicate[s] the terms of PD-07 to the associates . . . . [and that PD-07 is] made available to them during orientation." Rolandelli Deposition, Exhibit 4 to Affidavit of Carolyn Beasley Burton in Support of Plaintiffs' opposition to Defendant Wal-Mart Stores, Inc.'s Motion for Summary Judgment ("Rolandelli Deposition, Burton Exhibit 4"), at p. 95. The detailed orientation schedule also specifically cites to PD-07 as well as to PD-43, suggesting that both documents are discussed at orientation.

Moreover, the plaintiffs provided portions of depositions from Wal-Mart employees who testified that they received the Handbook at orientation. See Crystal Salvas Deposition, Exhibit 13 to Affidavit of Carolyn Beasley Burton in Support of Plaintiffs' Opposition to Defendant Wal-Mart Stores, Inc.'s Motion for Summary Judgment ("Salvas Deposition, Burton Exhibit 13"), at pp. 227-229; Elaine Polion Deposition, Exhibit 14 to Affidavit of Carolyn Beasley Burton in Support of Plaintiffs' Opposition to Defendant Wal-Mart Stores, Inc.'s Motion for Summary Judgment ("Polion Deposition, Burton Exhibit 14"), at pp. 44-45; Joanne Perreault Deposition, Exhibit 17 to Affidavit of Carolyn Beasley Burton in Support of Plaintiffs' Opposition to Defendant Wal-Mart Stores, Inc.'s Motion for Summary Judgment ("Perreault Deposition, Burton Exhibit 16"), at pp. 38-39. But see Kristy Mitchel Deposition, Exhibit 15 to Affidavit of Carolyn Beasley Burton in Support of Plaintiffs' Opposition to Defendant Wal-Mart Stores, Inc.'s Motion for Summary Judgment ("Mitchell Deposition, Burton Exhibit 15"), at p. 129 (testifying that she could not recall whether she received copy of Handbook at orientation)

14

The court in Jackson "noted that, if the manual states that it provides only guidance as to the employer's policies . . ., it may not create any enforceable rights." O'Brien, 422 Mass. at 693, citing 403 Mass. at 15. Here, too, the Handbook expressly states that is not a contract and serves only as a guide.

The Handbook's express disclaimer, however, is not fatal to the plaintiffs' claim. O'Brien holds that "[o]ther language in the manual or employment practices may demonstrate otherwise [i.e., that the Handbook may provide contract terms]." Id. For example, "[i]f an employer adheres to the procedures set forth in its manual, that would be some evidence that the terms of the manual were part of the employment contract." O'Brien, 422 Mass. at 691-692. The plaintiffs provided a copy of a poster with "We commit to you" at the top in bold and five points[20] following it:

> "1.  Management will support Open Door communications.
>
> 2.  Daily store meetings will be held for all shifts.
>
> 3.  All evaluations will be completed on time.
>
> 4.  Job announcements will be posted.
>
> 5.  All associates will receive their breaks and lunches on time.  We appreciate your dedication to service, however, at NO time should you work off the clock. YOU CAN COUNT ON US AT WAL-MART!"

Poster, Exhibit 8 to Affidavit of Carolyn Beasley Burton in Support of Plaintiffs' Opposition to Defendant Wal-Mart Stores, Inc.'s Motion for Summary Judgment ("Poster, Burton Exhibit 8"), at WMJAMES-034168. Employees are also instructed to contact Wal-Mart management if Wal-

---

[20]These are the "5 Non-Negotiables" that are discussed at orientation.  See Orientation, Burton Exhibit 3, at WMJAMES 501390

Mart "do[es] not meet these commitments . . . ." Poster, Burton Exhibit 8, at WMJAMES-034168.

The plaintiffs also supplied two e-mails from 2001 instructing managers to post it for employees to see. Exhibit 8 to Affidavit of Carolyn Beasley Burton in Support of Plaintiffs' Opposition to Defendant Wal-Mart Stores, Inc.'s Motion for Summary Judgment, at WMJAMES-034169, -038640-038641. Additionally, the plaintiffs provided a draft memo, dated October 30, 2002, to the "Workbench Team" instructing them to "add the following to the Store Manager and District Manager Workbench." Memo, Exhibit 8 to Affidavit of Carolyn Beasley Burton in Support of Plaintiffs' Opposition to Defendant Wal-Mart Stores, Inc.'s Motion for Summary Judgment ("Memo, Burton Exhibit 8"), at WMJAMES-037770. The memo instructs managers to verify that the poster is in place "with all members of management signatures[.]" Memo, Burton Exhibit 8, at WMJAMES-037770. The behavior of Wal-Mart's managers that presumably resulted as a response to these e-mails and the memo could likely lead "[t]he employees . . . [to] have a reasonable expectancy that management [would] adhere to [the Handbook's] provisions." O'Brien, 422 Mass. at 694.

