## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LORI W. WOOD; CLAUD HOOKER; DAVID PALLIARDI; GAIL MAYES; JUDY ROSLEY; PATRICIA SEIP MARTIN; SUSANNE HOLMES; SONIA MATUREVICH; TONYA COOK NAVARRO and EMILY CROSHIER, individually and on behalf of all other persons similarly situated, | ) ) ) ) ) ) ) ) ) ) |  |
| Plaintiffs, | ) | Civil Action No. 3:07-CV-30076 |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| ZC MANAGEMENT LLC; CANYON RANCH, INC.; MELVIN ZUCKERMAN; JERROLD COHEN and KEVIN M. KELLY, | ) ) ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

## MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION
## FOR APPROVAL OF SETTLEMENT AND PROVISIONAL CERTIFICATION OF
## SETTLEMENT CLASS FOR SETTLEMENT PURPOSES ONLY

The plaintiffs Lori W. Wood, Claud Hooker, David Palliardi, Gail Mayes, Judy Rosley,

Patricia Seip Martin, Susanne Holmes, Sonia Maturevich, Tonya Cook Navarro and Emily

Croshier, on behalf of themselves and all others similarly situated (the "Plaintiffs") and

defendants ZC Management LLC, Canyon Ranch, Inc., Melvin Zuckerman, Jerrold Cohen, and

Kevin M. Kelly (the "Defendants") submit this memorandum in support of preliminary approval

as requested in their Joint Motion For Approval of Settlement and Provisional Certification of

Settlement Class for Settlement Purposes Only (the "Motion").

## I.    Introduction

The parties jointly move for preliminary approval of this collective and class action

settlement, which has been reached after more than fifteen months of arms-length, good faith

negotiations, including seven day-long mediation sessions with a neutral mediator and numerous

additional telephone conferences with the mediator and between counsel.  The settlement

provides a fair, adequate and reasonable recovery to a class of current and former employees of

Canyon Ranch in Lenox, Massachusetts ("Canyon Ranch/Lenox") who held the job

classifications of (a) servers and bussers between April 5, 2004 and October 19, 2007; (b)

estheticians, fitness instructors, hair stylist/technician, healing energy practitioners, hiking

guides, make-up technicians, massage therapists, movement therapists, nail technicians,

neuromuscular therapists, outdoor sports guides, tennis instructors, and yoga instructors between

September 8, 2004 and October 19, 2007; and (c) spa attendants (also known as locker room

attendants) between September 8, 2004 and October 19, 2007 (collectively the "Settlement

Class"), for wages and tips under the Massachusetts Wage Payment Statute, G.L. c. 149 §148

(the "Wage Statute"), the Massachusetts Tip Statute, G.L. c. 149 § 152A (the "Tip Statute") and

the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA").

## II.   <u>Procedural History</u>

This lawsuit commenced on April 5, 2007 in the Massachusetts Superior Court for

Berkshire County.  On May 10, 2007, Defendants removed the lawsuit to this Court.  In their

Second Amended Complaint, the Plaintiffs allege that settlement class members were not paid

wages and tips they were entitled to under federal and Massachusetts law, and, therefore, are

entitled to recover damages for unpaid wages and tips, interest, attorneys' fees and costs.

Defendants deny any liability or wrongdoing of any kind and assert that their pay practices

complied with these complex legal requirements.  Defendants maintain that wait staff and service

employees were at all times paid all compensation owed them.

The parties mutually decided to pursue a settlement of this case.  The parties engaged in

arms-length, comprehensive, and adversarial negotiations that began in June 2007 and included

2

extensive settlement meetings between the parties; the exchange of information, informal discovery and legal arguments on the merits; seven day-long mediation sessions over a six month period conducted by a mutually-selected neutral mediator, culminating in the settlement of the lawsuit.  The terms of the settlement are set forth in the settlement agreement ("Settlement Agreement" or "SA") attached to the Affidavit of Paul Holtzman, submitted herewith.   The Settlement Agreement is fair, adequate, and well within the range of reasonableness for class and collective action settlements of this kind.  The Settlement Agreement meets the criteria for approval of class and collective action settlements, and therefore both preliminary approval of the settlement and provisional certification of the Settlement Class are appropriate for settlement purposes only.

