UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 3:07-CV-30076

| | |
|---|---|
| LORI W. WOOD, CLAUD HOOKER, DAVID PALLIARDI, GAIL MAYES, JUDY ROSLEY, PATRICIA SEIP MARTIN, SUSANNE HOLMES, SONIA MATUREVICH, TANYA COOK NAVARRO, EMILY CROSHIER, ROBERT SANDERS, LOUIS CHRISTOPHER CASHIOLA, individually and on behalf of all other persons similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| ZC MANAGEMENT, LLC; CANYON RANCH, INC.; MELVIN ZUCKERMAN; and JERROLD COHEN | ) ) ) ) ) |
| Defendants. | ) ) ) |

## Memorandum in Support of Amended Preliminary Application for Attorneys' Fees and Expenses

Petitioners, Settlement Class Counsel ("Class Counsel"), hereby respectfully submit this Memorandum in Support of their Amended Preliminary Application for an award of attorneys' fees and reimbursement of expenses.

## I.      INTRODUCTION

Petitioners are the Class Counsel who have represented Plaintiffs in this action from prior to its filing in April, 2007 through an exhaustive process of investigation; informal discovery; review of Canyon Ranch/Lenox financial records; and more than

twelve months of negotiations culminating in seven (7) Mediation Sessions over a six

month period which have resulted in the Settlement Agreement filed with the Court on

October 20, 2008.  That Agreement creates a Settlement Fund of $14,750,000 ("Settlement

Fund") to resolve this action.  Subsequently, additional negotiations and a full day

Mediation Session on January 15, 2009 led to a further agreement to incorporate into an

Amended Settlement Agreement a resolution of the claims of Bell/Transportation staff

members.[1]  Petitioners plan to seek an award of counsel fees of a maximum of twenty-five

percent (25%) of the Settlement Fund and reimbursement of their reasonable expenses

incurred in the prosecution and settlement of this action in the amount of $3,781,250.  In

light of the risk undertaken, the work performed, and the results obtained, the requested

fees and expenses are reasonable and should be approved by the Court.

This action involves claims that Defendant Canyon Ranch unlawfully retained the

proceeds of an 18% Service Charge collected from guests or patrons of the facility in

violation, inter alia, of the Massachusetts Tip Act, M.G.L. c.149, sec. 152A and the Federal

Fair Labor Standards Act.  The Settlement achieves excellent results for the eligible

Settlement Class Members.  Each of the personal services and dining room employees will

be entitled to receive (even after payment of the proposed attorneys' fees and expenses)

recovery of funds equal to an eighteen percent (18%) gratuity for services provided or

meals served.  Spa attendants will receive their share of slightly more than one dollar per

guest night; and bell/transportation staff will receive their share of approximately four

dollars and seventy-five cents per guest.

---

[1] The agreement regarding the claims of the Bell/Transportation staff members provides for an additional payment of $375,000.

In light of the significant risks and unsettled legal issues facing Plaintiffs and the fact that Class Counsel has achieved a substantial Settlement Fund as well as meaningful changes in Defendants' practices which Class Counsel believes will yield additional tip income to Settlement Class Members, the Settlement represents an excellent result and fully justifies the requested award of attorneys' fees and expenses.  The award is further justified by the fact that Class Counsel has prosecuted this action vigorously, diligently and thoroughly from pre-filing investigation through a marathon set of hard-fought negotiations and Mediation Sessions solely on a contingent fee basis and without any compensation or reimbursement for the time and disbursements expended on the case.[2]

The fee requested of twenty-five percent of the Settlement Fund is lower than the customary contingent fee arrangements negotiated in non-class actions between attorneys and their clients.  It is also well within the range of fees that have been awarded in other similar class actions in both federal and state courts in Massachusetts.

**A.      Procedural Posture**

Pursuant to Fed.R.Civ.P. Rule 23(h), Plaintiffs will file a motion seeking an award of attorney's fees in conjunction with the Motion for Final Approval of the Settlement, or at an earlier time if the Court so directs.  At that time, Class Counsel will provide a detailed description of their hours worked through that date and tasks accomplished in the case.  At present, Plaintiff anticipates requesting a fee which would represent twenty-five percent (25%) of the Settlement Fund.  In addition, Plaintiffs' Counsel will seek recovery of a maximum of $85,000 in costs and expenses.  Consistent with Rule 23(h), the proposed

---

[2] The undersigned will be glad to provide the Court at this stage or at Final Approval with additional information concerning the history of the litigation, Class Counsel's qualifications, activities and accomplishments in the litigation, the risks undertaken by Class Counsel and the benefits conferred by the Settlement.

notices of the Settlement (Exhibits 3 and 4 to the Amended Settlement Agreement) accurately disclose the anticipated fee request and the maximum cost reimbursement request.