Furthermore, "[t]he fact that the employer did not intend to make such an offer, and that there was no explicitly bargained-for exchange, does not matter if employees in general would reasonably conclude that the employer was presenting the manual as a statement of the conditions under which employment would continue." O'Brien, 422 Mass. at 693. In fact, the plaintiffs provided testimony from employees who believed that the Handbook constituted their employment contract. See Salvas Deposition, Burton Exhibit 13, at p. 101; Polion Deposition,

16

Burton Exhibit 14, at p. 52.[21]  Class Representative Crystal Salvas even testified that her

orientation leader told her that the Handbook "was a contract, and this is what [they] go by in

Wal-Mart. . . . the contract that [they] have at Wal-Mart for [their] employees." Salvas

Deposition, Burton Exhibit 13, at p. 109.

"Courts . . . have been reluctant to permit management to reap the benefits of a personnel

manual and at the same time avoid promises freely given in the manual that employees

reasonably believed were part of their arrangement with the employer." O'Brien, 422 Mass. at

694. Wal-Mart's stressing to its employees the importance of taking earned meal periods and

rest breaks and of not working off the clock, and Wal-Mart's instructing its managers to enforce

the meal period and rest break policies and to ensure that the employees are compensated for all

time worked, can contribute to a finding that the Handbook, PD-07, PD-43, and the orientation

information combine to form the terms of an implied contract. This issue, however, is for the

jury to resolve. Accordingly, Wal-Mart's motion for summary judgment on Counts I and II is

DENIED.[22]

## II. Breach of the Implied Covenant of Good Faith and Fair Dealing (Count III)

In Count III, the plaintiffs allege that all Massachusetts contracts contain an implied

covenant of good faith and fair dealing pursuant to which the parties cannot deprive each other of

---

[21]During her deposition, Polion first testified that she did not know if she had an
employment contract with Wal-Mart. Polion Deposition, Burton Exhibit 14, at p. 51. She then
testified that the Handbook is a contract. Polion Deposition, Burton Exhibit 14, p. 52-53. This
discrepancy is a matter for the jury to resolve.

[22]This court notes that the statute of limitations on contract actions is six years, G.L. c.
260, § 2, therefore the plaintiffs are entitled to proceed on these claims for the entire class period
of August 21, 1995, through August 21, 2001.

17

the benefits of the contract. As Wal-Mart breached its contractual agreement to compensate the plaintiffs for all time worked and to provide them with meal periods and rest breaks, the plaintiffs contend, Wal-Mart also breached the covenant of good faith and fair dealing implicit in that employment contract. Wal-Mart seeks summary judgment on this count.

The plaintiffs are correct that Massachusetts courts "'have implied an obligation of good faith and fair dealing in an employment contract terminable at will to prevent an employer from being unjustly enriched by depriving the employee of money that he had fairly earned and legitimately expected . . . ." King v. Driscoll, 424 Mass. 1, 7 (1996), quoting Kravetz v. Merchants Distribs., Inc., 387 Mass. 457, 463 (1982). However, "the obligation of good faith and fair dealing imposed on an employer requires that the employer be liable for the loss of compensation that is so clearly related to an employee's past service, when the employee is discharged without good cause." Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 672 (1981). Here, there is no allegation that Wal-Mart terminated the employment of any of the plaintiffs, and this court declines to extend the implied covenant of good faith and fair dealing beyond that context. Moreover, with this claim, the plaintiffs are essentially - and needlessly - replicating their implied contract claims in that they allege that they had the expectation that Wal-Mart would provide them with their earned meal periods and rest breaks and that Wal-Mart would pay them for all time worked. Accordingly, Wal-Mart's motion for summary judgment on Count III is ALLOWED.

## III.  Unjust Enrichment (Count IV)

In Count IV of their Second Amended Complaint, the plaintiffs allege that Wal-Mart was unjustly enriched by failing to pay the plaintiffs for missed meal periods and rest breaks and for

18

off-the-clock work. Wal-Mart seeks summary judgment on the plaintiffs' claim of unjust
enrichment as to damages for off-the-clock work only. "Unjust enrichment is defined as
'retention of money or property of another against the fundamental principles of justice or equity
and good conscience.'" Santagate v. Tower, 64 Mass. App. Ct. 324, 329 (2005), quoting Taylor
Woodrow Blitman Constr. Corp. v. Southfield Gardens Co., 534 F. Supp. 340, 347 (D. Mass.
1982).[23] "An equitable remedy for unjust enrichment is not available to a party with an adequate
remedy at law." Id.; see Fox v. F & J Gattozzi Corp., 41 Mass. App. Ct. 581, 589 (1996)
(holding that, where "plaintiffs have sustained causes of action for both breach of contract and
negligent misrepresentation, any damages under an unjust enrichment claim would, necessarily,
be duplicative").