Concurrently with the present motion, pursuant to Federal Rule of Civil Procedure 15(a)(2) and with Defendants' consent, Plaintiffs have filed a Second Amended Complaint adding named plaintiffs Susanne Holmes, Sonia Maturevich, Tonya Cook Navarro and Emiliy Croshier, removing Defendant Cooper, and adding claims pursuant to the FLSA.

## III.     Summary of the Terms of the Settlement

The Settlement Agreement provides that, if finally approved, the Defendants will pay a total settlement amount of $14,750,000 (the "Gross Settlement Amount") into a qualified settlement fund within 14 days of the Effective Date of the Settlement.[1]  SA p.8-9.  The Gross Settlement Amount will compensate all members of the Settlement Class for wages, tips, service charges, interest or other payments owed them for non-managerial work performed through the Effective Date of the Settlement.  The Gross Settlement Amount also covers all Court-approved

---

[1] The Effective Date is the date after the Court grants final approval of the Settlement, the time period to appeal the Court's order granting final approval has expired, and, if an appeal is filed, the Court's order granting final approval is affirmed.  SA p. 4.

class representative enhancement payments to plaintiffs Wood, Hooker, Palliardi, Mayes, Rosley and Martin each in the amount of $19,000; and to plaintiffs Holmes, Maturevich, Navarro and Croshier, each in the amount of $2,000 (SA p. 13); attorneys' fees up to 25% of the Gross Settlement Amount; costs of litigation; and costs of administration of the settlement above $50,000.  SA p. 8.  Defendants will pay the costs of administration up to an aggregate of $50,000.00.  SA  p. 10.  The settlement will be administered by an independent and experienced third-party settlement administrator, Rust Consulting, Inc. (the "Settlement Administrator").

In order to most effectively obtain resolution of the Settlement Class's wage and hour claims, the settlement encompasses both the FLSA claims, in the form of a collective action, and state law claims in the form of a Rule 23 class action.  The Settlement Agreement provides that within forty-five (45) days following preliminary approval, the Settlement Administrator will compile and mail to each member of the Settlement Class by certified U.S. Mail, return receipt requested, packets containing: (i) a Notice of Pendency of Class Action and Proposed Settlement in either version (Exhibits 3 or 4 attached to the Settlement Agreement), depending on the amount of the Settlement Class member's Estimated Individual Award ("Notice"); (ii) an Opt Out Request Form (Exhibit 5 to the Settlement Agreement); and (iii) a Claim Form, Consent to Join and Release (Exhibit 2 to the Settlement Agreement) only to those members of the Settlement Class whose Estimated Individual Awards are equal to or greater than $1,500 ("Claim Form").  SA p. 12.  The Notice provides an explanation of the lawsuit; a summary of the settlement terms; a description of how Settlement Class members can participate in the settlement; instructions as to how to submit objections to the settlement; the date and time of the fairness hearing for final approval of the settlement; and instructions as to how to opt-out of the settlement.  SA p. 12.

Settlement Class members whose Estimated Individual Award is equal to or greater than $1,500 will be required to return the Claim Form by certified U.S. mail, return receipt requested, within sixty (60) days after the Court-approved Notice is mailed to the Settlement Class.  SA p.16.  Settlement Class members whose Estimated Individual Award is less than $1,500 are not required to return a Claim Form to receive their share of the settlement.  SA p. 16.

Defendants will obtain general wage and hour releases of all wage and hour claims that were asserted or that could have been asserted against the Defendants up through the Effective Date of the Settlement Agreement from all Settlement Class members who do not opt out of the lawsuit.  SA  p. 27.  To effectuate the release of FLSA claims, each Settlement Class member whose Estimated Individual Award is equal to or greater than $1,500 will opt-in to the FLSA collective action by executing a Consent to Join on his or her Claim Form.  SA p. 12.  Each Settlement Class member whose Estimated Individual Award is less than $1,500 will opt-in to the FLSA collective action by executing a Consent to Join on the reverse side of his or her settlement checks.  SA  p. 16.  No Settlement Class member will receive an Individual Award of less than $25.