In accordance with the Amended Settlement Agreement, Notices of Pendency of Class Action and Proposed Settlement ("Notice") will be provided to all members of the proposed Settlement Class by certified mail.  The Notice will advise recipients of their individual estimated financial recovery pursuant to the proposed Settlement and that Class Counsel will apply to the Court for an award of attorneys' fees of no more than twenty-five percent of the Settlement Fund and reimbursement of expenses of no more than $85,000. The Notice will further provide all Settlement Class Members with the opportunity to be heard, to opt out of the Class, or to object to the Settlement.

## II.    THE RESULTS OBTAINED BY CLASS COUNSEL AMPLY SUPPORT THE REQUESTED FEE AWARD

The results obtained and benefits achieved for Settlement Class Members strongly support approval of the requested attorneys' fee award.  In a recent decision, Chief Judge Young identified as the first factor to be considered in assessing the reasonableness of a fee request " the size of the fund created and the number of persons benefited." In re Relafen Antitrust Litigation, 231 F.R.D. 52, 79 (D. Mass. 2005) (citing Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n. 1 (3d Cir.2000)).

Application of that factor here strongly supports the instant application.  The size of the fund to be distributed among approximately seven hundred current and former employees reflects a significant achievement on behalf of the Class.  In particular, even after deduction of the proposed attorneys' fee award,

a)      each Settlement Class Member who is or was a personal services employee will be entitled to receive the equivalent of an eighteen percent (18%) gratuity on the price of the services (e.g. massage or nail treatment) that he or she provided during the three year Settlement Period plus statutory interest on that amount;

b)      each Settlement Class Member who is or was a wait staff employee will be entitled to receive his or her share of an eighteen percent (18%) gratuity on the price of the meals served on the days he or she worked during the three and half year Settlement Period plus statutory interest on that amount;[3] and

c)      each Settlement Class Member who is or was a spa attendant will be entitled to receive his or her share of a gratuity of slightly more than one dollar per guest night during the three year Settlement Period plus statutory interest on that amount.[4]

d)      each Settlement Class Member who is or was a member of the bell/transportation staff will be entitled to receive his or her share of a gratuity of approximately four dollars and seventy-five cents per guest during the three year Settlement Period.

In light of the absence of any caselaw applying the Tip Act in the context of either (a) an all-inclusive resort; or (b) a resort focused on health and healing, the recovery for the Class is quite substantial.  Among the additional hurdles that would have had to be cleared at trial were issues relating to class certification, damages (including Defendants' contention that all or most of the proceeds of the Service Charges were used to pay for a wide range of amenities provided to patrons), and complicated issues of tax law connected to contentions of the Defendants that prior rulings in tax abatement proceedings supported their defense to liability.[5]

---

[3] The Dining Room Settlement Period is longer because the Tip Act first covered service employees in the Spa in September 2004, while food service workers were covered under the prior version of the statute.
[4] In the case of Dining Room Servers and Spa Attendants, these calculations appropriately credit toward the Class Members' recovery the previously paid Service Charge allocations for Servers and Spa Attendants.
[5] As described herein, the legal and factual challenges presented posed a substantial hurdle to recovery of additional service charge proceeds.

Notably, the case also resulted in a fundamental alteration of Defendants' policies regarding Service Charges.  Following filing of this action, Canyon Ranch eliminated the Service Charge previously collected from patrons and implemented a Resort Amenities Fee which it clearly stated "does not represent a tip, gratuity or service charge for wait staff employees, service employees or any other employee."  As a result of this new policy, Class Counsel believes that patrons wishing to provide a tip to Settlement Class Members are less likely to be under the impression that they have already provided a tip by paying an 18% Service Charge.  In addition, through the settlement Canyon Ranch has modified a "script" for use by employees in responding to inquiries regarding tipping in a manner which emphasizes that the Resort Amenities Fee is not a tip.  In the wake of these changes, Class Counsel believes that Settlement Class Members may experience an increase in tips received.

These achievements by way of policy changes are mentioned to highlight that while Settlement Class Members may receive additional compensation (in the form of increased tipping) as a result of these changes, Plaintiffs' Counsel is not including the value of any such compensation in its calculation of the Settlement Fund from which the percentage of fund attorneys' fee award is calculated.  As a result, the effective percentage fee recovery is even less than twenty-five percent.[6]

---

[6] Consideration of benefits conferred on class beyond settlement payments is proper.  See e.g. Bynum v. District of Columbia, 412 F.Supp.2d 73, 85 (D.D.C. 2006); Craft v. County of San Bernardino, 2008 WL 916965 at *12 (C.D. Cal. 2008).