        The plaintiffs do not dispute that having no adequate remedy at law is required to recover
under this claim; rather, the plaintiffs argue that this element can only be satisfied after trial. In
Commonwealth v. Mylan Labs, the defendants moved to dismiss the plaintiff's unjust
enrichment claim, arguing, in part, that the plaintiff had an adequate remedy at law. 357 F. Supp.
2d 314, 324 (D. Mass. 2005). A "'remedy at law cannot be considered adequate so as to prevent
equitable relief, unless it covers the entire case made by the bill in equity.'" Id., quoting
Hillsborough Township, Somerset County, N.J. v. Cromwell, 326 U.S. 620, 629 (1946).
Therefore, a "'suit in equity will lie where the remedy at law is not clear or as adequate and

_____

        [23]"In other situations, a benefit has been received by the defendant but the plaintiff has not
suffered a corresponding loss or, in some cases, any loss, but nevertheless the enrichment of the
defendant would be unjust. In such cases, the defendant may be under a duty to give to the
plaintiff the amount by which he has been enriched." Commonwealth v. Mylan Labs., 357 F.
Supp. 2d 314, 324 n.9 (D. Mass. 2005), quoting Restatement (First) of Restitution, § 1, cmt. e
(1951).

complete as that which equity can afford.'" Id., quoting G.E. Co. v. Callahan, 294 F.2d 60, 64 (1st Cir. 1961). The plaintiff in Mylan Labs. alleged that the legal remedies available to it would not provide it with the damages it sought in its unjust enrichment claim. Id.

Specifically, the defendants argued that the plaintiff had "an adequate remedy at law to recover overpayments." Id. The plaintiff, however, responded "that any remedies at law . . . would leave [d]efendants in possession of the fruits of their alleged fraud in the form of profits from increased sales and market share." Id. The defendants disputed that any such damages could possibly exist "under the Commonwealth's reimbursement procedures . . . ." Id. The court declined to resolve this issue "at this stage of the proceeding," noting that "[c]ourts have been flexible regarding when in the trial they require the plaintiff to choose its avenue of recovery." Id.

As noted above, in Count IV, the plaintiffs assert that Wal-Mart was unjustly enriched by failing to pay the plaintiffs for their off-the-clock work, and they seek that allegedly withheld compensation. The plaintiffs also seek compensation for their off-the-clock work in Count II in which they contend that Wal-Mart breached its implied contract with them. The damages sought in each of these claims is the same. Therefore, the remedy at law for Count II, should the plaintiffs prevail, is "'as adequate and complete as that which equity [namely the remedy for unjust enrichment should the plaintiffs prevail on that claim] can afford.'" 357 F. Supp. 2d at 324. This situation is distinguishable from Mylan Labs. where the court denied the defendant's motion to dismiss the plaintiff's unjust enrichment claim because of the uncertainty at that stage of the proceedings as to whether the remedy the plaintiff sought could actually exist given the plaintiff's reimbursement scheme. Id.

20

Accordingly, Wal-Mart's motion for summary judgment on Count IV is <u>ALLOWED</u> to the extent that the plaintiffs must decide under which theory they wish to proceed, that of implied contract (Count II) or unjust enrichment (Count IV).[24]

### IV.  Promissory Estoppel (Count V)

In Count V, the plaintiffs assert a claim of promissory estoppel with respect to Wal-Mart's alleged promises to pay the plaintiffs for all time worked and to provide the plaintiffs with their earned meal and rest breaks.  Wal-Mart seeks summary judgment on this claim, arguing that the plaintiffs cannot prove the required elements and that, in order to establish the element of reliance, the plaintiffs must conduct an individual inquiry into the experience of each plaintiff in the class, thereby necessitating class decertification.  Promissory estoppel requires the plaintiffs to prove "all the necessary elements of a contract other than consideration." Rhode Island Hosp. Trust Nat'l Bank v. Varadian, 419 Mass. 841, 850 (1995).  "'An essential element under the promissory estoppel theory [that substitutes for the element of consideration] is that there be an unambiguous promise and that the party to whom the promise was made reasonably relied on the representation [to his detriment]." Id. at 848, quoting Pappas Indus. Parks, Inc. v. Psarros, 24 Mass. App. Ct. 596, 599 (1987).

_____

[24]Specifically, in Count IV, the plaintiffs allege "Unjust Enrichment/Quantum Meruit/Restitution[.]"  This court notes that, as unjust enrichment is a quasi-contract theory, the statute of limitations for this claim is six years.  See G.L. c. 260, § 2; see also Bolen v. Paragon Plastics, Inc., 747 F. Supp. 103, 107 (D. Mass. 1990) ("Massachusetts cases often use the terms quantum meruit, quasi-contract and implied contract without distinguishing among them."); Massachusetts Respiratory Hosp. v. Department of Pub. Welfare, 414 Mass. 330, 338 (1993) (noting plaintiff alleged "quasi-contractual theories of unjust enrichment and quantum meruit"); Salamon v. Terra, 394 Mass. 857, 860 (1985) ("The underlying basis for awarding quantum meruit damages in a quasi-contract case is unjust enrichment of one party and unjust detriment to the other party.").  Count II, alleging breach of an implied contract, also has a six-year statute of limitations period under G.L. c. 260, § 2.