After deduction of Court-approved attorneys' fees, litigation costs, third-party administrator costs in excess of $50,000 ("excess TPA costs") and class representative enhancement payments, the remaining portion of the Gross Settlement Amount will be subdivided into three funds as follows:

| Group: | Distributed to: | Amount: |
|--------|-----------------|---------|
| A. | Servers and bussers who worked at Canyon Ranch/Lenox between April 5, 2004 and October 19, 2007 | 39% of the Gross Settlement Amount remaining after deducting attorneys fees, costs of litigation, excess TPA costs, class representative enhancements and the amount of the fund to be distributed to spa attendants |

| B. | Estheticians, fitness instructors, hair stylists/technicians, healing energy practitioners, hiking guides, make-up technicians, massage therapists, movement therapists, nail technicians, neuromuscular therapists, outdoor sports guides, tennis instructors, and yoga instructors who worked at Canyon Ranch/Lenox between September 8, 2004 and October 19, 2007 | 61% of the Gross Settlement Amount remaining after deducting attorneys fees, costs of litigation, excess TPA costs, class representative enhancements and the amount of the fund to be distributed to spa attendants |
| --- | --- | --- |
| C. | Spa attendants (also known as locker room attendants) who worked at Canyon Ranch/Lenox between September 8, 2004 and October 19, 2007 | $250,000, adjusted by a factor based upon the total amount of attorneys fees, costs of litigation, excess TPA costs and class representative enhancements |

After final approval, the Settlement Administrator will distribute the settlement funds to the Settlement Class members who did not opt-out of the lawsuit, who properly submitted valid Claim Forms, if necessary, and who properly consented to join the lawsuit ("Participating Class Member"). The Group A fund will be distributed among Participating Class Members who worked as servers and bussers during the relevant time period in proportion to the hours worked by those individuals. SA p. 14. The Group B fund, except for $50,000 (the "FOM Fund"), will be distributed among Participating Class Members who worked as estheticians, fitness instructors, hair stylists/technicians, healing energy practitioners, hiking guides, make-up technicians, massage therapists, movement therapists, nail technicians, neuromuscular therapists, outdoor sports guides, tennis instructors, and yoga instructors in proportion to the revenue received by Canyon Ranch/Lenox for services rendered to guests by each of those Participating Class Members, as compared to the total revenue received for services by all Participating Class Members in those job classifications during that period. SA p. 14. The FOM Fund will be distributed to Participating Class Members who worked as fitness instructors, outdoor sports guides and movement therapists (collectively "FOM Class Members") in proportion to the earnings of each FOM Class Member as compared to the total earnings of all FOM Class

Members, in each case excluding any earnings received as commissions for services for which

service revenue was received by Canyon Ranch.  SA  p. 14.  The Group C fund will be

distributed among Participating Class Members who worked as spa attendants (also known as

locker room attendants) in proportion to the hours they worked.  SA  p. 14.  Individuals who

worked in job classifications encompassed by more than one of Group A, Group B or Group C

will receive individual awards that are equal to the sum of the amounts due for work in each

group.  Hours worked and revenue received by Canyon Ranch/Lenox will be calculated based on

the Defendants' records.  Each Participating Class member will have an opportunity to dispute

the calculation of the Estimated Individual Award he or she is to receive.  SA  p. 18.

Any remaining settlement funds not distributed to Participating Class Members or to

class counsel shall be donated to charitable organizations designated in the Notices as Cy Pres

beneficiaries of the settlement, after the deduction of costs of administration of the settlement in

excess of $50,000. SA  p. 21.

The parties propose that, along with granting preliminarily approval of the settlement, the

Court adopt the schedule set forth below for the parties to effectuate the various steps in the

settlement approval process under the Settlement Agreement:

|    | *Event* | *Timing* |
|----|---------|----------|
| 1. | Notice mailed to Settlement Class members | 45 Days after Preliminary Approval of the Settlement Agreement |
| 2. | Deadline to submit Claim Forms, Opt-Out Forms and Objections | 60 Days after mailing of Notices |
| 3. | Fairness Hearing | To be determined by the Court; no earlier than 100 days after preliminary approval of the Settlement Agreement. |

Accordingly, at this stage of the settlement process, the parties request that the Court

enter an order: (1) certifying a class for settlement purposes only of current and former

employees of Canyon Ranch/Lenox who held the job classifications of (a) servers and/or bussers

between April 5, 2004 and October 19, 2007, (b) estheticians, fitness instructors, hair

stylists/technicians, healing energy practitioners, hiking guides, make-up technicians, massage

therapists, movement therapists, nail technicians, neuromuscular therapists, outdoor sports

guides, tennis instructors, and yoga instructors between September 8, 2004 and October 19,