### III. THE REQUEST FOR ATTORNEYS' FEES AND COSTS IS REASONABLE AND WITHIN THE RANGE TYPICALLY AWARDED BY COURTS IN THIS DISTRICT.

### A. The Common Fund Doctrine

For over a century, the Supreme Court has recognized the "common fund" exception to the general rule that a litigant bears his or her own attorneys' fees. Trustees v. Greenough, 105 U.S. 527 (1881). The rationale for the common fund principle was explained in Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980), as follows:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole…Jurisdiction over the fund involved in the litigation allows a Court to prevent…inequity by assessing attorney's fees against the entire fund this spreading fees proportionately among those benefited by the suit. (Citations omitted.)

The common fund doctrine both prevents unjust enrichment and encourages counsel to protect the rights of those who have relatively small claims. The federal courts have long recognized that fee awards encourage prosecution of other actions on behalf of individuals with valid claims, and thereby promote private enforcement of, and compliance with, important areas of federal and state law.[7]

In a complex class action such as this one, competent counsel for Plaintiffs can be retained only on a contingent basis. Consequently, a large segment of the public would be

---

[7] See e.g., Mashburn v. Nat'l Healthcare, Inc., 684 F. Supp. 679, 686-87 (M.D. Ala. 1988) ("[C]ourts also have acknowledged the economic reality that in order to encourage 'private attorney general' class actions. … on behalf of persons with small individual losses, a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid."); Ressler v. Jacobson, 149 F.R.D. 651, 657 (M.D. Fla. 1992) ("Attorneys who bring class actions are acting as 'private attorneys general'…. Accordingly, public policy favors the granting of counsel fees sufficient to encourage them to bring additional such actions").

denied a remedy for violations of wage and hour statutes if fees awarded by the courts did

not fairly and adequately compensate counsel for the services provided, the serious risks

undertaken, and the delay before any compensation is received.  In re Lupron Marketing

and Sales Practicing Litig., 2005 WL 2006833, at *4 (D. Mass. 2005).


**B.      The First Circuit Has Expressed a Preference for the Percentage of
         Fund Method in Awarding Fees in Common Fund Cases.**

Courts generally favor awarding fees from a common fund based upon the

percentage-of-the-fund method.  See Blum v. Stenson, 465 U.S. 886, 900 n.16 (1984) (in

common fund cases "a reasonable fee is based on a percentage of  the fund bestowed on

the class").  The First Circuit most recently addressed this issue in In re Thirteen Appeals

Arising out of the San Juan Dupont Plaza Hotel Fire Litig. 56 F.3d 295, 305 (1st Cir. 1995)

("Thirteen Appeals").  There, the District Court awarded attorneys' fees of 31% of a $220

million settlement fund – i.e., roughly $68 million.  On appeal, the First Circuit held that

"use of the [percentage of fund] method in common fund cases is the "prevailing praxis"

based upon the "distinct advantages that the [percentage of fund] method can bring to bear

in such cases."  56 F.3d at 307.[8]

Among the advantages recognized by the Court in Thirteen Appeals, was the fact

that the percentage method is less burdensome to administer than the lodestar method,

which "forc[es] the judge to review the time records of a multitude of attorneys in order to

determine the necessity and reasonableness of every hour expanded."  Thirteen Appeals,

---

[8] The First Circuit noted that two Courts of Appeals have expressly required the use of percentage awards in
common fund cases.  E.g., Camden I Condo. Ass'n v. Dunkle, 946 F.2d 768, 774 (11th Cir. 1991); Swedish
Hosp. Corp. Shalala, 1F.3d 1261, 1271-72 (D.C. Cir. 1993).  The Third Circuit has expressed a similar view.
See Report of the Third Circuit Task Force, Court Awarded Attorney Fees, 108 F.R.D 237, 255 (1985), cited
in Thirteen Appeals, 56 F.3d at 306.

56 F.3d at 307.  The court also acknowledged that the "shift in focus lessens the possibility of collateral disputes that might transform the fee proceedings into a second major litigation."  <u>Id</u>.  Moreover, the Court recognized another important advantage of the percentage method, namely, that, unlike the lodestar method, it does not create a '"disincentive for the early settlement of cases.'"  <u>Id</u>.  (citation omitted).