As discussed above, a genuine issue of material fact exists as to whether there is a contract. The element of consideration, however, namely continued employment, is present on these facts.[25] See O'Brien, 422 Mass. at 691. Therefore, as consideration exists, there is no claim under promissory estoppel. See Loranger Constr. Corp. v. E. F. Hauserman Co., 376 Mass. 757, 763 (1978) (holding that once consideration is found there is "no need to . . . deal[] with the legal effect of reliance in the absence of consideration"). It is not necessary for this court to consider the issue of individual inquiry into the reliance of each plaintiff. Consequently, Wal-Mart's motion for summary judgment on Count V is ALLOWED.

## V.  Conversion (Count VI)

In this count, the plaintiffs allege that Wal-Mart converted their property by failing to pay them their earned wages. According to the plaintiffs, the amount of these wages can be specifically determined based on the records contained in Wal-Mart's timekeeping system. Wal-Mart seeks summary judgment on this claim on the grounds that Massachusetts law does not recognize a claim for conversion of money in this context. "'The elements of conversion require that a defendant be proved to have "intentionally or wrongfully exercise[d] acts of ownership, control or dominion over *personal property* to which he has no right of possession at the time . . . .'"" Bleicken v. Stark, 61 Mass. App. Ct. 619, 622 n.2 (2004) (emphasis added) (alternation and ellipses in original), quoting Abington Nat'l Bank v. Ashwood Homes, Inc., 19 Mass. App. Ct. 503, 507 (1985).

In Discover Realty Corp. v. David, the defendant, a seller of real estate, "entered into an exclusive agency listing agreement to sell certain properties of the Trust [of which the defendants

_____

[25]This court intends to instruct the jury to that effect at trial.

were the trustee and beneficiary.]" 2003 Mass. App. Div. 172, 172 (2003). The sale of one of the trust's properties generated a commission to the plaintiff of $8,000. Id. When the defendants failed to pay the plaintiff this commission, it brought an action against one of the defendants as trustee in the Superior Court in order, in part, to recover the commission;[26] the defendant prevailed on this claim.[27] Id. Thereafter, the plaintiff brought this action against the defendants in their individual capacities for, in part, conversion because they evaded payment of the plaintiff's commission. Id. at 173.

The court held that the plaintiff "did not demonstrate at trial, [or on appeal] . . . , that an owed commission *or similar debt* [such as earned wages] is the kind of 'personal property' required to support this theory." Id. at 175. "[I]ntangible personal property that does not merge with or is not evidenced by any sort of document, such as a bankbook[,]" is not within the scope of a conversion action. Id. Where such a document exists, "the right of possession and dominion so inheres in the physical document that possession of that document governs exercise of the right itself." Id. "Exercise" in that context refers to the party alleging conversion because "[c]onversion of a bankbook . . . not only deprives the depositor of that document, but, more importantly, prevents his exercise of the right it embodies - the depositor cannot withdraw his balance." Id.

Here, the plaintiffs allege that the records in Wal-Mart's timekeeping system satisfy the requirement that a document evidence the intangible personal property of their allegedly earned

---

[26]This claim does not appear to have been a claim for conversion. See id.

[27]The plaintiff also sought its $11,250 commission on a property it did not sell but for which it "had produced a ready, willing and able buyer . . . ." Id. The plaintiff prevailed on its claim as to this commission as well, and the plaintiff collected that payment. Id. at 172, 173 n.3.

23

wages. Those records, however, belong to Wal-Mart;[28] as a result, the plaintiffs' possession of

the records would not automatically entitle the plaintiffs to the earned wages the records

allegedly represent in the same way a bankbook would. The plaintiffs' claim for conversion

therefore fails, and Wal-Mart's motion for summary judgment on Count VI is **ALLOWED**.[29]

## VI. Punitive/Treble Damages Under the Wage Act

In their Second Amended Complaint, the plaintiffs allege violations of G.L. c. 151, § 1A

(Counts VII); G.L. c. 151 § 1 (Count VIII); and G.L. c. 149, § 148 (Count IX), and they seek

treble damages on each of these counts. In a footnote contained within its argument on

conversion, Wal-Mart contends that it

> "is further entitled to summary judgment as to all of Plaintiffs' claims that seek
> punitive or treble damages based on the 'one-minute punch,' on the grounds that
> Plaintiffs have not come forward with the specific class-wide evidence necessary
> to succeed on their allegations of outrageousness or willfulness and have
> abandoned these claims. Plaintiffs appeared to have conceded as much at the
> Lanigan hearing [before this court] on July 27, 2006."

Defendant Wal-Mart Stores Inc.'s Memorandum in Support of Motion for Summary Judgment,

at p. 31 n.10. The plaintiffs contest this argument, asserting that the undisputed evidence

---

[28]Further, "'[a] demand is a necessary preliminary to an action for conversion where [as
here, allegedly,] the defendant's possession is not wrongful in its inception and demand and
refusal are required to put him in the position of a wrongdoer[.]'" Abington Nat'l Bank, 19
Mass. App. Ct. at 506-507, quoting Atlantic Fin. Corp. v. Galvam, 311 Mass. 49, 50-51 (1942).
Wal-Mart argues that the money representing the plaintiffs' allegedly earned wages was always
properly within Wal-Mart's possession, and, prior to this class action, the plaintiffs never made
any demand to Wal-Mart for that money. While it is undisputed that the plaintiffs never made
any such demand on Wal-Mart, this court need not resolve the "wrongful in its inception" issue
given that Wal-Mart's motion is allowed on other grounds.