2007, and (c) spa attendants (also known as locker room attendants) between September 8, 2004

and October 19, 2007; (2) preliminarily approving the Settlement Agreement; (3) approving the

proposed Notices of Pendency of Class Action, Proposed Settlement and Hearing Date; (4)

approving the Claim Form, Consent to Join and Release; and (5) scheduling a fairness hearing on

a date certain, no sooner than 100 days from the date preliminary approval is granted, for the

parties to be heard on their motion for final approval of the Settlement Agreement.

IV.   **Legal Argument**

    A.   **The Court Should Grant Preliminary Approval of the Settlement**

    It is axiomatic that the law favors the negotiated compromise of disputed claims.  *See*,

*Durrett v. Housing Authority of the City of Providence*, 869 F.2d 600, 604 (1st Cir. 1990) ("the

district court's discretion is restrained by the clear policy in favor of encouraging

settlements"(quotations omitted)); *In re Relafen Antitrust Litigation*, 231 F.R.D. 52 (D. Mass.

2005) ("the law favors class action settlements"(quotations omitted)); *see also Lynn's Food

Stores v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982) (noting the importance of

encouraging settlement in the context of a wage and hour dispute).  Settlement spares litigants

the uncertainty, delay and expense of a trial, while simultaneously reducing the burden on

judicial resources.

    Federal Rule of Civil Procedure 23(e) provides that the Court's approval is required to

effectuate any settlement of a class action.  In accordance with this rule, the Court has a "special

responsibility to protect class members." *Rolland v. Patrick*, 562 F. Supp. 2d 176, 178 (D. Mass.

2008).  The ultimate determination as to whether a proposed class action settlement warrants

approval resides in the Court's discretion.  *Protective Comm. for Indep. S'holders of TMT*

*Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968).  As discussed more fully below,

there is clear evidence that the Settlement Agreement is well within the range of reasonableness

for settlements of this type, and therefore preliminary approval is warranted.

### 1.      The standards and procedures for preliminary approval

Federal Rule of Civil Procedure 23(e) outlines the mechanism for settling a class action,

including, as here, through a class certified for settlement purposes:

> The following procedures apply to a proposed settlement, voluntary dismissal, or
> compromise:
>
> > (1)  The court must direct notice in a reasonable manner to all class members who
> > would be bound by the proposal.
> > (2)  If the proposal would bind class members, the court may approve it only after a
> > hearing and on finding that it is fair, reasonable, and adequate.
> > (3)  The parties seeking approval must file a statement identifying any agreement
> > made in connection with the proposal.
> > (4)  If the class action was previously certified under Rule 23(b)(3), the court may
> > refuse to approve a settlement unless it affords a new opportunity to request
> > exclusion to individual class members who had an earlier opportunity to request
> > exclusion but did not do so.
> > (5)  Any class member may object to the proposal if it requires court approval under
> > this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e); s*ee also Amchem Prods. v. Windsor,* 521 U.S. 591, 617 (1997).

Preliminary approval is the first step in a two-step process required before a class action

may be finally settled.  Manual for Complex Litigation, Fourth, § 13.14, at 172-73 (Fed. Jud. Ctr.

2004) ("Manual Fourth").  In determining whether preliminary approval is warranted, the issue

before the Court is whether the proposed settlement is within the range of what might be found

fair, reasonable and adequate, so that notice of the proposed settlement should be given to class

members, and a hearing scheduled to consider final approval.  *Id*.  The Court is not required at

this point to make a final determination.  Manual Fourth § 21.632, at 321.  In some cases, the

Court's initial assessment can be made on the basis of information already known to the court and then supplemented by briefs, motions and an informal presentation from the settling parties. Manual Fourth, §21.632 at 320-21.