Additionally, the First Circuit in <u>Thirteen Appeals</u> noted that the percentage approach promoted more efficient use of attorney time because it is result-oriented.  In contrast, the lodestar method, which is linked to time spent in obtaining a result, created a disincentive for early settlement of cases and rewards unproductive behavior.  The Court recognized that the percentage method also better reflects the market value of counsel's services:

> Because the [percentage of fund] technique is result-oriented rather than process-oriented, it better approximates the workings of the marketplace. We think that Judge Posner captured the essence of this point when he wrote that "the market in fact pays not for the individual hours but for the ensemble of services rendered in a case of this character." <u>In re Cont'l Ill. Sec. Litig.</u>, 962 F.2d 566, 572 (7th Cir. 1992).  In fine, the market pays for the result achieved.

<u>Thirteen Appeals</u>, 56 F.3d at 307. As Judge Gorton wrote in <u>Bussie v. Allmerica Financial Corp.</u>, No. Civ.A. 97-40204-NMG, 1999 WL 342042, at *2 (D. Mass. 1999), "[F]rom a public policy standpoint, the percentage of fund method of calculating fees 'more appropriately aligns the interests of the class with the interests of class counsel—the larger the value of the settlement, the larger the value of the fee award.'" (citations omitted).  <u>See</u> <u>also</u> <u>In re Lupron Marketing and Sales Practices Litig.</u>, No. 01-10861-RGS, 2005 WL 2006833, *3 (D. Mass. Aug. 17, 2005) (percentage of fund approach "is less burdensome to administer, it reduces the possibility of collateral disputes, it enhances

efficiency throughout the litigation, it is less taxing on judicial resources, and it better approximates the workings of the marketplace").[9]

The reasons that the First Circuit has favored the percentage of the fund method are particularly relevant to the present case.  First, it properly rewards results and early settlement of complex cases.  In doing so, it also discourages lawyers from engaging in unproductive behavior or simply continuing to work a case at the expense of a potential favorable early settlement.[10]  Here the parties conducted extensive informal discovery on an accelerated basis – including providing Plaintiffs' Counsel with access to a vast array of financial and business records – so that they could fairly assess the merits of the case, and then employed an impartial mediator to assist them in negotiating a fair resolution.  This is exactly the result that the percentage of the fund method is designed to produce.

### C.    The Requested Twenty-Five Percent Fee Award Is Well Within the Appropriate Range of Percentage of Fund Awards

In selecting an appropriate percentage award, both the United Stated Supreme Court and the First Circuit have recognized that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace.  <u>Missouri v. Jenkins,</u> 491 U.S. 274, 285 (1989); <u>Thirteen Appeals,</u> 56 F.3d at

---

[9] These decisions reflect a trend noted by Judge Van Gestel of the Massachusetts Superior Court who wrote that "[t]he lodestar method, once the dominant approach, has now lost considerable favor to what is called the percentage of fund ("POF") recovery method." <u>Sullivan v. Walgreen Eastern Co., Inc.</u> No. 04-02524 (Suffolk Super. Ct. Sept. 13, 2004).  This conclusion is consistent with the <u>Manual for Complex Litigation,</u> Fourth which reports that "After a period of experimentation with the lodestar method…the vast majority of courts of appeals now permit or direct courts to use the percentage-fee method in common fund cases." Indeed, one commentator has argued that Due Process concerns require utilization of the percentage method. <u>See</u> Charles Silver, <u>Due Process and the Lodestar Method:  You Can't Get There From Here,</u> 74 TULANE L. REV. 1809 (2000).

[10] The parties here could easily have expended hundreds more hours litigating class certification, the unsettled issues relating to application of the Tip Act to all-inclusive resorts, and partial summary judgment and summary judgment motions on liability, or complex as well as fact-intensive issues pertaining to the valuation of amenities which Defendants contended were paid for by the Service Charge, among other issues. Prior to doing so, extensive formal discovery would have been warranted, including significant deposition practice and doubtless multiple discovery disputes requiring resolution by the court.

307.  The ordinary contingency fee arrangement is for one-third of the settlement fund.
See Furtado v. Bishop, 635 F.2d 915, 917 (1st Cir. 1980); accord Blum, 465 U.S. at 903
("In tort suits, an attorney might receive one-third of whatever amount the plaintiff
recovers.") (Brennan, J., concurring).  Thus, the Manual for Complex Litigation, Fourth
instructs federal judges that "fees awarded under the percentage method are often between
25% and 30% of the fund," and that "[a]warding attorneys 25% of a common fund
represents a typical benchmark."