[29]This court also notes that the plaintiffs have alleged claims for unpaid wages under G.L.
c. 151, § 1 (Counts VII, VIII); G.L. c. 151 § 1A (Count VII); and G.L. c. 149, § 148 (Count IX).
Thus, the loss of their conversion claim will not ultimately alter the potential outcome of their
case.

satisfies the standard necessary for treble damages under G.L. c. 149, §§ 148, 150.

It is undisputed that G.L. c. 149, § 150, permits a party to seek treble damages for a violation of G.L. c. 149, § 148. "[T]here is nothing in the plain language of the statute[, however,] that requires an award of treble damages. The text of the statute states only that a plaintiff 'may' institute a suit for damages that includes a request for treble damages." Wiedmann v. The Bradford Group, 444 Mass. 698, 709-710 (2005), citing Brittle v. Boston, 439 Mass. 580, 594 (2003). Whether to award treble damages is therefore "in a judge's discretion[,]" id. at 710, as long as the facts of the case support such an award. "[T]reble damages are punitive in nature, allowed only where authorized by statute, and appropriate where conduct is 'outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.'" Id., quoting Goodrow v. Lane Bryant, Inc., 432 Mass. 165, 178 (2000).

This court is not prepared to find that there is an absence of a factual issue with respect to whether Wal-Mart's conduct was outrageous. A fact-finder might conclude the plaintiffs' allegations as to Wal-Mart's goal of maximizing its profitability in violation of its own policies and at the expense of its employees are true and rise to the level of outrageousness such that the plaintiffs are entitled to treble damages on this claim. See Flesner, 410 Mass. at 809 ("In cases where motive, intent, or other state of mind questions are at issue, summary judgment is often inappropriate."). Accordingly, the plaintiffs are not precluded from seeking treble damages for their claim alleging a violation of G.L. c. 149, § 148,[30] for off-the-clock work.

---

[30]In responding to Wal-Mart's footnote, the plaintiffs presumably focus their attention on G.L. c. 149, § 148, because they allege a violation of that statute in Count IX, the only one of their statutory claims in which they specifically mention off-the-clock work. This court also notes that the same analysis applies as to G.L. c. 151, § 1A (Count VII), and G.L. c. 151, § 1 (Count VIII), as both statutes permit a party to seek treble damages. See G.L. c. 151, § 1B

## VII. Claims Concerning Meal Periods

Wal-Mart seeks summary judgment on all of the plaintiffs' claims concerning meal periods because, given the undisputed fact that meal periods are unpaid, a missed meal period does not result in economic damages. In response, the plaintiffs make a statutory argument, asserting that G.L. c. 149, § 100, provides an economic remedy for missed meal periods. The plaintiffs also make a contractual argument, pointing to Wal-Mart's alleged promise in the Associate Handbook to provide additional compensation for missed and shortened meal breaks, and to PD-07 which indicates that employees will be receive compensation and an additional break for missed and shortened meal periods and which contains a liquidated damages provision.

### A. Plaintiffs' Contractual Argument

As discussed above, the issue of whether there is an implied contract between Wal-Mart and the plaintiffs is a disputed issue for the jury to resolve. That notwithstanding, neither the plaintiffs nor their experts have established that the alleged contract terms provide a basis on which a jury may award damages for missed, interrupted, or shortened meal breaks. Unlike rest breaks, discussed below, meal periods are unpaid, therefore an employee who worked through a meal break already received compensation.

PD-07 provides that

"Supervisors and management may not require nor request associates to perform work during their meal break and meal periods, except in extreme emergencies where no other associate is available.

"Hourly associates whose break or meal period is interrupted to perform work will receive compensation for the entire period at their regular rate of pay and be

(allowing party to seek treble damages for violation of G.L. c. 151, § 1B); G.L. c. 151, § 20 (allowing party to seek treble damages for violation of G.L. c. 151, § 1).

allowed an additional break or meal period."

PD-07, Burton Exhibit 1, at WMJAMES-034650. The Handbook contains a similar provision: "Associates should not be required nor requested to perform work during their break and/or meal periods. Associates whose break or meal period is interrupted to perform work will be compensated at the appropriate rate of pay and may be provided an additional break or meal period." 1998 Handbook, White Exhibit 3, at WM-JAMES-0672.[31] These provisions therefore compensate the employee for the time he worked, but the provisions do not place a value on the employee's inability to take an unpaid meal period. Furthermore, as noted above, neither the plaintiffs nor their experts, Dr. Shapiro in particular, have suggested that such a value is calculable.

As there is no compensable loss for missed, interrupted, or shortened meal periods, Wal-Mart's motion for summary judgment on all of the plaintiffs' claims alleging missed meal breaks is accordingly **ALLOWED** on contractual grounds.