In deciding whether a settlement should be approved under Rule 23, courts look to whether there is a basis to believe that the more rigorous final approval standard will be satisfied. "Once the judge is satisfied as to the certifiability of the class and the results of the initial inquiry into the fairness, reasonableness and adequacy of the settlement, notice of a formal Rule 23(e) hearing is given to the class members." Manual Fourth, §21.633 at 322. There is a strong presumption that a proposed class action settlement is fair and reasonable when it is the result of arms-length negotiations and sufficient discovery has taken place. *City Partnership Co.*, 100 F.3d at 1043; *Rolland*, 526 F. Supp. 2d at 178; *Nilsen*, 382 F. Supp. 2d at 212.

The Court's final decision with regard to approval is made after the hearing. *Id*. Final approval of a class action settlement is appropriate where the settlement is "fair, adequate and reasonable." *City Partnership Co. v. Atlantic Acquisition Limited Partnership*, 100 F.3d 1041, 1043 (1st Cir. 1996); *Durrett*, 800 F.2d at 604; *Rolland*, 562 F. Supp. 2d at 178; *Nilsen v. York County*, 382 F. Supp. 2d 206, 212 (D. Me. 2005). The Court similarly may approve settlement of wage and hour claims, including FLSA claims, upon its determination that the settlement is fair and reasonable. *Lynn's Food Stores*, 679 F.2d at 1353 ("if a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of wages, that are actually in dispute, [the Court should] approve the settlement in order to promote the policy of encouraging settlement of litigation."); *Urbino v. Puerto Rico Ry. Light & Power Co.*, 164 F.2d 12, 15 (1st Cir. 1947) (holding that a settlement of FLSA claims was properly approved by the district court where it was "fairly and honestly arrived at in an arm's length

dealing.").

### 2.   The settlement is fair, reasonable and adequate

In evaluating a proposed settlement for fairness, courts generally address a number of

factors:

> (1)  a comparison of the proposed settlement with the likely outcome of litigation;
> (2) the stage at which the matter settled and the amount of discovery completed;
> (3) the reaction of the class to the settlement, including the number of objectors
> and the nature of the objections; (4) the quality of the plaintiffs' lawyers; (5) the
> conduct of the negotiations; and (6) the prospects of the case, including risk,
> complexity, expense, and duration.

*Nilsen*, 382 F. Supp. 2d at 212 (citing *In re Compact Disc Advertised Minimum Price Antitrust

Litigation*, 292 F. Supp. 2d 184, 189 (D. Me. 2003)).  Here, each of these factors favors approval

of the Settlement Agreement.  First and foremost, the settlement secures a significant pecuniary

recovery for the class.  The Settlement Class members will be entitled to receive, even after

payment of the proposed attorneys' fees and expenses, recovery of funds equal to an eighteen

percent (18%) gratuity for services provided or meals served, with statutory interest[2].  In

addition, the settlement has been reached at an appropriate stage of the proceedings.  Plaintiffs

initiated this case more than a year and a half ago, and since that time Plaintiffs' counsel have

conducted a diligent and thorough investigation into the facts of this lawsuit, which included,

among other things, review of thousands of pages of confidential documents produced by the

Defendants pursuant to informal discovery agreed to by the parties.  The parties have each been

represented by experienced and qualified counsel.  That the parties' respective counsel have

concluded that the proposed settlement is fair strongly favors approval.  *See Rolland v. Cellucci,*

191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and

---

[2] Following the filing of this action, Canyon Ranch also eliminated the Service Charge previously collected from
guests, and implemented a Resort Amenities Fee which clearly states "does not represent a tip, gratuity or service
charge for wait staff employees, service employees or any other employee."

knowledgeable about the facts and claims, their representations to the court that the settlement

provides class relief which is fair, reasonable and adequate should be given significant weight.");

*Bussie v. Allmerica Financial Corp.*, *SMA*, 50 F. Supp.2d 59, 77 (D. Mass. 1999) ("The Court's

fairness determination also reflects the weight it has placed on the judgment of the parties'

respective counsel, who are experienced attorneys.").  The manner in which negotiations were

conducted further supports approval of the settlement.  The proposed Settlement Agreement is

the product of "serious, informed, non-collusive negotiations."  Manual Fourth, § 30.41 at 265.