Courts in this District frequently award attorney's fees of thirty percent of more of
the settlement fund in similar cases involving wage and hour claims.  Kane v. Gage
Merchandising Services, et al., C.A. No. 00-40185-NMG (D. Mass. June 28, 2002)
(awarding attorney's fees of one-third from a settlement fund of $690,000 in a FLSA
collective action); Loughran v. USAA, Inc., C.A.  No. 00-12387-RWZ (D. Mass. Oct. 19,
2002) (awarding attorneys' fess of one-third from a settlement fund of $820,000 in a FLSA
collective action); consolidated cases of Dooley v. Liberty Mutual Ins. Co., C.A. No. 01-
11029-REK and McLaughlin v. Liberty Mutual Ins. Co., C.A. No. 01-11029-REK, (D.
Mass Dec. 21, 2005) (awarding $1.8 million in counsel fees, which was 28% of $6.4
million settlement involving both FLSA collective actions and a Rule 23 Massachusetts
overtime class claim).  In those cases, as here, the retainer agreement with the named
plaintiffs specifically permitted counsel to seek an award of up to one third of the total
recovery.

In addition, courts in the First Circuit have recognized twenty-five percent as a
"benchmark" of a reasonable percentage of fund award.  See e.g. Mazola v May Dep't
Stores, 1999 WL 1261312 at *4 where Judge Gertner wrote that "[t]he normal percentages

awarded by federal courts is 20-30% of the value of the settlement, with 25% being a "benchmark" and that "in this circuit, percentage fee awards range from 20% to 35% of the fund." See also In re Lupron Marketing and Sales Practices Litigation,  2005 WL 2006833 at*5 (D. Mass. 2005), where Judge Stearns held that "[c]ourts in the First Circuit have recognized that fee awards in common fund cases typically range from 20 to 30 percent." In securities class actions fee awards of 33 1/3 % are common.[11]

Moreover, Massachusetts state courts have routinely awarded attorneys' fees equal to one-third (33 1/3%) of the common fund in cases brought pursuant to the same Tip Statute (M.G.L. c. 149 sec. 152A) upon which this action is based.  For example, in the Suffolk Superior Court, fee awards representing a full third of the settlement funds were approved in the following class actions under the Tip Act: Fernandez et al v. Four Seasons Hotels, Ltd., No. 02-4689 (settlement approved in 2008); Banks et al v. SBH Corp. d/b/a Grill 23 & Bar, No. 04-3515 (approved 2007); Hough et al v. Select Restaurants, Inc. d/b/a Top of the Hub, No. 05-1258 (approved 2006); Keyo et al v. Seaport Hotel and World Trade Center Boston, et al, No. 02-3339 (approved 2004); and Licari et al v. Meridien Hotels, Inc., No. 02-3340 (approved 2003).  See also Lapic et al v. Boston Coach Corp., No. 06-0896 (Suffolk Super. Ct) (30% percentage of fund fee approved 2008).

Most recently, Judge Saris in Macone v. Pongratz, No. 07-11360-PBS (D. Mass. Sept. 16, 2008) approved a fee award of 33% in a wage and hour class action.  This result is consistent with that reached by Judge Tauro and Judge Young in several recent

---

[11] See e.g., Deckler v. Ionics, Inc., et al., No. 03-cv-10393-WGY (D. Mass Apr 4, 2005) (30% of $3 million settlement fund); In re Biopure Sec. Litig, 03-12628-NG (D. Mass. 2007) (33% of $10 million settlement fund); In re Segue Software, Inc., No. 99-10891-RGS (D. Mass. July 31, 2001) (Woodlock, J.) (33% of settlement fund); Wilensky v. Digital Equip. Corp., No. 94-10752-JLT (D. Mass. July 11, 2001) (33 1/3% fee awarded on $5.2 million settlement fund);  Chalverus v. Pegasystems, Inc., No. 97-12570-WGY (D. Mass. Dec. 19, 2000) (33% of  $5.25 million awarded); In re Picturetel Corp. Sec. Litig., No. 97-12135-DPW (D. Mass. Nov. 4, 1999) (one-third of $12 million fund).

settlements of securities class actions. <u>See</u>  <u>In re Aspen Technology, Inc.</u>, No. 04-cv-12375-JLT (D. Mass. March 6, 2006) (approving a $1.4 million attorneys' fee award representing twenty-five percent (25%) of a Settlement Fund, and <u>Deckler v. Ionics</u>, No. 03-cv-10393-WGY (D. Mass Apr 4, 2005 (approving a thirty percent (30%) fee award of $900,000). [12]