### B. Plaintiffs' Statutory Argument

In response to Wal-Mart's argument that they have not alleged any economic loss for their claim/s of meal break violations, the plaintiffs argue that G.L. c. 149, § 100, sets forth an economic remedy for missed meal periods. Section 100 of G.L. c. 149 states that "[n]o person shall be required to work for more than six hours during a calendar day without an interval of at

---

[31]During the August 29, 2006, conference call with the parties, Wal-Mart argued that the compensable interruption in the second sentence of PD-07 refers to those interruptions required or requested only "in extreme emergencies . . . ." PD-07, Burton Exhibit 1, at WMJAMES-034650. Such a reading of the terms of PD-07, and, as they are similar, the terms of the Handbook, is illogical. Wal-Mart's failure on this argument, however, is irrelevant to its motion for summary judgment on the issue of missed, interrupted, and shortened meal breaks, because it prevails on other grounds, above.

27

least thirty minutes for a meal. Any employer, superintendent, overseer or agent who violates this section shall be punished by a fine of *not less than three hundred nor more than six hundred dollars*." (Emphasis added). The plaintiffs seek to apply that $300 to $600 range to the calculation of damages as to meal break violations in this case.

Wal-Mart contends that the plaintiffs previously tried and failed to assert a cause of action under G.L. c. 149, § 100, and that their attempt to pursue this claim must fail now as well. In an order dated February 5, 2003, this court (Fahey, J.) held, "The [plaintiffs'] motion to amend [their complaint] to add a c. 149 sec 100 claim is denied . . . on the ground of futility, no private cause of action is permitted. See G.L. c. 149 §, 2 and Loffredo v. Center for Addictive Behaviors, 426 Mass. 541 (1998)[.]" The plaintiffs ask this court to revisit this decision that G.L. c. 149, § 100, does not provide a private right of action.

Section 2 of G.L. c. 149 provides that "[t]he attorney general shall, except as otherwise *specifically* provided, enforce the provisions of this chapter, and shall have all necessary powers therefor." (Emphasis added). The plaintiffs argued during the August 29, 2006, conference call that in spite of the language in G.L. c. 149, § 2, reserving the right of enforcement in the attorney general, G.L. c. 149, § 52C, explicitly states, "This section shall be enforced by the attorney general." As G.L. c. 149, § 100, does not contain a similar explicit statement, the plaintiffs reasoned, a private right of action exists as to that statute.

Earlier in G.L. c. 149, § 52C, however, is the provision that, "[i]f an employer places in a personnel record any information which such employer knew or should have known to be false, then *the employee shall have remedy through the* collective bargaining agreement, other personnel procedures or *judicial process* to have such information expunged." (Emphases

28

added). Under G.L. c. 149, § 52C, therefore, "an employee retains a personal remedy related to
the correction of information in his file and expungement of documents in his file containing
false material." Kessler v. Cambridge Health Alliance, 62 Mass. App. Ct. 589, 595-596 (2004).
The attorney general's enforcement authority under G.L. c. 149, § 52C, "is with respect to
provisions in § 52C requiring certain employers to maintain 'personnel record[s],' as that term is
defined in § 52C . . . ." Id. at 595 (alteration in original). It is likely that the final sentence of
G.L. c. 149, § 52C, reiterating the provision set forth in G.L. c. 149, § 2, regarding the attorney
general was intended to resolve any potential ambiguity that could result from that statute's
creation of a private right of action in the employee, especially given the "except as otherwise
specifically provided" language in G.L. c. 149, § 2.

     The plaintiffs' reliance on G.L. c. 149, § 52C, therefore does not support their argument.
Rather, the language in G.L. c. 149, § 52C, confirms Wal-Mart's position that there is no private
right of action in G.L. c. 149, § 100, as that statute does not contain a provision explicitly
creating one. In response to the plaintiffs' argument, also during the August 29, 2006,
conference call, Wal-Mart pointed to G.L. c. 149, § 150, which provides,

148A,
> "Any employee claiming to be aggrieved by a violation of section 33E, 148,
> 148B, 150C, 152, 152A or 159C or section 19 of chapter 151 may, at the
> expiration of ninety days after the filing of a complaint with the attorney general,
> or sooner, if the attorney general assents in writing, and within three years of such
> violation, *institute and prosecute in his own name and on his own behalf, or for*
> *himself and for others similarly situated, a civil action* for injunctive relief and
> any damages incurred, including treble damages for any loss of wages and other
> benefits. An employee so aggrieved and who prevails in such an action shall be
> entitled to an award of the costs of the litigation and reasonable attorney fees."

G.L. c. 149, § 150 (emphasis added). This statute explicitly creates in an employee a private
right of action as to certain statutes; G.L. c. 149, § 100, is not among those listed. Id.

Therefore, as G.L. c. 149, § 100, is silent as to its enforcement, G.L. c. 149, § 2, applies placing sole enforcement authority in the attorney general. Consequently, the plaintiffs may not invoke the economic remedy set forth in G.L. c. 149, § 100, in order for their allegations of meal period violations to survive. Wal-Mart's motion for summary judgment as to all of the plaintiffs' claims of meal break violations is therefore <u>ALLOWED</u>.