As discussed *supra*, settlement discussions stretched over more than fifteen months and involved

extensive, highly adversarial settlement meetings between the parties, as well as seven mediation

sessions with a mutually-selected neutral mediator. There is plainly no collusion with respect to

this proposed Settlement Agreement.  Finally, the risks and burdens of continued litigation are

great as to both Plaintiffs and Defendants, especially given the complexities and expenses

associated with litigating a wage and hour class action of this type through a motion for class

certification and trial.  In contrast, the Gross Settlement Amount is significant and, as outlined

above, will result in significant payments to Settlement Class members.

The parties' proposed distribution of the settlement funds also warrants approval.  Each

Settlement Class member's individual award will be fairly determined based upon his or her job

classification, hours worked, earnings, or the revenue generated as a result of his or her services

during the relevant time periods.  Likewise, the class representative enhancements are fair and

reasonable.  *See In re Relafen*, 231 F.R.D. at 82 (approving class representative incentive

awards); *Nilsen v. York County*, 382 F.Supp.2d 206, 215 (D. Me. 2005) (same).  "Because a

named plaintiff is an essential ingredient of any class action, an incentive award can be

appropriate to encourage or induce an individual to participate in a suit."  *In re Compact Disc*,

292 F. Supp. 2d at 189.  The class representatives in this case have been active. Their efforts, which have included assisting Plaintiffs' counsel to evaluate and investigate the case, identifying witnesses, and participating in mediation sessions and settlement negotiations, have been valuable to the prosecution of the case.  In addition, other district courts in this Circuit have recognized that, in general, named plaintiffs in the employment context merit incentive awards, as plaintiffs in such cases may perceive a risk of retaliation and therefore show reluctance to join any suit.  *See In re Compact Disc*, 292 F. Supp. 2d at 189.  Accordingly, the standards for approval of class action settlements are met in this case and the Court should grant the present motion.

**B.      Provisional Certification of a Settlement Class is Appropriate**

The Supreme Court has recognized that the benefits of a proposed settlement in a case such as this can only be realized through the certification of a settlement class. *See Amchem,* 521 U.S. at 591.  The Parties request that the Court certify such a class with respect to the Settlement Class members for settlement purposes only.  Although Defendants continue to deny liability in this action and retain the right to fully litigate any future motion for certification of a litigation class in this case, they do not oppose the certification of a settlement-only class.  As set forth below, all the elements of Rule 23 are met with respect to the proposed Settlement Class, which, accordingly, merits conditional certification.

**1.      <u>The elements of Rule 23(a) are satisfied in the present case</u>**

In order for a lawsuit to be maintained as a class action under Rule 23 of the Rules of Civil Procedure, the named plaintiffs must establish each of the four threshold requirements of subsection (a) of the Rule, which provides:

One or more members of a class may sue or be sued as representative parties on behalf of all only if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Here, all four elements easily are satisfied.

### (i)    Numerosity Under Rule 23(a)(i)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  The number of potential class members by itself is not always determinative of numerosity.  *See Andrews v. Bechtel Power Corp.*, 780n F.2d 124, 131 (1st Cir. 1985).  However, courts commonly treat a proposed class of at least forty members as meeting the numerosity requirement of this rule.  *See, e.g., Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) ("generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met"); *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (numerosity is presumed at level of forty class members).  Here, where the proposed class includes many times the forty-plaintiff rule of thumb, joinder is clearly impracticable and numerosity is established.  *See, e.g., Gluckenberger v. Boston Univ.*, 957 F.Supp. 306, 325 (D. Mass 1997) (finding a class of 480 potential members to meet the numerosity requirement of Rule 23(a)).

### (ii)    Commonality Under Rule 23(a)(2)

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  The resolution of these common questions must "affect all or a substantial number of the class members." *In re Relafen*, 231 F.R.D. at 69 (quoting *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 63 (D. Mass. 1981)).  Rule 23(a) does not require a showing that all class members' claims are identical to each other, only that there are common questions at the heart of

the case. *See In re Relafen* 231 F.R.D. at 69 ("The rule does not require that all issues of fact and law be common"). Here, commonality is met inasmuch as the claims of the class representatives and class members are predicated on a common core factual issue: the Defendants' practices with regard to distribution of "service charges" collected from Canyon Ranch/Lenox guests. *See O'Donnell v. Robert Half International, Inc.*, 5345 F.Supp.2d 173, 184 (D. Mass 2008) (holding that where all putative class members in an action for overtime payments were subject to a common policy or practice of the defendant, the 23(a) commonality requirement was satisfied).