As reflected in the cited cases, the requested fee in this case – 25% of the Settlement Fund – in fact represents a smaller percentage of the common fund than is ordinarily awarded in cases in which settlements of a similar magnitude have been obtained. <u>Accord</u> <u>In re Rite Aid Sec. Litig</u>., 396 F.3d 294, 303 (3d Cir. 2005) where the Court noted the findings of three studies indicating (1) an average fee recovery of 31% in settlements greater than $10 million; (2) a median percentage recovery range of 27-30% for all class actions resolved or settled over a four-year period; and (3) that for class action settlements between $100 million and $200 million, fee awards in the 25-30% range were "fairly standard."

In sum, Petitioners' request for attorneys' fees of twenty-five percent of the Settlement Fund is within the low end of the range of numerous prior percentage awards made in this District and elsewhere.

**IV.     PUBLIC POLICY AND THE INTEREST IN JUDICIAL ECONOMY ENCOURAGE PROMPT AND FAIR SETTLEMENTS WITHOUT THE COSTS AND DELAYS ASSOCIATED WITH PROTRACTED LITIGATION**

The fee award sought here would also be consistent with public policy and judicial economy interests that support the expeditious settlement of cases. As noted in <u>Maley v. Del Global Techs. Corp</u>., 186 F. Supp. 2d 358 (S.D.N.Y. 2002):

---

[12] The award in <u>Aspen</u> represented a 6.2 multiplier on Class Counsel's lodestar hours; while the award in <u>Deckler</u> represented a multiplier of 4.6.

[E]fficient prosecution of plaintiffs' claims weighs in favor of a finding of the quality of Plaintiffs' Class Counsel's representation here . . . . "[A] prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of justice." In the context of a complex class action, early settlement has far reaching benefits in the judicial system.

Id. at 373 (quoting McKenzie Constr. Inc. v. Maynard, 758 F.2d 97, 101-02 (3d Cir.

1985)). Accord In re AremisSoft Corp. Sec. Litig., 210 F.R.D. 109, 133 (D.N.J. 2002)

("Informal discovery leading to an early settlement that avoids such costs [of formal

discovery] favors approval of the fee application."); In re M.D.C. Holdings Sec. Litig., No.

CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488, at *21 (S.D. Cal. Aug. 30, 1990)

("Early settlements benefit everyone involved in the process and everything that can be

done to encourage such settlements – especially in complex class action cases – should be

done.").

    In fact, the First Circuit has cited the promotion of early settlement as a factor

supporting the award of attorneys' fees based on a percentage of the settlement fund

generated.  Thirteen Appeals, 56 F.3d at 307(an important advantage of the percentage

method is that it does not create a '"disincentive for the early settlement of cases'").

Reflective of that interest, Judge Tauro recently approved a pre-discovery settlement in In

re Aspen Technology, Inc., supra, awarding $1.4 million in attorneys' fees representing

twenty-five percent (25%) of the Settlement Fund.  Likewise, Judge Young approved a

thirty percent (30%) fee award of $900,000 in Deckler v. Ionic, supra, which was also

resolved prior to discovery.

    Judge David S. Doty of the District of Minnesota recently observed, in In re Xcel

Energy,Inc., 364 F. Supp. 2d 980, 992 (D. Minn. 2005), that early settlements are

consistent with the purposes of the Federal Rules of Civil Procedure, which "'shall be

14

construed and administered to ensure the *just, speedy, and inexpensive determination* of every action.'" (quoting Fed. R. Civ. P. 1) (emphasis in original). "Under Rule 1, as officers of the court, attorneys share the responsibility with the court of ensuring that cases are 'resolved not only fairly, but without undue cost or delay.'" Id. (citing Fed. R. Civ. P. 1 Advisory Committee Notes, 1993 Amendments). In awarding a 25% fee on an $80 million settlement (over several objections) the Xcel court complimented counsel for the efficient prosecution of the case and the prompt resolution of the litigation.

Class Counsel have likewise litigated this case efficiently and effectively and, for their efforts, seek approval of a 25% fee.

## V.     AN ANALYSIS OF RELEVENT FACTORS SUPPORTS APPROVAL OF CLASS COUNSELS' FEE APPLICATION

In assessing counsel's fee request, courts consider a variety of factors, including:

> (1) the size of the fund and the number of the persons benefited; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations, if any.

In re Lupron Marketing and Sales Practices Litig., 2005 WL 2006833 (D. Mass.), at *3.

A consideration of these various factors provides firm support for the reasonableness of Class Counsel's fee application.