## VIII. Claims Concerning Rest Breaks

Wal-Mart similarly seeks summary judgment on all of the plaintiffs' claims insofar as they allege missed rest breaks because plaintiffs have failed to demonstrate that they have any right, contractual, statutory, or otherwise, to payment for a missed rest break. Although, given this court's decisions, Wal-Mart is correct in its argument that the plaintiffs cannot claim damages for missed rest breaks under promissory estoppel or conversion, and although Wal-Mart is correct that the plaintiffs have no statutory right to rest breaks, the issue of whether there is a contractual right to rest breaks involves questions of fact for the jury to determine.[32]

Moreover, as to economic loss, if the plaintiffs establish that they had a contractual right to rest breaks, and if the plaintiffs establish that they involuntarily worked through those rest breaks, they are entitled to payment for those fifteen minute periods. For example, as the plaintiffs explained to this court during an August 29, 2006, conference call with the parties in this case, an employee working an eight-hour day is entitled to two fifteen minute breaks during which the employee is paid but not working; the employee therefore receives thirty minutes of pay for time spent not working. If that employee involuntarily works through both fifteen minute

---

[32]This conclusion assumes that the plaintiffs choose to proceed on their implied contract claim rather than their claim for unjust enrichment.

breaks, he does not receive the thirty minutes of pay for time spent not working, therefore he is entitled to eight and a half hours pay for that day rather than eight hours.

Wal-Mart's motion for summary judgment on the plaintiffs' allegations of missed rest breaks is therefore DENIED.

## IX. Statute of Limitations on Count IX

Finally, Wal-Mart seeks partial summary judgment on Count IX, claiming that, as the plaintiffs filed their complaint on August 21, 2001, the time period of August 21, 1995, through August 21, 1998, for which the plaintiffs seek damages is outside G.L. c. 149, § 148's three-year statute of limitations. See G.L. c. 149, § 150 (providing, "[a]ny employee claiming to be aggrieved by a violation of section . . .148 . . . may, . . . within three years of such violation, institute and prosecute in his own name and on his own behalf, or for himself and for others similarly situated, a civil action for injunctive relief and any damages incurred, including treble damages for any loss of wages and other benefits"). In Count IX of their Second Amended Complaint, alleging late payment of wages under G.L. c. 149, § 148, the plaintiffs assert that Wal-Mart "had an unlawful practice of surreptitiously deleting time from its employee payroll records" by performing "one-minute clock-outs," and by "deleting time punch[es]," presumably referring to the insertion of meal periods into employees' records. Also in Count IX, the plaintiffs allege that, "[d]espite the exercise of due diligence, [they] were unaware of [Wal-Mart's] unlawful activities until April 4, 2004, when [Wal-Mart] admitted to one form of time deletion [i.e., the one-minute clock-outs] in the New York Times article." Further, "[o]n July 19, 2004, Plaintiffs also learned from reviewing an April 2003 Wal-Mart corporate videotape that Wal-Mart had a practice of" inserting meal breaks into employees' records.

31

The plaintiffs argue that the discovery rule applies to their allegations in Count IX. "The discovery rule operates to toll a limitations period until a prospective plaintiff learns or should have learned that he has been injured by the defendant's conduct." Clough v. Brown, 59 Mass. App. Ct. 405, 407 (2003); see Doe v. Harbor Schs., Inc., 446 Mass. 245, 254 (2006) ("[C]ourts have developed [the] 'discovery rule' to mitigate [the] rigidity of [the] statute of limitations in cases where plaintiff could not have discovered her injuries in a timely manner[.]"). The discovery rule "may arise in three circumstances: where a misrepresentation concerns a fact that was 'inherently unknowable' to the injured party, where a wrongdoer breached some duty of disclosure, or where a wrongdoer concealed the existence of a cause of action through some affirmative act done with the intent to deceive." Patsos v. First Albany Corp., 433 Mass. 323, 328 (2001). "Where compliance with a statute of limitations is at issue, 'factual disputes concerning when a plaintiff knew or should have known of his cause(s) of action are to be resolved by the jury.'" Id. at 329, quoting Riley v. Presnell, 409 Mass. 239, 247 (1991).

The discovery rule's test is objective, and considers whether "a reasonable person *in the plaintiff's position* would have been able to discern the harm or the cause of the harm . . . ." Riley, 409 Mass. at 245 (emphasis added). "The reasonable person who serves as the standard in this evaluation, however, is not a detached, outside observer assessing the situation without being affected by it. Rather, it is a reasonable person who has been subjected to the conduct which forms the basis for the plaintiff's complaint." Id.; see McGuinness v. Cotter, 412 Mass. 617, 629 (1992) ("In determining whether a party has sufficient notice of causation, [the] inquiry is whether, based on the information available to the plaintiff, a reasonably prudent person in the plaintiff's position should have discovered the cause of his or her injuries."). "The question

32

when the plaintiff[s] knew or should have known that the [Wal-Mart's] actions were the cause of [their] injuries is one of fact, . . . and thus to survive [Wal-Mart's] motion for summary judgment the plaintiff[s] must demonstrate a reasonable expectation of proving that [their] suit was timely filed." Doe v. Creighton, 439 Mass. 281, 283-284 (2003) (internal citation omitted).