### (iii)   Typicality Under Rule 23(a)(3)

Rule 23(a)(3) requires that the representative plaintiffs' claims be "typical" of those of other class members. The commonality and typicality requirements of Rule 23(a) "tend to merge." *Gen. Tel. Co. of Southwest* v. *Falcon,* 457 U.S. 147, 157 n.l3 (1982); s*ee also Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 26 (D. Mass 2003)("The 'typicality' requirement goes hand in hand with 'commonality'"). The typicality requirement tests whether the class representatives' claims are "congruent" with those of the absent class members. *Payne*, 216 F.R.D. at 26. The requirement is satisfied when the named plaintiffs' claims "arise from the same course of conduct that gave rise to the claims of the absent class members." *In re Relafen*, 231 F.R.D. at 69 (quoting *Duhaime*, 177 F.R.D. at 63). This requirement is met with regard to the proposed Settlement Class as the claims presented all arise from Defendants' disputed practices with regard to the distribution of service charges collected from Canyon Ranch/Lenox guests.

### (iv)   Adequacy Under Rule 23(a)(4)

The final requirement of Rule 23(a) is set forth in subsection (a)(4), which requires that "the representative parties will fairly and adequately protect the interests of the class." Satisfaction of this provision calls for a two-part showing: "The moving party must show first

that the interests of the representative party will not conflict with the interests of any of the class

members, and second, that counsel chosen by the representative party is qualified, experienced

and able to vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Corp.*, 780

F.2d 124, 130 (1st Cir.1985).  These criteria are met here, where Plaintiffs' counsel are

experienced and skilled in complex litigation and have an established track record in

employment law, and the class representatives have no interests that are antagonistic to the class.

### 2.        The requirements of Rule 23(b)(3) are met in the settlement context

Federal Rule of Civil Procedure 23(b)(3) prescribes that a class action may be maintained

where the court finds that:

> the questions of law or fact common to the members of the class predominate over any
> questions affecting only individual members, and that a class action is superior to other
> available methods for the fair and efficient adjudication of the controversy. The matters
> pertinent to the findings include:
>
>> (A) the interest of members of the class in individually controlling the
>> prosecution or defense of separate actions;
>> (B) the extent and nature of any litigation concerning the controversy
>> already commenced by or against members of the class;
>> (C) the desirability or undesirability of concentrating the litigation of the
>> claims in the particular forum;
>> (D) the difficulties likely to be encountered in the management of a class
>> action.

Fed. R. Civ. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

cohesive to warrant adjudication by representation." *Amchem,* 521 U. S. at 623.  Although Rule

23(b)(3) requires that common issues of law and fact predominate, it does not require that there

be an absence of any individual issues. *See Payne*, 216 F.R.D. at 26-27.  "There is no rigid test of

predominance; rather, it simply requires a finding that 'a sufficient constellation of issues binds

class members together.'" *Id*. (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288,

296 (1st Cir. 2000)).  For purposes of the proposed settlement, questions of law and fact common

to the Settlement Class predominate.  The proposed Settlement Agreement relates to the

employee compensation practices of the Defendants and their policies with regard to the

distribution of service charges collected from guests; the central questions in this lawsuit concern

the propriety of those policies and practices with regard to Massachusetts and federal wage and

hour law.  Such questions predominate over any individual questions with regard to the

Settlement Class members.

In this Motion, the parties seek certification of a class for settlement purposes only.  The

Court, therefore, need not consider the fairness and efficiency of class-based litigation at trial.

*See In re Relafen*, 231 F.R.D. at 68 ("In this context, the Court 'need not inquire whether the

case, if tried, would present intractable management problems'"(quoting *Amchem*, 521 U.S. at

620)).  If the Court were to address the Rule 23(b)(3) superiority requirement, however, it would

find that this provision is also met.  This settlement will resolve all wage and hour claims against

the Defendants held by Settlement Class members in a single, consolidated proceeding.  The

settlement provides Settlement Class members with the ability to obtain prompt, predictable and

certain relief, whereas individualized litigation carries with it great uncertainty, risk and costs,

and provides no guarantee that the injured plaintiff will obtain timely relief at the conclusion of

the litigation process.  Settlement also relieves judicial burdens that would be caused by

adjudication of the same issues in multiple trials.  Accordingly, in the settlement posture in

which the case now stands, the matter is appropriate and should be conditionally certified for

settlement purposes only.