### (1)     The Amount of the Recovery

The Settlement in this case provides for a large Settlement Fund for the benefit of approximately seven hundred eligible Settlement Class Members.  Given the uncertainties that existed in this area of litigation,  this Settlement represents a substantial recovery for the Settlement Class Members.  In light of the complexities and risks (some of which are

catalogued below) that would exist were the Action to proceed to trial, the Settlement represents a substantial recovery for the Class.

### (2)   Class Counsel Provided the Class with Highly Skillful Representation

Class Counsel have extensive experience in prosecuting wage and hour and employment actions.  Class Counsel have vigorously prosecuted this case on behalf of the Settlement Class Members and worked diligently to obtain a favorable result for all members, which has resulted in this significant settlement.  Counsel less experienced in wage and hour litigation would likely have been unable to either assess or handle the case as efficiently and effectively as counsel here. In addition, Class Counsel brought to bear considerable resources including approximately $70,000 in expenses which would not have been reimbursed absent a successful result.

### (3)   The Risks that Existed in This Case Decisively Favor Approval of Class Counsel's Fee Application

As recognized by several courts, the risks that are assumed by counsel are a paramount consideration in assessing the fee award.  In re Lupron Marketing and Sales Practices Litig., 2005 WL 2006833, at *4.  As discussed above, this case falls in a developing area of law.  While the Tip Act has been construed in the context of restaurant and banquet facilities, there is scarce authority on its meaning in the resort setting. Moreover, the issues of its application to a service charge assessed on an all-inclusive resort stay is entirely novel.  The overlay of the health and medical services of Canyon Ranch further complicated the issues of liability and damages.[13]  With scant precedent to guide the litigation, Class Counsel assumed a great deal of risk when they initiated the

---

[13] In addition, Canyon Ranch asserted that certain tax abatement rulings relating to the compulsory Service Charge precluded Plaintiffs' claims.

Action on a contingency basis and continued to face high risk based upon the complex and

novel issues presented.

In addition, Plaintiffs faced the following risks:

a)  Since its expansion in September 2004 to cover service employees (and not
merely wait staff), the Tip Act issues raised in this case have not been interpreted
by any Court, leading to uncertainty as to the scope of its coverage and the
appropriate measure of damages.

b)  In particular, there is no precedent determining the Act's application to a
facility such as Canyon Ranch which Defendants describe as an "all-inclusive,
no-tip health and wellness facility."

c)  The Service Charge at issue was variously described to patrons as covering a
wide range of amenities (including airport transfers, health and fitness
assessments and cable television) which were unrelated to tips or gratuities.  As a
result, Defendants argued that the patrons did not view the Service Charge as
being "in lieu of a tip."

d)  Certain existing precedent suggested that a Court might limit recovery for
well-paid employees in order to prevent a "windfall" recovery.

e)  There is no precedent concerning application of the Tip Act where the
challenged Service Charge is assessed not on a particular service or meal, but on
an all-inclusive room rate.

f)  The issues of whether Canyon Ranch employees in various job categories  are
service employees and/or practice occupations which are "customarily
tipped"  were  hotly contested and issues of first impression.

In sum, there were numerous disputed factual and legal issues in this case.  Both

sides faced significant risks if any one or more of these issues were decided adversely to

them.  The Settlement aims to compromise the claims asserted, taking into account the

risks.  Petitioners will gladly provide a more extensive discussion of any of these issues at

or before final approval should the Court so request.

Given the multitude of risks that Class Counsel assumed in prosecuting this Action,

the fee application is appropriate.

**(4)   Class Counsel Have Devoted Significant Time to the Investigation and Prosecution of this Action**

Prior to filing, Class Counsel conducted extensive investigation in order to determine whether there existed any causes of action against the Defendants.  This investigation involved meetings with Named Plaintiffs and other Settlement Class members.  Counsel interviewed witnesses, including former employees and patrons of Canyon Ranch, and reviewed both public and non-public documents pertaining to Canyon Ranch and its wage practices.  Counsel also researched and analyzed numerous unsettled legal issues that the case presented.

After conducting a thorough investigation of the claims, Class Counsel drafted a Class Action Complaint that set forth detailed factual allegations and causes of action against the Defendants arising from Defendants' failure to distribute Service Charge collections as required by statutory and common law duties.