In Count IX, the plaintiffs allege that Wal-Mart "actively and fraudulently concealed its [alleged] wrongdoing[,]" thereby precluding the plaintiffs from actually or constructively knowing about Wal-Mart's practices. See id. at 284 (placing burden of proof on plaintiff invoking discovery rule). Wal-Mart argues that the plaintiffs in this case should have known of the alleged one-minute clock outs and meal period insertions because Wal-Mart provided its employees with four methods for checking their time and payroll records: "(1) checking their hours at any time at the time clock, (2) checking their hours at any time in the personnel office, (3) . . . [acknowledging their hours when] picking up their paycheck, and most recently (4) checking and editing their hours via computer through the electronic time adjustment system." Defendant Wal-Mart Stores, Inc.'s Reply Brief in Support of its Motion for Summary Judgment, at p. 19; see, e.g., Salinsky v. Perma-Home Corp., 15 Mass. App. Ct. 193, 197 (1983) ("In Massachusetts mere silence is not ordinarily a fraudulent concealment. There must be some affirmative act of concealment . . . .").

The plaintiffs do not dispute that this information was available to them; rather, they argue that Wal-Mart never taught them how to read, for example, the archive reports, or warned them to be aware of the potential of one-minute clock-outs and meal period insertions. See, e.g., Alyssa Dinardo Deposition, Exhibit 24 to Affidavit of Carolyn Beasley Burton in Support of Opposition to Defendant Wal-Mart's Motion for Summary Judgment, at pp. 18-19 (testifying

that she would "try" to ascertain that archive report was accurate but she did not understand

military time and did not ask anyone to explain it to her). The fact that this information was

available to the plaintiffs in the formats Wal-Mart described contributes to a finding that the

plaintiffs *should have* known of Wal-Mart's alleged violations throughout their employment.[33]

        The plaintiffs' argument that some of the plaintiffs could not read the archive report they

acknowledged when picking up their checks is irrelevant to this analysis. "Personal traits . . .

such as cultural background and educational history, are not relevant to the reasonableness

inquiry." Doe, 439 Mass. at 284. "A plaintiff's educational and cultural background, however,

might be probative of a plaintiff's *actual* knowledge of causality." Id. at 284 n.6 (emphasis

added). This court's conclusion that the plaintiffs should have known of the violations

throughout their employment at Wal-Mart, however, renders the question of their actual

knowledge moot. See id. (concluding that, as plaintiff did "not present[] sufficient evidence to

support a finding that her failure to grasp the connection between her symptoms and the

defendant's conduct was objectively reasonable[,] . . . [court did] not reach the question of

plaintiff's actual causal knowledge"). Moreover, a determination as to the plaintiffs' actual

knowledge would necessitate an individualized inquiry into each plaintiff's knowledge. Such

individualized inquiry is inconsistent with the maintenance of the plaintiffs' case as a class

_____

        [33]This conclusion is not inconsistent with this court's conclusion, above, with respect to
treble damages under G.L. c. 149, § 148. The question of Wal-Mart's outrageousness, relevant
to the issue of treble damages, considers whether, if Wal-Mart actually performed one-minute
clock-outs and inserted meal periods without authority, Wal-Mart committed these acts in
furtherance of an improper motive, i.e., to maximize its profits at the expense of its employees
and in violation of its own policies. The analysis with respect to whether the discovery rule
applies merely ascertains what information was available to the plaintiffs and during what time
period, and determines whether a reasonable person in the plaintiffs' position who is in
possession of that information would have known of Wal-Mart's actions.

action:

Therefore, the statutory limitation of three years limits their claim against Wal-Mart to the time period between August 21, 1998, and December 31, 2005. Accordingly, Wal-Mart's motion for summary judgment on Count IX is **ALLOWED** such that the plaintiffs are limited to the time period of August 21, 1998, through December 31, 2005.

## ORDER

For the foregoing reasons, Wal-Mart's motion for summary judgment is <u>ALLOWED</u> as to Counts III, V, and VI in full; <u>ALLOWED</u> as to Counts I and II insofar as they seek compensation for missed, interrupted, or shortened meal periods; <u>ALLOWED</u> as to Count IV insofar as it seeks damages for off-the-clock work; and <u>ALLOWED</u> as to Count IX insofar as the plaintiffs are limited to the time period of August 21, 1998, through December 31, 2005. Wal-Mart's motion for summary judgment is also <u>DENIED</u> as to Counts I in II; and <u>DENIED</u> as to Counts VII, VIII, and IX insofar as the plaintiffs seek treble damages under G.L. c. 151, § 1A, G.L. c. 151, § 1, and G.L. c. 149, § 148, respectively.

Date: September _18_, 2006

Thomas Murtagh
Justice of the Superior Court