### 3.        The Proposed Class Notice is Adequate

Federal Rule of Civil Procedure 23(e)(1)(B) dictates that reasonable notice of any

proposed settlement must be directed to class members prior to final approval of the settlement

by the Court.  The notice should "sufficiently inform[] the class members of their options of

filing a claim, seeking exclusion or objecting to the settlement." *Nilsen*, 382 F. Supp. 2d at 211; *see also* Manual Fourth, § 21.312 at 294 (indicating that the notice should contain sufficient information about the litigation and settlement to allow the class members to make an informed choice regarding whether to opt out.)  The *Manual for Complex Litigation* lists a number of specific items that should be incorporated into the notice, including an account of the terms of the proposed settlement, a statement that, if approved, the settlement will bind all class members, and a description of the claims and defenses asserted in the litigation and the relief sought. Manual Fourth, § 21.312 at 294.  By this measure, the Notices attached to the Settlement Agreement are more than sufficient.  The Notice provides information regarding the Settlement Agreement that is clear, precise, informative, and may be understood by the average class member.  As described above, the Notice states, in plain English, an explanation of the lawsuit, a summary of the material settlement terms, a description of how Settlement Class Members can participate in the Settlement, instructions as to how to submit objections to the settlement, the date and time of the final fairness hearing for final approval, and instructions as to how to opt-out of the settlement.  As required by Fed. R. Civ. P. 23(h), the proposed class notices also set forth the amount of attorneys' fees and costs sought by Plaintiffs' counsel.  Similar plans involving mailed notice have regularly been approved by federal courts.  *See*, *e.g.*, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974) (stating that mailed individual notice "is clearly the 'best notice practicable' within the meaning of Rule 23(c)(2) and our prior decisions."); *Nilsen*, 382 F.Supp. 2d at 211 (approving a notice plan including both mailed and published notice and noting that "mailed notice alone might have been sufficient"); *Key v. Gillette Co.*, 90 F.R.D. 606 (D. Mass 1981) (determining that mailing notices to class members, who were current and former employees of the defendant, was an appropriate method of notice).

**V.**     **Conclusion**

For all the foregoing reasons, the parties respectfully request that the Court enter an order (1) certifying a class for settlement purposes only of current and former employees of Canyon Ranch/Lenox who held the job classifications of (a) servers and/or bussers between April 5, 2004 and October 19, 2007, (b) estheticians, fitness instructors, hair stylists/technicians, healing energy practitioners, hiking guides, make-up technicians, massage therapists, movement therapists, nail technicians, neuromuscular therapists, outdoor sports guides, tennis instructors, and yoga instructors between September 8, 2004 and October 19, 2007, and (c) spa attendants (also known as locker room attendants) between September 8, 2004 and October 19, 2007; (2) preliminarily approving the Settlement Agreement; (3) approving the proposed Notices of Pendency of Class Action, Proposed Settlement and Hearing Date; (4) approving the Claim Form, Consent to Join and Release; and (5) scheduling a fairness hearing on a date certain, no sooner than 100 days from the date preliminary approval is granted, for the parties to be heard on their motion for final approval of the Settlement Agreement.

Respectfully submitted,

PLAINTIFFS                                          DEFENDANTS,

By their attorneys,                                 By their attorneys,

 /s/   Paul Holtzman                                 /s/   Richard L. Alfred
Richard Bluestein (BBO No. 046840)              Richard L. Alfred (BBO No. 015000)
Paul Holtzman (BBO No. 563184)                  Ariel D. Cudkowicz (BBO No. 550577)
KROKIDAS & BLUESTEIN LLP                        SEYFARTH SHAW LLP
600 Atlantic Avenue                             World Trade Center East
Boston, MA 02210                                Two Seaport Lane, Suite 300
(617) 482-7211                                  Boston, MA 02210-2028
                                                Telephone:     (617) 946-4800
                                                Telecopier:    (617) 946-4801

DATED:  October 20, 2008

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on October 20, 2008.

 /s/   Richard L. Alfred
Richard L. Alfred

BO1 15943732.8