Class Counsel have been litigating this case diligently since its inception and have engaged in substantial informal discovery, legal research and negotiations.  To date, Class Counsel have expended well over two thousand hours in the prosecution of this Action and will likely expend extensive additional hours and efforts through Final Approval and distribution of the Settlement Funds.  Class Counsel have, inter alia, reviewed more than twelve thousand (12,000) pages of financial and business records of Canyon Ranch secured through informal document production, obtained extensive information regarding the resort's operations and finances through informal discovery and information provided by the company's Chief Financial Officer, conducted nearly one hundred (100) witness interviews, obtained more than a dozen witness statements, extensively investigated and analyzed the factual and legal issues present in this case, exchanged extensive empirical

18

and academic research regarding tipping practices relating to a wide range of occupations and settings; and engaged in multiple negotiation sessions which in turn led to no few than eight (8) Mediation Sessions with David Geronemus, Esq. of JAMS and settlement discussions spanning more than ten months.  In connection with the marathon Mediation Sessions, Class Counsel prepared two extensive Mediation Submissions and numerous charts and outlines incorporating the results of legal and factual research.

At every stage from an early dispute regarding Initial Disclosure obligations, debates regarding the merits of Defendants' Motions to Dismiss, to negotiating the "roadmap" for settlement discussions and throughout the marathon negotiations and Mediation Sessions, the case was hard fought by Defendants and their counsel, a national law firm and an Arizona law firm, which together routinely brought to bear substantially greater resources than those of Class Counsel.

In light of the comprehensive efforts put forth by Class Counsel throughout this litigation, the requested fee award is squarely reasonable.

### (5)     Public Policy Considerations

The fee award is also supported by public policy considerations.  The Tip Act and Weekly Payment of Wage Acts were enacted to ensure payment of tips and wages earned by workers in the Commonwealth.  Because individual Wage Claims typically involve amounts too small to justify individual litigation, a class action is often the only mechanism by which to vindicate the statutory rights.  See Mazola v May Department Stores Co., 1999 WL 1261312 (D. Mass.1999), at *4, where Judge Gertner held in the analogous context of a consumer claim that

> the transaction costs for any individual to bring this kind of action is prohibitively high.  The litigation is critical, because it gives voice to relatively small claimants who may not be aware of statutory violations or have an avenue to relief.  The only way for such a

> plaintiff to recover is to become part of a . . . class action, and the
> only way to make such actions economically feasible is to award a
> percentage of the fund.

In complex class actions, competent counsel for the plaintiffs can be retained only on a contingent basis.  Consequently, a large segment of the public would be denied a remedy for violations of the wage and hour laws if fees awarded by the courts did not fairly and adequately compensate counsel for the services provided, the substantial risks undertaken, and the delay before any compensation is received.

## VI.    THE EXPENSES INCURRED BY CLASS COUNSEL WERE REASONABLE

As of October 20, 2008, Class Counsel had incurred costs and expenses in excess of approximately seventy thousand dollars ($70,000) in preparation and prosecution of this case, with the expectation that they would be reimbursed if money was recovered for the Class.  The bulk of these costs (approximately $50,000) was spent on the services of an experienced mediator and an expert consultant.  All of these costs were reasonable and necessary to bring the case to a successful resolution.

The other expenses advanced by Counsel were also reasonable and necessary given the scope of the litigation.  They include: copy services and photocopies (approximately $1,585); filing and service fees (approximately $2,686); postage (approximately $1,105); travel ($3,817); and research expenses (approximately $4,455).[14]

---

[14] It is anticipated that through Final Approval and distribution, an additional approximately $15,000 in expenses will be incurred.

The expenses for which reimbursement is sought herein are the type of expenses for which law firms are routinely reimbursed and they are properly chargeable to the settlement fund.  See e.g. Matter of Continental Illinois Securities Litigation, 962 F.2d 566, 570 (7th Cir 1992).

## VII.   CONCLUSION

For all of the foregoing reasons, Class Counsel respectfully request that the Court allow the instant Application.

LORI W. WOOD , CLAUD HOOKER, DAVID PALLIARDI, GAIL MAYES, JUDY ROSLEY, PATRICIA SEIP MARTIN, , SUSANNE HOLMES, SONIA MATUREVICH, TANYA COOK NAVARRO, EMILY CROSHIER, ROBERT SANDERS, LEWIS CHRISTOPHER CASHIOLA, individually and on behalf of all other persons similarly situated,

By their attorneys,

/s/ Paul Holtzman
_____
Richard M. Bluestein, Esq. (BBO # 046840)
Paul Holtzman, Esq. (BBO # 563184)
KROKIDAS & BLUESTEIN LLP
600 Atlantic Avenue
Boston, MA  02210
(617) 482-7211

Dated: February 2, 2009